FILED by ___ D.C.

**Jun 27, 2016**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – FT. LAUD.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

# 16-61471-CV-WILLIAMS/SIMONTON

THOMAS S. ROSS,                          )
             Plaintiff                      )
vs.                                      )
                         )
APPLE INC., a California corporation     )
                         )          **JURY TRIAL DEMANDED**
            Defendant                      )
_____

## COMPLAINT FOR MISAPPROPRIATION OF INTELLECTUAL PROPERTY AND COPYRIGHT INFRINGEMENTS

I, Plaintiff THOMAS S. ROSS (Ross), in the above styled cause, *PRO SE*, sues Apple, Inc.

(Apple), for misappropriation of intellectual property and copyright infringements.

NOW COMES PLAINTIFF, Thomas S. Ross (Ross), *PRO SE,* states, on information and belief,

as follows:

### NATURE OF THE ACTION

1.     The object of this litigation is the intellectual property identified as the Electronic Reading

Device (ERD).  This property has three separate and distinct characteristics: 1) it is a chattel,

protectable under the Law of Restitution, 2) it is an invention, protectable under Patent Laws

and international treaties, and 3) it is an original work, protectable under Copyright Laws and

international treaties.

2.     **As a Chattel**, Ross's ERD is tangible personal property that confers property rights under

the U.S. Constitution.  The identity of the ERD is manifested through the drawings and

description of its functionality, and utility.  In 1992, the ERD was created, at a time when

32   nothing like it existed before.  Functioning as a "birth certificate", the genesis of the ERD

33   was evidenced by the identity of the author and the dates of their creation, affixed on each

34   drawing and text, as Thomas S. Ross and May 23, 1992, June 28, 1992.

35   3.      In addition, the identity of the ERD was further memorialized by the filing of an

36   application for a utility patent with the United States Patent and Trademark Office (USPTO)

37   and the agency issued patent application **07/974,428**, **dated 11/12/1992**.

38   These documents constitute *Prima Facie* evidence that the tangible property identified as the

39   ERD is authentic, it belongs to Ross and was created at specific dates in 1992.

40   4.      **As an invention**, that the idea of the ERD was first invented and first filed by Ross, was

41   evidenced by his application for a utility patent, number **07/974,428**, **dated 11/12/1992**.  The

42   application for patent was declared abandoned on or about 4/10/1995, by the USPTO, for

43   failure to pay the required fees. That said, the application evidenced that Ross was the first to

44   file a device so designed and aggregated as to have created a novel combination of media and

45   communication tools that Ross called ERD, and whose identity was, since then, hijacked and

46   exploited by Apple's iPhones®, iPods®, iPads® and, others.

47   5.      **As an original work**, the ERD was expressed through original drawings and text, all of

48   which have been copyright protected since their creation in 1992 and registered with the

49   United States Copyright Office, on May 4, 2014:

50   •  VAu 1-186-491  Title of Work: Drawing 10.1 The Electronic Reading Device Patent
51      Application #07/974,428
52   •  VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device Patent
53      Application #07/974,428
54   •  VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device Patent
55      Application # 07/974,428
56   •  VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading Device
57      Patent Application # 07/974,428

58    • TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application
59      #07/974,428
60

61  6.    Since 2007 to the time of this writing, Apple has 1) misappropriated Ross's ERD as

62   chattel, protectable under state law, common law and the law of restitution, and unjustly

63   enriched itself, and 2) has infringed on Ross's copyrights, protectable under copyright laws

64   and international treaties, and, in so doing, misappropriated Ross's copyright rights and,

65   unjustly enriched itself.

66

67                                      **PARTIES**

68   **Plaintiff Thomas S. Ross.**

69  7.  Thomas S. Ross is an individual, a citizen of the United States of America, having his

70   principal domicile in Miramar, Florida.

71   **Defendant Apple**

72  8.  Ross is informed and believes that Apple is a California corporation having its principal

73   place of business at 1 Infinite Loop, Cupertino, California 95014.

74  9.  Ross is informed and believes that Apple conducts business in the State of Florida,

75   throughout the United States of America and many Countries that are signatories to Berne

76   and Paris treaties and conventions governing Patents and Copyrights.

77

78                          **JURISDICTION AND VENUE**

79  10. This Court has subject matter jurisdiction over the claims relating to the Copyright Act (17

80   U.S.C. §§ 101,501) and the Lanham Act (15 U.S.C. §§1125 et. seq.) pursuant to 28 U.S.C. §

81    1331 (federal subject matter jurisdiction) and 28 U.S.C. §1338(a) (any act of Congress

82    relating to copyrights, patents and trademarks).

83    11. This Court has personal jurisdiction because Apple is, and continuously has been, doing

84    business in the state of Florida and has wrongfully infringed on Ross's copyright-protected

85    works.

86    12. Apple is subject to both specific and general personal jurisdictions. Apple, markets, sells, and

87    supports the infringing products throughout the United States by means of brick and mortar

88    stores, internet web sites and other interstate distribution channels.  Further, Ross is informed

89    and believes, and based thereon alleges that Apple regularly solicits and conducts business in

90    and/or derives substantial revenue from, goods and services provided to residents of Florida,

91    including the actual sale, of millions of misappropriated and infringing ERD look-alike units,

92    themselves also infringing on constituent original elements of Ross' original copyrighted

93    works.  Accordingly, both jurisdiction and venue are proper in this court. See 28 U.S.C. §§

94    1391 and 1400.

95                    **VENUE AND INTRADISTRICT ASSIGNMENT**

96    13. Venue is proper within this District under 28 U.S.C. §§ 1391(b) and (c), because Apple

97    transacts business within this district and offers for sale in this district products that infringe

98    the Ross copyrights.  In addition, venue is proper because Ross's principal domicile is in this

99    district, and Ross suffered harm in this district.

100

## BACKGROUND

**Thomas S. Ross**

On information and belief, Plaintiff Ross states as follows:

**The Intellectual Property**

14. In 1992, Ross conceived a reading and writing device, with a back-lit screen that contained all manner of reading material, as well as other media, stored in the device or obtained from an external storage device or other remote sources, such as a remote server, all of which could be used in spite of the absence of ambient light.

15. What Ross contemplated, was a device that could allow one to read stories, novels, news articles, as well as look at pictures, watch video presentations, or even movies, on a flat touch-screen that was back-lit.  He further imagined that it could include communication functions, such as a phone and a modem, input/output capability, so as to allow the user to write notes, and be capable of storing reading and writing material utilizing internal and external storage media.  He also imagined that the device would have batteries and even be equipped with solar panels.  Ross called this device, the ELECTRONIC READING DEVICE (ERD).

16. The ERD Ross envisioned, had various configurations ranging in size, features and functions, to accommodate various settings and uses.

      i.   One configuration consisted of one rectangular panel, with rounded corners, with a flat screen that dominated the smooth surface of the viewing side, and small enough to be hand-held.

      ii.   Another configuration would have two screens, side by side, that could be utilized to expand the viewing area for reading or view other media, or

124        could be used for reading on one panel and writing on the other, or use it

125        for writing on both panels.

126    iii.  Other configurations would have a variety of sizes and features to satisfy

127        various activities such as playing games, watching videos or motion

128        pictures, with all having the same distinctive ornamental feature consisting

129        of the rectangle with rounded corners, smooth surfaces, inlaid flat screen,

130        seamlessly framed by the smooth sleek surface, with functional

131        attachments that could be placed, or not, anywhere along the edges or

132        frame.

133    In short, the unifying utility among all possible ERD permutations, was the portability of a

134    multi-media device, while the design scheme common to all of the ERD devices, was a pair

135    of rectangular panels, sandwiched one on top of the other, with rounded corners, separated by

136    a relatively shallow layer of internal circuitry, where one panel consisted of a flat, back-lit

137    touch screen, with a framed border, and the other a panel of similar shape and made of

138    material similar to the front frame, so as to give it its unified look and feel.

139    17. Between May 23, 1992 and September 10, 1992, Ross designed three technical drawings,

140    one flow chart and one narrative of his invention. Three drawings consisted of hand drawn

141    images of the hand-held ERD, depicting the unifying aesthetic design, comprising of a

142    rectangular panel with rounded corners, where one side was dominated by an inlaid, centrally

143    located, smooth flat screen, framed by the flat, smooth surface, while the other side,

144    comprised of a smooth flat panel over the internal circuits, batteries or internal storage.

145    Simple but distinctive. The ingenious simplicity of this design, afforded the ability to utilize

146    the periphery, for appending, or not, a variety of functional controls, such as turning the

147    device on or off, keyboard, pagination, sound volume, etc., and attach peripherals such as

148    microphone, speakers, cameras, solar panels, storage devices and interfaces for other external

149    devices. Alternately, the frame could remain free of functional keys, where peripheral

150    functions could be performed by software, and peripherals could be placed embedded at the

151    edges or the side or rear panel. In short, stripping away all functional gadgets and buttons,

152    would reveal the purely ornamental design.  The ERD embodied a fusion of design and

153    function, in a way that never existed prior to 1992.

154  18. Another drawing was a data flow diagram that expressed the method of transmitting data to

155    and from a remote computer to identify subscribers and send requested media to the user's

156    device.

157  19. The writing described the purpose, options, uses, and the look and feel of the ERD.

158  20. Upon creation, all drawings and text, including ideas and expressions of those ideas, became

159    Ross's tangible intellectual Property.

160  21. All drawings and text were copyright protected by Ross, as of their respective date of

161    creation, in 1992.  See EXHIBIT A.

162  **The Patent Application**

163  22. On or about September 10, 1992, Ross filed an Application for Patent, and on November 12,

164    1992, the USPTO assigned the Patent Application # 07/974,428 and on December 30, 1992,

165    Patent Application # 07/999,524[1] consisting of forms provided by the USPTO, and, attached

166    therewith, were the four (4) original drawings and original writings depicting and describing

167    Ross's ERD and other documents styled according to descriptions contained in the statutes.

---

[1] Patent Application # 07/999,524 dated 12/30/1992 was issued in error, as it was a duplicate,

168   23. The patent application was declared abandoned in 1995, by the USPTO, due to failure to pay

169       the application fee.

170   24. Ross attempted revival and/or substitution of his original invention, on or about 1999, but it

171       was also declared abandoned in 2000, by the USPTO, this time, for reasons other than failure

172       to pay fees.

173   25. On July 11, 2007, Ross filed a claim in the United States District Court for the Southern

174       District of Florida, alleging, *inter alia*, unconstitutional depravation of patent rights in the

175       1992 patent application, and detrimental reliance on USPTO procedures and instructions, for

176       the 1999 failed effort to revive his original patent application.  See *Ross v United States*

177       *Patent And Trade Office,* 07-CV61723, 7/11/2007.

178   26. In his answer to the USA Motion to Dismiss, Ross argued, *inter alia*, that the 1995

179       abandonment of the patent application for failure to pay the application fee, was

180       unconstitutional.   While the District Court found Ross's argument "eloquent", on March 30,

181       2009, The District Court dismissed the Ross's action against the USPTO, as time-barred.

182       Ross Appealed and the Court of Appeals for the 11th Circuit, upheld the lower Court's

183       findings.  See *Ross v United States Patent And Trade Office,* 07-CV61723, 7/11/2007, Order

184       Granting Defendant's Motion To Dismiss, pg. 6, referencing pg.18 of Defendant's Motion

185       To Dismiss.

186   **The Copyright Registrations**

187   27. On May 14, 2015, Ross secured a Copyright Registration with the United States Copyright

188       Office, for each of the four drawings and the writing, to wit:

189       • VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device Patent Application

190          #07/974,428. See EXHIBIT C.1.

191



192

193    VAu 1-186-859 Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application

194    #07/974,428.  See EXHIBIT C.2.



195

196

197

198

199

200        VAu 1-186-860 Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application

201        07/974,428.  See EXHIBIT C.3.



203    •   VAu 1-186-862 Title of Work: Drawing lOA Chart I The Electronic Reading Device Patent

204        Application # 07/974,428.  See EXHIBIT C.4

205



206

207

208

209        • TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application

210            #07/974,428  See EXHIBIT C.5.

211    **Apple**

212    On information and belief, Plaintiff Ross states as follows:

213    28. In 1996, Steve Jobs, former CEO of Apple bragged publicly, that Apple had a culture of

214        "shameless stealing" of others ideas, and, as Phil Schiller, Sr. VP of Worldwide Marketing

215        was once quoted as saying, "making them their own."  "This was part of Apple's DNA", as

216        Bud Tribble, Vice President of Apple was quoted as saying.

217    29. Apple engaged in systematic searching for other people's ideas by rummaging through all

218        sorts of resources, private and governmental, for "abandoned" and "discarded" prior art, and

219        ideas, and, when it found something promising, it "made it its own."

220    30. Apple, introduced the iPhone®, iPad® and iPod® line of mobile devices, all of which are

221        the very essence of Ross's ERD. Instead of creating its own ideas, Apple chose to adopt a

222        culture of dumpster diving as an R&D strategy.

223    31. Fortuitously for Apple, in 1995 Ross's original 1992 ERD Application for Patent, was

224        declared "abandoned" by the USPTO, and was thus relegated, to the heap of "abandoned"

225        and "discarded" ideas, just the sort of place that Apple would have been delighted to

226        rummage through and discover diamonds in the rough to be exploited and "patent the hell out

227        of them", quote unquote. Apple's corporate culture was to "shamelessly steal" ideas, "make

228        them their own", and "patent the hell out of them", and would then, serve them up to the

229        public, as their own technological marvels.

230  32. Ross, however, still remains the owner of the ERD, with all rights and claims protected under

231      the Law of Restitution as chattel, and Copyright Laws, as a work of original authorship.

232  33. By this action, Ross seeks to put a stop to Apple's illegal conduct and obtain

233      compensation for the misappropriation and violations that have occurred thus far.

234  34. Ross alleges that in 2007, Apple began selling, advertising, depicting in manuals, packaging,

235      print and digital media, and broadcasting images of three-dimensional reproductions of

236      devices that were and are, substantially the same as his technical drawings of the ERD, and

237      that Apple's three-dimensional derivative devices (iPhone®, iPod®, iPad®), embody the

238      non-functional aesthetic look and feel, of the technical drawings originally created by Ross in

239      1992 and which were misappropriated intellectual property owned by Ross and protectable

240      under color of Copyright Laws.

241  35. Ross alleges that since 2007, Apple launched a number of devices, each of which were

242      misappropriated intellectual property owned by Ross, and generated infringing two-

243      dimensional copies of Ross's technical drawing registered as **VAu 1-186-491 Title of Work:**

244      **Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428**, in

245      packaging, advertising, broadcast media, print media and where aesthetic and ornamental

246      design from the technical drawing, are embodied in three-dimensional devices copied

247      therefrom.  The chart below is Apple's development timeline that include, but is not limited

248      to, devices that are the subject of repeated misappropriation and copyright infringements, that

249      spans over ten (10) years and continues to the date of this writing:

250

251

| Year | Launched | Model | Family | Discontinued |
|------|----------|-------|--------|--------------|
| **2007** | 21-Mar | iPhone (1st generation) (4 GB) | iPhone | 09/05/07 |
| | 29-Jun | iPhone (1st generation) (8 GB) | iPhone | 07/11/08 |
| | | iPod Nano (3rd gen) | iPod Nano | 09/06/08 |
| | 5-Sep | iPod Touch (1st gen) (8 & 16 GB) | iPod Touch | 09/09/08 |
| **2008** | 15-Jan | iPhone (1st generation) (16 GB) | iPhone | 07/11/08 |
| **2008** | 15-Jan | iPod Touch (1st gen) (32 GB) | iPod Touch | 09/09/08 |
| | 19-Feb | iPhone 3G (8 GB) | iPhone | 06/07/10 |
| | 17-Apr | iPhone 3G (16 GB) | iPhone | 06/08/09 |
| | 28-Apr | iPod Nano (4th gen) | iPod Nano | 09/09/09 |
| | 29-May | iPod Touch (2nd gen) (8 GB) | iPod Touch | 09/01/10 |
| | 11-Jul | iPod Touch (2nd gen) (16 & 32 GB) | iPod Touch | 09/09/09 |
| | 11-Jul | iPhone 3GS (16 & 32 GB) | iPhone | 06/24/10 |
| | 7-Apr | iPad (Wi-Fi) | iPad | 03/02/11 |
| **2009** | 20-Oct | iPad (Wi-Fi + 3G) | iPad | 03/02/11 |
| | 20-Oct | iPhone 3GS (8 GB) | iPhone | 09/12/12 |
| | 31-Mar | iPhone 4 (GSM) (16 & 32 GB) | iPhone | 10/04/11 |

| | | | iPod | |
|---|---|---|---|---|
| | | iPod Touch (4th gen) (8 & 64 GB) | Touch | 09/12/12 |
| | | iPod Touch (4th gen) (32 GB) | iPod Touch | 05/30/13 |
| | 3-Apr | iPod Nano (6th gen) | iPod Nano | 09/12/12 |
| | 13-Apr | | | |
| | | iPad (Wi-Fi) | iPad | 3/2/2011 |
| | 3-Apr | iPad (Wi-Fi + 3G) | iPad | 3/2/2011 |
| 2010 | 30-Apr | iPhone 3GS (8 GB) | iPhone | 9/12/2012 |
| | 24-Jun | iPhone 4 (GSM) (16 & 32 GB) | iPhone | 10/4/2011 |
| | | iPod Touch (4th gen) (8 & 64 GB) | iPod Touch | 9/12/2012 |
| | 1-Sep | iPod Touch (4th gen) (32 GB) | iPod Touch | 5/30/2013 |
| | | | | |
| | | | | |

252

253   36. Ross alleges that in the last three years, prior to the date of the first Cease and Desist Demand

254   letter dated 2/10/2015,  Apple launched the following devices, each of which were

255   misappropriated intellectual property owned by Ross, and generated infringing two-

256   dimensional copies of Ross's technical drawing registered as **VAu 1-186-491 Title of Work:**

257   **Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428**, in

258      packaging, advertising, broadcast media, print media and where aesthetic and ornamental

259      design from the technical drawing, are embodied in three-dimensional devices copied

260      therefrom.  The list that follows includes but is not limited to, such devices:

261

| Year | Launched | Model | Family | Discontinued |
|------|----------|-------|--------|--------------|
| 2011 | 10-Feb | iPhone 4 (CDMA) (16 & 32 GB) | iPhone | 10/4/2011 |
|      | 11-Mar | iPad 2 (16 GB) | iPad | 3/18/2014 |
|      |        | iPad 2 (32 & 64 GB) | iPad | 3/7/2012 |
|      | 14-Oct | iPhone 4 (8 GB) | iPhone | 9/10/2013 |
|      |        | iPhone 4S (16 GB) | iPhone | 9/10/2013 |
|      |        | iPhone 4S (32 & 64 GB) | iPhone | 9/12/2012 |
|      | 16-Mar | iPad (3rd gen) | iPad | 10/23/2012 |
|      |        | iPod Touch (4th gen) (16 GB) | iPod Touch | 5/30/2013 |
|      | 21-Sep | iPhone 5 | iPhone | 9/10/2013 |
|      | 11-Oct | iPod Touch (5th gen) (32 & 64 GB) | iPod Touch | current |
|      |        | iPod Nano (7th gen) | iPod Nano | current |
|      | 2-Nov | iPad Mini (Wi-Fi) (16 GB) | iPad | current |
|      |        | iPad Mini (Wi-Fi) (32 & 64 GB) | iPad | 10/22/2013 |
|      |        | iPad (4th gen) (Wi-Fi) (16 GB) | iPad | 10/16/2014 |

| | | iPad (4th gen) (Wi-Fi) (32 & 64 GB) | iPad | 10/22/2013 |
|---|---|---|---|---|
| | 16-Nov | iPad Mini (Wi-Fi + Cellular) (16 GB) | iPad | current |
| | | iPad Mini (Wi-Fi + Cellular) (32 & 64 GB) | iPad | 10/22/2013 |
| | | iPad (4th gen) (Wi-Fi + Cellular) (16 GB) | iPad | 10/16/2014 |
| | | iPad (4th gen) (Wi-Fi + Cellular) (32 & 64 GB) | iPad | 10/22/2013 |
| | 30-May | iPod Touch (5th gen) (16 GB) | iPod Touch | 6/26/2014 |
| | 20-Sep | iPhone 4S (8 GB) | iPhone | 9/9/2014 |
| | | iPhone 5C (16 & 32 GB) | iPhone | 9/9/2014 |
| | | iPhone 5S (16 & 32 GB) | iPhone | current |
| | | iPhone 5S (64 GB) | iPhone | 9/9/2014 |
| | 1-Nov | iPad Air (16 & 32 GB) | iPad | current |
| | | iPad Air (64 & 128 GB) | iPad | 10/16/2014 |
| | 12-Nov | iPad Mini (2nd generation) (16 & 32 GB) | iPad | current |
| | | iPad Mini (2nd generation) (64 & 128 GB) | iPad | 10/16/2014 |
| **2014** | 18-Mar | iPhone 5C (8 GB) | iPhone | current |
| | 19-Sep | iPhone 6 | iPhone | current |
| | | iPhone 6 Plus | iPhone | current |
| | 22-Oct | iPad Air 2 (16, 64 & 128 GB) | iPad | current |

| | iPad Mini 3 (16, 64 & 128 GB) | iPad | current |
|---|---|---|---|

| Year | Date | Product | Category | Status |
|---|---|---|---|---|
| **2015** | July 15 | iPod Touch (6th gen) | iPod Touch | current |
| | September 9 | iPad Mini 4 | iPad | current |
| | September 25 | iPhone 6S | iPhone | current |
| | | iPhone 6S Plus | iPhone | current |
| **2016** | March 31 | iPad Pro (9.7") | iPad | current |
| | | iPhone SE | iPhone | current |

37. On information and belief, Ross alleges that in 2015, Apple obtained a Patent for a two-screen device (**Patent # US8638549B2**). This is exactly the same utility and ornamental design as Ross's technical drawing registered as **VAu 1-186-859 Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428 and VAu 1-186-860 Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application #07/974,428** and which misappropriation unjustly enriched Apple.

38. On information and belief, Ross alleges that in 2006, Apple obtained at least two (2) Patents for, among other things, providing remote media content to users of iTunes® and iBook Store® (**Patent# US7774708 B2 and US9084089B2**) and utilized constituent original elements of the copyrighted technical drawing registered as **VAu 1-186-862 Title of Work: Drawing lOA Chart I The Electronic Reading Device Patent Application # 07/974,428** where the flow chart illustrates the data flow that starts with a user request for a specific product, such as song, book, broadcast, movie, etc., is then screened for authorization, and terminates with fulfilment or rejection of the request, and which misappropriation unjustly enriched Apple.

284    39. On information and belief, Ross alleges that in 2006, Apple obtained at least two (2) Patents

285        for, among other things, providing remote media content to users of iTunes® and iBook

286        store® (**Patent# US7774708 B2 and US9084089B2**) wherein Apple utilized descriptions

287        that are verbatim copies of text taken from Ross's copyrighted Text registered with the U.S.

288        Copyright Office as **TXu 1-919-460 Title of Work: The Electronic Reading Device Patent**

289        **Application #07/974,428.**

290    40. On information and belief, Ross alleges that the following U.S. design patents awarded to

291        Apple:

292        i.    D627,790 (the "'D790 patent") Graphical User Interface For a Display Screen or

293              Portion thereof:

294 ii.    D602,016 (the "'D016 patent") Electronic Device; D618,677 (the "'D677 patent") Electronic

295        Device; D690,300; D681,632; D750,065; D750,062; D748,622; D755,784; D752,577;

296        D752,037; D724,078; D712,405; and utility patent 7,479,949 includes intellectual property

297        misappropriated from Ross and wrongly awarded to Apple and with which Apple was

298        unjustly enriched.

299    41. On information and belief, Ross alleges that the following trade dress registrations awarded

300        to Apple for the design and configuration of the iPhone®:

301        i)    U.S. Registration No. 3,470,983 is for the overall design of the product, including

302              the rectangular shape, the rounded corners, the silver edges, the black face, and

303              the display of sixteen colorful icons.

304        ii)   U.S. Registration No. 3,457,218 is for the configuration of a rectangular handheld

305              mobile digital electronic device with rounded corners

306        ii)   U.S. Registration No. 3,475,327 is for a rectangular handheld mobile digital

307          electronic device with a gray rectangular portion in the center, a black band above

308          and below the gray rectangle and on the curved corners, and a silver outer border

309          and side.

310    includes intellectual property misappropriated from Ross and wrongly awarded to Apple and

311    with which Apple was unjustly enriched.

312   42. On or about March 10, 2015, Ross sent a Cease and Desist letter to Apple, at its address, 1

313      Infinite Loop, Cupertino, CA.  See EXHIBIT D.1 and D.2.

314   43. On or about June 10, 2015, Apple sent a letter declining to comply.  See EXHIBIT E.

315   44. By this action, Ross seeks to put a stop to Apple's illegal conduct, determine the worldwide

316      financial gain attributable to Ross's intellectual property, and obtain equitable compensation

317      for the identity theft and copyright infringements that have occurred thus far, going back as

318      far as the law permits and the court deems appropriate.

319

320
321 **COUNT I**<br>**MISAPPROPRIATION OF INTELLECTUAL PROPERTY AS CHATEL**
322

323   On information and belief, Ross alleges that:

324   Ross refers to and incorporates paragraphs 1 to 44 above as though fully set forth herein.

325   45. The ERD aggregated, in one small, lightweight and handheld device, mobile phone

326      functions, media storage and playback, a touch user interface screen, mobile computing

327      power to run diverse pre-installed and downloadable applications, and functionality to gain

328      full access to a wide variety of multimedia.  These features were combined in an elegant case

329      with a distinctive design that gave the ERD its unique identity that has now become widely

330      identified with Apple's progeny of iPhones®, iPads® and iPod Touch®.  Fact that the ERD

331   has been sucked into Apple's product line that began in 2007 and, continues to the date of

332   this writing, amounts to identity theft.

333
334                                **COUNT II**
335   **UNJUST ENRICHMENT RESULTING FROM MISAPROPRIATION OF**
336              **INTELLECTUAL PROPERTY AS CHATTEL**
337

338   On information and belief, Ross further alleges that:

339   Ross refers to and incorporates paragraphs 1 to 45 above as though fully set

340   forth herein.

341   46. As a result of the conduct alleged herein, Apple has been unjustly enriched with property that

342      was, and is, the property of Plaintiff Ross.

343   47. Ross seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits

344      resulting from Apple's identity theft.

345


346                               **COUNT III**
347              **DIRECT INFRINGEMENT OF COPYRIGHT**
348   **VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device Patent**
349                      **Application #07/974,428**
350                    **[17 U.S.C. §§101, SEQ.]**
351

352   On information and belief, Ross further alleges that:

353   Ross incorporates herein by this reference each and every allegation contained in each paragraph

354   above. Ross refers to and incorporates paragraphs 1 to 47 above as though fully set

355   forth herein.

356   48. Ross is, and at all relevant times has been, the copyright owner of exclusive rights under the

357      United States Copyright Laws, with respect to certain copyrighted works, including but not

358    limited to, the copyrighted work identified as Registration Number VAu 1-186-491 Title of

359    Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428:

360

361    **Figure 1 - ERD 1992**                        **Figure2 - APPLE® 2007**

   

362

363

364    49. Apple. said, and I quote: ."*The iPhone is radically different from the devices that preceded it.*

365    *It has a distinctive shape and appearance—a flat rectangular shape with rounded corners*

366    *\*\*\**". (See Apple's Complaint in ***Apple v Samsung***, as filed in the United States District

367    Court for the Northern District of California, on April 11, 2011). Contrary to Apple

368    assertion, the iPhone® was anything but that. A casual observer with ordinary perception

369    will conclude that the iPhone® has the same overall concept and feel as Ross's ERD design

370    of 1992. It was Ross's ERD design of 1992 that was, "*radically different from the devices*

371    *that preceded it*".

372    50. In connection to the design of its iPhone®, Apple also stated that "\*\*\* *none of these*

373    *elements is functional. \*\*\**" See Apple's Complaint in ***Apple v Samsung***, as filed in the

374   United States District Court for the Northern District of California, on April 11, 2011.  Stated

375   another way, when Apple declared that all of the relevant design elements of the iPhone®

376   that it enumerated therein, are not functional, it admits, by logical extension, that identical

377   elements presented in Ross Drawing #1 are also non-functional, or, ornamental.  This, in

378   turn, means that such ornamental elements, when found in the Apple iPhone® device, or

379   similar other devices, each constituting an instance of copyright infringement.  By virtue of

380   asserting this, in its own ***Apple v Samsung*** Complaint, Apple is estopped from claiming that

381   its iPod touch® and iPad® devices are not subject to the same claim of infringement, given

382   that Apple asserted that both of these devices were identical in their design, to the iPhone®.

383   51. Among the exclusive rights granted to Ross under the Copyright Act, are the exclusive rights

384      to reproduce the original works and to distribute original works, to the public, or not. Apple,

385      without permission or consent of Ross, has used, and continues to use, copies and derivatives

386      of the Copyrighted original works, to distribute constituent original elements of the

387      Copyrighted original works to the public, and/or to make the Copyrighted original works

388      available for distribution to others. In doing so, Apple has violated Ross's exclusive rights of

389      reproduction and distribution. Apple's actions constitute infringement of Ross's copyrights

390      under Copyright Laws.

391   52. Ross is informed and believes that virtually all of the knock-offs manufactured by Apple,

392      have been distributed without permission of the copyright holder.

393   53. The foregoing acts of infringement have been willful and intentional, in disregard of, and

394      with indifference to the rights of Plaintiff Ross.

395    54. As a result of Apple's infringement of Ross's exclusive rights, Ross is entitled to statutory

396        damages pursuant to 17 U.S.C. § 504(c) for Apple's infringement of each of the Copyrighted

397        original works. Ross further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. §

398        505.

399    55. The conduct of Apple is causing and, unless enjoined and restrained by this Court, will

400        continue to cause Ross great and irreparable injury that cannot fully be compensated or

401        measured in money. Ross has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and

402        503, Ross is entitled to injunctive relief prohibiting Apple from further infringing Ross's

403        copyrights, and ordering Apple to destroy all copies and knock-offs made in violation of

404        Ross's exclusive rights.


405                                    **COUNT IV**
406                      **DIRECT INFRINGEMENT OF COPYRIGHTS**
407    **VAu 1-186-859 Title of Work: Drawing 10.2 The Electronic Reading Device Patent**
408                            **Application #07/974,428**
409                            **[17 U.S.C. §§101, SEQ.]**
410

411    On information and belief, Ross further alleges that:

412    Ross incorporates herein by this reference each and every allegation contained in each paragraph

413    above. Ross refers to and incorporates paragraphs 1 to 55 above as though fully set forth herein.

414    56. Ross is, and at all relevant times has been, the copyright owner of exclusive rights under the

415        United States Copyright Laws, with respect to certain copyrighted works, including but not

416        limited to, the copyrighted work identified as the registration number captioned above.

417    57. Apple did file application for one or more design patent, the subject of which was copied

418        from Ross's 1992 design, the copyright registration of which is captioned above.

419    58. The foregoing acts of infringement have been willful and intentional, in disregard of, and

420         with indifference to, the rights of Ross.

421    59. As a result of Apple's infringement of Ross's exclusive rights, Ross is entitled to statutory

422         damages pursuant to 17 U.S.C. § 504(c) for Apple's infringement of each of the Copyrighted

423         original works. Ross further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. §

424         505.

425    60. The conduct of Apple is causing and, unless enjoined and restrained by this Court, will

426         continue to cause Ross great and irreparable injury that cannot fully be compensated or

427         measured in money. Ross has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and

428         503, Ross is entitled to injunctive relief prohibiting Apple from further infringing Ross's

429         copyrights, and ordering Apple to destroy all copies and knock-offs made in violation of

430         Ross's exclusive rights.

431                                      **COUNT V**

432                    **DIRECT INFRINGEMENT OF COPYRIGHTS**

433    **VAu 1-186-860 Title of Work: Drawing 10.3 The Electronic Reading Device Patent**

434                          **Application #07/974,428**

435                      **[17 U.S.C. §§101, SEQ.]**

436

437    On information and belief, Ross further alleges that:

438    Ross incorporates herein by this reference each and every allegation contained in each paragraph

439    above. Ross refers to and incorporates paragraphs 1 to 60 above as though fully set forth herein.

440

441   61. Ross is, and at all relevant times has been, the copyright owner of exclusive rights under the

442         United States Copyright Laws, with respect to certain copyrighted works, including but not

443         limited to, the copyrighted work identified as the registration number captioned above.

444   62. Apple did file application for one or more design patent, the subject of which was copied

445         from Ross's 1992 design, the copyright registration of which is captioned above.

446   63. The foregoing acts of infringement have been willful and intentional, in disregard of, and

447         with indifference to, the rights of Ross.

448   64. As a result of Apple's infringement of Ross's exclusive rights, Ross is entitled to statutory

449         damages pursuant to 17 U.S.C. § 504(c) for Apple's infringement of each of the Copyrighted

450         original works. Ross further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. §

451         505.

452   65. The conduct of Apple is causing and, unless enjoined and restrained by this Court, will

453         continue to cause Ross great and irreparable injury that cannot fully be compensated or

454         measured in money. Ross has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and

455         503, Ross is entitled to injunctive relief prohibiting Apple from further infringing Ross's

456         copyrights, and ordering Apple to destroy all copies and knock-offs made in violation of

457         Ross's exclusive rights.


458                                            **COUNT VI**
459                     **DIRECT INFRINGEMENT OF COPYRIGHTS**
460   **VAu 1-186-862 Title of Work: Drawing IOA Chart I The Electronic Reading Device Patent**
461                                **Application # 07/974,428**
462                               **[17 U.S.C. §§101, SEQ.]**
463

464   On information and belief, Ross further alleges that:

465  Ross incorporates herein by this reference each and every allegation contained in each paragraph

466  above. Ross refers to and incorporates paragraphs 1 to 67 above as though fully set forth herein.

467  66. Ross is, and at all relevant times has been, the copyright owner of exclusive rights under the

468  United States Copyright Laws, with respect to certain copyrighted works, including but not

469  limited to, the copyrighted work identified as the registration number captioned above.

470  67. Defendant Apple filed applications, and obtained, one or more patents, the content of which

471  included charts, some of which were strikingly similar and others were derivative of Ross's

472  chart, as identified in the copyright registration captioned above.

473  68. Apple utilized this chart as the basis for the process used by iTunes® and iBook Store® to

474  deliver the content, such as music, books, videos, lectures, etc., to its iTunes® application, to

475  identify subscribers, and to authorize financial transactions, exactly as illustrated in the

476  aforementioned flow-chart, identified as captioned above.

477  69. The foregoing acts of infringement have been willful and intentional, in disregard of, and

478  with indifference to the rights of Ross.

479  70. As a result of Apple's infringement of Ross's exclusive rights, Ross is entitled to statutory

480  damages pursuant to 17 U.S.C. § 504(c) for Apple's infringement of each of the Copyrighted

481  original works. Ross further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. §

482  505.

483  71. The conduct of Apple is causing and, unless enjoined and restrained by this Court, will

484  continue to cause Ross great and irreparable injury that cannot fully be compensated or

485  measured in money. Ross has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and

486  503, Ross is entitled to injunctive relief prohibiting Apple from further infringing Ross's

487     copyrights, and ordering Apple to destroy all copies and knock-offs made in violation of

488     Ross's exclusive rights.

489 **COUNT VII**
490 **DIRECT INFRINGEMENT OF COPYRIGHTS**
491 **TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application**
492 **#07/974,428**
493 **[17 U.S.C. §§101, SEQ.]**
494

495 On information and belief, Ross further alleges that:

496 Ross incorporates herein by this reference each and every allegation contained in each paragraph

497 above. Ross refers to and incorporates paragraphs 1 to 71 above as though fully set forth herein.

498 72. Ross is, and at all relevant times, has been, the copyright owner of exclusive rights under the

499     United States Copyright Laws, with respect to certain copyrighted works, including but not

500     limited to, the copyrighted work identified as the registration number captioned above.

501 73. Apple filed applications, and obtained, one or more utility patents, the content of which

502     included phrases, expressions and narrative patterns that are identical to certain phrases,

503     expressions and narrative patterns, found in Ross's text, identified as captioned above. Ross

504     alleges that, these similarities do not survive close scrutiny, as mere coincidence or the

505     consequence of linguistic sparseness causing uniformity in phrases, expressions or

506     descriptions of such devices and their utility.

507 74. The foregoing acts of infringement have been willful and intentional, in disregard of, and

508     with indifference to, the rights of Ross.

509 75. As a result of Apple's infringement of Ross's exclusive rights, Ross is entitled to statutory

510     damages pursuant to 17 U.S.C. § 504(c) for Apple's infringement of each of the Copyrighted

511 original works. Ross further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. §

512 505.

513 76. The conduct of Apple is causing and, unless enjoined and restrained by this Court, will

514 continue to cause Ross great and irreparable injury that cannot fully be compensated or

515 measured in money. Ross has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and

516 503, Ross is entitled to injunctive relief prohibiting Apple from further infringing Ross's

517 copyrights, and ordering Apple to destroy all copies and knock-offs made in violation of

518 Ross's exclusive rights.


519          **COUNT VIII**
520      **WILFULL INFRINGMENT OF COPYRIGHTS**
521 **VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device Patent**
522         **Application #07/974,428**
523        **[17 U.S.C. §§101, SEQ.]**
524

525 On information and belief, Ross further alleges that:

526 Ross incorporates herein by this reference each and every allegation contained in each paragraph

527 above. Ross refers to and incorporates paragraphs 1 to 80 above as though fully set forth herein.

528 77. Ross is informed and believes, and based thereon alleges that by refusing to comply with

529 Ross's Cease and Desist letter of March 10, 2015 within the time periods provided, Apple

530 has established willful infringement.

531 78. Apple continues to infringe the copyrights by continuing to publish and sell the infringing

532 materials in violation of the copyrights, and further has engaged in unfair trade practices and

533 unfair competition in connection with its publication and sale of the infringing material, thus

534 causing irreparable damage.

535          **COUNT IX**
536      **WILLFULL INFRINGMENT OF COPYRIGHTS**
537  **VAu 1-186-859 Title of Work: Drawing 10.2 The Electronic Reading Device Patent**
538         **Application #07/974,428**
539         **[17 U.S.C. §§101, SEQ.]**
540
541  On information and belief, Ross further alleges that:

542  Ross incorporates herein by this reference each and every allegation contained in each paragraph

543  above. Ross refers to and incorporates paragraphs 1 to 80 above as though fully set forth herein.

544  79. Ross is informed and believes, and based thereon alleges that by refusing to comply with

545    Ross's Cease and Desist letter of March 10, 2015 within the time periods provided, Apple

546    has established willful infringement.

547  80. Apple continues to infringe the copyrights by continuing to publish and sell the infringing

548    materials in violation of the copyrights, and further has engaged in unfair trade practices and

549    unfair competition in connection with its publication and sale of the infringing material, thus

550    causing irreparable damage.

551          **COUNT X**
552      **WILLFULL INFRINGMENT OF COPYRIGHTS**
553  **VAu 1-186-860 Title of Work: Drawing 10.3 The Electronic Reading Device Patent**
554         **Application #07/974,428**
555         **[17 U.S.C. §§101, SEQ.]**
556

557  On information and belief, Ross further alleges that:

558  Ross incorporates herein by this reference each and every allegation contained in each paragraph

559  above. Ross refers to and incorporates paragraphs 1 to 80 above as though fully set forth herein.

560  81. Ross is informed and believes, and based thereon alleges that by refusing to comply with

561    Ross's Cease and Desist letter of March 10, 2015 within the time periods provided, Apple

562    has established willful infringement.

563    82. The Apple continues to infringe the copyrights by continuing to publish and sell the

564         infringing materials in violation of the copyrights, and further has engaged in unfair trade

565         practices and unfair competition in connection with its publication and sale of the infringing

566         material, thus causing irreparable damage.

567

568                                          **COUNT XI**
569                        **WILFULL INFRINGMENT OF COPYRIGHTS**
570    **VAu 1-186-862 Title of Work: Drawing lOA Chart I The Electronic Reading Device Patent**
571                                **Application # 07/974,428**
572                                **[17 U.S.C. §§101, SEQ.]**
573

574    On information and belief, Ross further alleges that:

575    Ross incorporates herein by this reference each and every allegation contained in each paragraph

576    above. Ross refers to and incorporates paragraphs 1 to 80 above as though fully set forth herein.

577    83. Ross is informed and believes, and based thereon alleges that by refusing to comply with

578         Ross's Cease and Desist letter of March 10, 2015 within the time periods provided, Apple

579         has established willful infringement.

580    84. Apple continues to infringe the copyrights by continuing to publish and sell the infringing

581         materials in violation of the copyrights, and further has engaged in unfair trade practices and

582         unfair competition in connection with its publication and sale of the infringing material, thus

583         causing irreparable damage.

584                                          **COUNT XII**
585                        **WILFULL INFRINGMENT OF COPYRIGHTS**
586        **TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application**
587                                    **#07/974,428**
588                                **[17 U.S.C. §§101, SEQ.]**
589
590         On information and belief, Ross further alleges that:

591   Ross incorporates herein by this reference each and every allegation contained in each paragraph

592   above. Ross refers to and incorporates paragraphs 1 to 80 above as though fully set forth herein.

593   85. Ross is informed and believes, and based thereon alleges that by refusing to comply with

594        Ross's Cease and Desist letter of March 10, 2015 within the time periods provided, Apple

595        has established willful infringement.

596   86. Apple continues to infringe the copyrights by continuing to publish and sell the infringing

597        materials in violation of the copyrights, and further has engaged in unfair trade practices and

598        unfair competition in connection with its publication and sale of the infringing material, thus

599        causing irreparable damage.

600                              **COUNT XIII**
601   **UNJUST ENRICHMENT RESULTING FROM INFRINGEMENT OF COPYRIGHTS**
602   **VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device Patent**
603                         **Application #07/974,428**
604                         **[17 U.S.C. §§101, SEQ.]**
605
606   On information and belief, Ross further alleges that:

607   Ross refers to and incorporates paragraphs 1 to 80 above as though fully set

608   forth herein.

609   87. As a result of the conduct alleged herein, Apple has been unjustly enriched to

610   Ross's detriment.  Ross seeks a worldwide accounting and disgorgement of all ill-gotten gains

611   and profits resulting from Apple's inequitable activities.

612                              **COUNT XIV**
613   **UNJUST ENRICHMENT RESULTING FROM INFRINGEMENT OF COPYRIGHTS**
614   **VAu 1-186-859 Title of Work: Drawing 10.2 The Electronic Reading Device Patent**
615                         **Application #07/974,428**
616                         **[17 U.S.C. §§101, SEQ.]**
617
618   On information and belief, Ross further alleges that:

619   Ross refers to and incorporates paragraphs 1 to 80 above as though fully set

620    forth herein.

621    88. As a result of the conduct alleged herein, Apple has been unjustly enriched to

622    Ross's detriment.  Ross seeks a worldwide accounting and disgorgement of all ill-gotten gains

623    and profits resulting from Apple's inequitable activities.

624                                        **COUNT XV**
625    **UNJUST ENRICHMENT RESULTING FROM INFRINGEMENT OF COPYRIGHTS**
626    **VAu 1-186-860 Title of Work: Drawing 10.3 The Electronic Reading Device Patent**
627                              **Application #07/974,428**
628                              **[17 U.S.C. §§101, SEQ.]**
629

630    On information and belief, Ross further alleges that:

631    Ross refers to and incorporates paragraphs 1 to 80 above as though fully set

632    forth herein.

633    89. As a result of the conduct alleged herein, Apple has been unjustly enriched to

634    Ross's detriment.  Ross seeks a worldwide accounting and disgorgement of all ill-gotten gains

635    and profits resulting from Apple's inequitable activities.

636                                        **COUNT XVI**
637    **UNJUST ENRICHMENT RESULTING FROM INFRINGEMENT OF COPYRIGHTS**
638    **VAu 1-186-862 Title of Work: Drawing lOA Chart I The Electronic Reading Device Patent**
639                              **Application # 07/974,428**
640                              **[17 U.S.C. §§101, SEQ.]**
641

642    On information and belief, Ross further alleges that:

643    Ross refers to and incorporates paragraphs 1 to 80 above as though fully set

644    forth herein.

645    90. As a result of the conduct alleged herein, Apple has been unjustly enriched to

646    Ross's detriment.  Ross seeks a worldwide accounting and disgorgement of all ill-gotten gains

647    and profits resulting from Apple's inequitable activities.

**COUNT XVII**
**UNJUST ENRICHMENT RESULTING FROM INFRINGEMENT OF COPYRIGHTS**
**TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application**
**#07/974,428**
**[17 U.S.C. §§101, SEQ.]**

On information and belief, Ross further alleges that:

Ross refers to and incorporates paragraphs 1 to 80 above as though fully set

forth herein.

91. As a result of the conduct alleged herein, Apple has been unjustly enriched to

Ross's detriment. Ross seeks a worldwide accounting and disgorgement of all ill-gotten gains

and profits resulting from Apple's inequitable activities.


**PRAYER FOR RELIEF**

WHEREFORE, Ross prays for judgment against Apple as follows:

A. COPYRIGHT INFRINGMENTS

1.  Generally, for an injunction providing that:

"Apple shall be and hereby is enjoined from directly or indirectly

infringing Ross's rights under federal or state law in the

Copyrighted works and any works, whether now in existence or

later created, that is owned or controlled by Ross (or any parent,

subsidiary, affiliate entity, or Licensee of Ross) ("Ross's works"),

including, without limitation, by using the Internet or any online

media distribution system, to reproduce any of Ross's original

works, to distribute any of Ross's original works, or to make any

674            of Ross's original works available for distribution to the public,

675            except pursuant to a lawful license or with the express authority of

676            Ross. Apple also shall destroy all copies of Ross's original works

677            that Apple has warehoused anywhere in the world, including

678            owned, rented, leased facilities, or delivered to any Bailee, without

679            Ross's authorization and shall destroy all copies of those original

680            works transferred onto any physical medium or device, in Apple's

681            possession, custody, or control."

682     2.  For statutory damages for each infringement of each Copyrighted work

683         pursuant to 17 U.S.C. § 504:

684             A. VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device
685                Patent Application #07/974,428
686                1) For any and all damages sustained by Ross in a sum no less than $3

687                    Billion US);

688                2) For all of Apple's profits wrongfully derived from the infringement of

689                    Ross's intellectual property rights in an amount no less than $8 Billion

690                    US);

691                3) For future use of Ross's copyright property, a reasonable royalty of no less

692                    than 1.5% of worldwide gross sales, or such other arrangement as this

693                    Court may deem appropriate.

694             B. VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device

695                Patent Application #07/974,428

696                    1)   For any and all damages sustained by Ross in a sum no less than

697                         $150 Million US);

698   2)   For all of Apples' profits wrongfully derived from the

699   infringement of Ross's intellectual property rights in an amount no less

700   than $350 Million US);

701   3)   For future use of Ross's copyright property, a reasonable royalty of

702   no less than 0.5% of worldwide gross sales, or such other arrangement

703   as this Court may deem appropriate.

704
705   C.  VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device
706       Patent Application # 07/974,428
707       1)   For any and all damages sustained by Ross in a sum no less than

708       $150 Million US);

709       2)   For all of Apple's profits wrongfully derived from the

710       infringement of Ross's intellectual property rights in an amount no less

711       than $350 Million US);

712       3)   For future use of Ross's copyright property, a reasonable royalty of

713       no less than 0.5% of worldwide gross sales, or such other arrangement

714       as this Court may deem appropriate.

715   D.  VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading

716       Device Patent Application # 07/974,428

717       1)  For any and all damages sustained by Ross in a sum no less than $250

718       Million US);

719       2)  For all of Apples' profits wrongfully derived from the infringement of

720       Ross's intellectual property rights in an amount no less than $750

721       Million US);

3)  For future use of Ross's copyright property, a reasonable royalty of no less than 0.5% of worldwide gross sales, or such other arrangement as this Court may deem appropriate.

E.  TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application #07/974,428

1)  For any and all damages sustained by Ross in a sum no less than $900 Thousand US);

2)  For all of Apple's benefits wrongfully derived from the infringement of Ross's intellectual property rights in an amount no less than $3.5 Million US);

3. For Ross's costs in this action.

4. For Ross's reasonable attorneys' fees incurred herein.

5. For such other and further relief as the Court may deem just and proper.

6. A judgment that Apple has infringed one of more claims of each of Ross's asserted copyrights;

7. An order and judgment preliminarily and permanently enjoining Apple and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement of Ross's asserted copyrights;

8. A judgment awarding Ross all damages adequate to compensate for Apple's

744      infringement of Ross's asserted copyrights, and in no event less than a reasonable

745      royalty for Apple's acts of infringement, including all pre-judgment and post-

746      judgment   interest at the maximum rate permitted by law;

747    9.  A judgment awarding Ross all damages, including treble damages, based on any

748      infringement found to be willful, pursuant to 35 U.S.C. § 284, together with

749      prejudgment interest;

750  10. An order preliminarily and permanently enjoining Apple and its officers,

751      directors, agents, servants, employees, affiliates, attorneys, and all others acting in

752      privity or in concert with them, and their parents, subsidiaries, divisions, successors

753      and assigns, from directly or indirectly infringing Ross's copyrights;

754      or such other relief as the Court may deem appropriate.

755  B.  RESTITUTION

756    1.  An order granting Ross's demand for restitution for all of Apple's property

757      wrongfully derived from the misappropriation, conversion and transfer of Ross's

758      chattel, in an amount no less than $10 Billion US);

759    2.  An order granting Ross's demand of forfeiture of all of Apple's utility Patents,

760      derived, directly or indirectly, as a result of misappropriation, conversion or

761      transfer of Ross's chattel;

762    3.  An order granting Ross's demand of forfeiture of all of Apple's design Patents

763      whose subject chattel was misappropriated from Ross;

764  or grant such other relief as the Court may deem appropriate.

765               **Demand for Jury Trial**

766    Pursuant to Federal Rule of Civil Procedure 38(b), Ross demands trial by jury of

767    all issues triable by right of jury.

768

769

770    THOMAS S, ROSS

771    Dated: June 27, 2016

772                                                    Respectfully submitted,

773

774                                                    THOMAS S. ROSS
775                                                    Pro Se Attorney
776                                                    P.O. Box 279381
777                                                    Miramar, Florida 33027
778                                                    Telephone: 954-312-7532
779                                                    Facsimile: 954-312-7604
780                                                    Email: erd1992@globarize.com

781

782

783

784

785                            **Certificate of Service**

786        **I hereby certify** that a true and correct copy of the foregoing was served by US Mail on

787    June 27, 2016 on all counsel or parties of record on the Service List below.

788

789                                                    THOMAS S. ROSS
790                                                    Attorney *Pro Se*
791                                                    P.O. Box 279381
792                                                    Miramar, Florida 33027
793                                                    Telephone: 954-312-7532

794                                    Facsimile: 954-312-7604
795                                    Email: erd1992@globarize.com
796                            **SERVICE LIST**
797

798      Jeffrey V. Lasker, IP Transactions
799      Attorney E–mail Address (if applicable)
800      APPLE, INC.
801      1 Infinite Loop MS 169-31PL
802      Cupertino, California 95014
803      Telephone: (xxx)xxx–xxxx
804      Facsimile: (xxx)xxx–xxxx
805      Attorney for Apple. Inc.
806
807

808 **UNITED STATES DISTRICT COURT**
809 **SOUTHERN DISTRICT OF FLORIDA**
810
811
812 THOMAS S. ROSS,                                   )
813                            Plaintiff              )
814 vs.                                               )
815                                                   )
816 APPLE, INC., a California corporation             )
817                                                   )          **JURY TRIAL DEMANDED**
818                            Defendant              )
819 _____
820

821 **EXHIBITS**
822 **IN SUPPORT OF COMPLAINT FOR MISAPPROPRIATION OF INTELLECTUAL**
823 **PROPERTY AND COPYRIGHT INFRINGEMENTS**
824

825   **A.** Ross's Grant of Filing Date for Patent Application **07/974,428, dated 11/12/1992**
826   **B.** Ross's 1992 Original Drawings and Text and corresponding Certificates of Copyright
827         Registrations:
828         **1.** VAu 1-186-491  Title of Work: Drawing 10.1 The Electronic Reading Device
829               Patent Application #07/974,428
830         **2.** VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device
831               Patent Application #07/974,428
832         **3.** VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device
833               Patent Application # 07/974,428
834         **4.** VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading
835               Device Patent Application # 07/974,428
836         **5.** TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application
837               #07/974,428
838   **C.** Cease and Desist Demand
839         1. Ross's Cease and Desist Demand Letter
840         2. Ross's Supplemental documents requested by Apple
841         3. Ross's Follow up letter to phone conversation dated 4/20/2015
842         4. Apple's final response
843   **D.** Samples of Apple's infringing products
844         1. Apple's Restated Articles of Incorporation
845         2. Apple's devices
846         3. Apple's ITunes Store Communication Chart
847         4. Apple's print packaging
848         5. Apple's print advertising
849         6. Apple's Steve Jobs Quotes
850         7. Apple's Financial Charts and Reports
851

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

THOMAS S. ROSS,                           )
             Plaintiff                )
vs.                                       )
                           )
APPLE, INC., a California corporation      )
                           )    **JURY TRIAL DEMANDED**
             Defendant                )
_____

## EXHIBITS
## IN SUPPORT OF COMPLAINT FOR MISAPPROPRIATION OF INTELLECTUAL PROPERTY AND COPYRIGHT INFRINGEMENTS

**A.** Ross's Grant of Filing Date for Patent Application **07/974,428, dated 11/12/1992**

**B.** Ross's 1992 Original Drawings and Text and corresponding Certificates of Copyright Registrations:

    **1.** VAu 1-186-491  Title of Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428

    **2.** VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428

    **3.** VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application # 07/974,428

    **4.** VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading Device Patent Application # 07/974,428

    **5.** TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application #07/974,428

**C.** Cease and Desist Demand

    1. Ross's Cease and Desist Demand Letter

    2. Ross's Supplemental documents requested by Apple

    3. Ross's Follow up letter to phone conversation dated 4/20/2015

    4. Apple's final response

**D.** Samples of Apple's infringing products

    1. Apple's Restated Articles of Incorporation

    2. Apple's devices

    3. Apple's ITunes Store Communication Chart

    4. Apple's print packaging

    5. Apple's print advertising

    6. Apple's Steve Jobs Quotes

    7. Apple's Financial Charts and Reports

# EXHIBIT A

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| ...TION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY DOCKET NO./TITLE |
|---|---|---|---|
| 07/974,428 | 11/12/92 | ROSS | T |

03B1/1221

THOMAS S. ROSS
1287 GLENCOE AVE.
HIGHLAND PARK, IL  60035

0000

Plaintiff's
Exhibit
A

exhibitstickers.com #496

DATE MAILED:    12/21/93

## NOTICE TO FILE MISSING PARTS OF APPLICATION
### FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a

X large entity, ☐ small entity (verified statement filed), is $ 840.⁰⁰

1. X  The statutory basic filing fee is: X missing ☐ insufficient. Applicant as a X large entity

☐ small entity, must submit $ 710.⁰⁰ to complete the basic filing fee and MUST ALSO
SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐  Additional claim fees of $_____ as a ☐ large entity ☐ small entity, including any required multiple
dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional
claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. X  The oath or declaration:
X  is missing.
☐  does not cover items omitted at time of execution.

An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application
Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED
BELOW.

# EXHIBIT B

10.1



DRAWING I

A

DESCRIPTION OF DEVICE

This is an computerized readout device.

1) The diskette that contains the text is loaded.

2) Select page or start at last-page-read.

3) Built in options:
   A. Calculator
   B. Calendar
   C. Clock
   D. Timer
   E. Skystream Message Handler

SNAP-ON RECHARGEABLE BATTERIES

LED BACK-LIT SCREEN (COLOR)

FEATURES
- 2MB RAM MEMORY - 2MB ROM
- SELF-BOOTING MS-DOS BASED
- 1.44 MB 3½" DISKETTE DRIVE
- ACA BACK-LIT SUPER TWIST SCREEN (COLOR OPTIONAL)
- VGA GRAPHICS ADAPTER (OPTIONAL)
- NUMERIC KEY BOARD (PHONE STYLE) TONED-LIGHTED
- 2-5 HRS RECHARGABLE BATTERY (OR SOLAR CELLS OR 120v AC)

By: THOMAS S. ROSS
© JUNE 28, 1992
PATENT PENDING

OPTIONAL DEVICE LABELS
- PALM-TEXT
- HAND-BOOK
- LIBRETTO
- POCKET-BOOK
- DATA-BOOK
- POTER BOOK

CYBER TEXT ™

1.44 MB 3½ DISK DRIVE

AC PLUG

BWD

SCREEN LIGHT ON-SPKR

POWER ON/OFF

SCREEN CLEAR

FWD

USER CODE STORE

LAST PAGE STORE

Plaintiff's Exhibit B.1
exhibitdexes.com #496

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VAu 1-186-491

**Effective date of
registration:**

May 4, 2014

---

## Title

**Title of Work:** Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428

**Title of Larger Work:** The Electronic Reading Device Patent Application # 07/974,428

## Completion/Publication

**Year of Completion:** 1992

## Author

■ **Author:** Thomas S. Ross

**Author Created:** text, technical drawing

**Citizen of:** United States

**Year Born:** 1944

## Copyright claimant

**Copyright Claimant:** Thomas S. Ross

▓▓▓▓▓▓▓▓▓▓, Miramar, FL, 33027, United States

## Rights and Permissions

**Name:** Thomas S. Ross

**Email:** tross@globarize.com        **Telephone:** ▓▓▓▓▓▓▓

**Address:** ▓▓▓▓▓▓▓▓▓▓

Miramar, FL 33027  United States

## Certification

**Name:** Thomas S Ross

**Date:** May 4, 2014

---

**Correspondence:** Yes

10.2

DRAWING II

A - Reading Device (CYPHER-TEXT™)
B - Writing Device (CYPHER-NOTE™)



FEATURES

(each Device)
• 80386SX Processor (16 MHz)
• 80 MB HARD DRIVE (WRITING DEVICE)
• 160 MB DRAM (Reading Device)
• 2 MB RAM
• 3,5 1.44 MB DISK DRIVE
• VGA NON-GLARE backlit supertwint LCD DISPLAY res 640 x 480 GRAPHICS
• 81-KEY KEYBOARD (WRITING DEVICE)
• 17-KEY PHONE-TYPE KEYBOARD (READING DEVICE)
• INTERNAL RECHARGEABLE NICAD BATTERY
• AC POWER INCL
• DIM: 7" x 4" x 1¼"
• SOLAR CELLS

OPTIONS (either A or B)
• MS DOS® 5.0
• CALENDAR/CLOCK
• PARALLEL PRINTER PORT
• CELLULAR PHONE
• FAX BOARD
• MODEM
• SKYTEL® MESSAGE HANDLER

BY: THOMAS S. ROSS
© JUNE 28, 1992
PATENT PENDING

Plaintiff's Exhibit
B.2
exhibitstickers.com #498

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VAu 1-186-859

**Effective date of registration:**

May 4, 2014

## Title

| | |
|---|---|
| **Title of Work:** | Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428 |
| **Title of Larger Work:** | The Electronic Reading Device Patent Application #07/974,428 |

## Completion/Publication

**Year of Completion:** 1992

## Author

- **Author:** Thomas S. Ross
- **Author Created:** text, technical drawing
- **Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** Thomas S. Ross
██████████████ Miramar, FL, 33027, United States

## Rights and Permissions

**Name:** Thomas S. Ross
**Email:** tross@globarize.com     **Telephone:** ████████
**Address:** ████████████
Miramar, FL 33027  United States

## Certification

**Name:** Thomas S Ross
**Date:** May 4, 2014

May 23, 1992

T. Ross

C 1992 Thomas S. Ross

A        B

solar Cells

CYPHER

Electronic
Paper Pad

" Reading
Device "

BACK-LIT LIQUID CRISTAL
SUPER TWIST SCREENS
( B W or Color )

ON - OFF

power indicator

set last pg ( if different from current pg )

EEC

pg own

pg op

numeric key Pad
• Security code
• pg select
• calculator

Features

1. DOS operating system
2. automatic bootstrap
3. Owner Security
4. Authorized user list
5. ROM capacity ?
6. Graphics ?
7. Variable type
8. rechargeable batteries ( 12 hrs )
9. Disk Drive ( 1.44 mgb ) DSDD
10. Synchronized dual access
11. parallel printer interface
12. Modem / Fax
13. External Screen Interface
14. A — Display Screen ( OUTPUT )
    B — Note pad w/pen ( INPUT )

B

RECHARGABLE
POWER PACK

DISK DRIVE

pen
connector

AC
connection

A

controx[ic]
Pointer
interface

RS-232

( Modem
interface )
( or FAX )

External Screen
interface

Plaintiff's
Exhibit
B.3
exhibitsticker.com #496

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VAu 1-186-860

**Effective date of registration:**

May 4, 2014

---

## Title

**Title of Work:** Drawing 10.3 The Electronic Reading Device Patent Application # 07/974,428

**Title of Larger Work:** The Electronic Reading Device Patent Application # 07/974,428

## Completion/Publication

**Year of Completion:** 1992

## Author

- **Author:** Thomas S. Ross

  **Author Created:** text, technical drawing

  **Citizen of:** United States

  **Year Born:** 1944

## Copyright claimant

**Copyright Claimant:** Thomas S. Ross

████████████, Miramar, FL, 33027, United States

## Rights and Permissions

**Name:** Thomas S. Ross

**Email:** tross@globalize.com          **Telephone:** ████████

**Address:** ████████████

Miramar, FL 33027  United States

## Certification

**Name:** Thomas S Ross

**Date:** May 4, 2014

---

By: Thomas S Ross
June 28, 1992
C 1992 Thomas S. Ross

## Skyguild System for use with ERD

```
┌─────────────────────┐                    ┌─────────────────────┐
│ Literary works      │◄─────────────      │ Subscriber listing  │
│ in Master computer  │                    │ in Master computer  │
│ Storage             │                    │ Storage             │
└─────────────────────┘                    └─────────────────────┘
         │                                            ▲
         │              ┌──────────────┐              │
         │              │ Clearinghouse│──────────────┘
         │              │ Processing   │
         │              └──────────────┘
         │                     ▲
         │              ┌──────────────┐
         │              │ Subscriber Requests │
         │              │ literary work       │
         │              └──────────────┘
         ▼
┌─────────────────────┐
│ Download literary work│
│ requested to subscriber│
│ reading device        │
└─────────────────────┘
```

## Methods of transmission

1) Magnetic storage medium (disk-drive only, Models)
2) Conventional switched telephone lines (Modem Models)
3) Built-in cellular communication component (cellular network access Models)



Plaintiff's Exhibit
B.4
exhibitstickers.com #406

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

# VAu 1-186-862

**Effective date of registration:**

May 4, 2014

## Title

| | |
|---|---|
| **Title of Work:** | Drawing 10.4 Chart 1 The Electronic Reading Device Patent Application # 07/974,428 |
| **Title of Larger Work:** | The Electronic Reading Device Patent Application # 07/974,428 |

## Completion/Publication

**Year of Completion:** 1992

## Author

- **Author:** Thomas S. Ross

**Author Created:** text, technical drawing

**Citizen of:** United States

**Year Born:** 1944

## Copyright claimant

**Copyright Claimant:** Thomas S. Ross

▇▇▇▇▇▇▇▇, Miramar, FL, 33027, United States

## Rights and Permissions

**Name:** Thomas S. Ross

**Email:** tross@globalize.com        **Telephone:** ▇▇▇▇▇▇▇

**Address:** ▇▇▇▇▇▇▇▇

Miramar, FL 33027  United States

## Certification

**Name:** Thomas S Ross

**Date:** May 4, 2014

APPLICATION FOR PATENT

BY

THOMAS S. ROSS

FOR

The Electronic Reading Device

C 1992 Thomas S. Ross



## TABLE OF CONTENTS

                                                        Page

1.0 Specifications.....................................  2

2.0 Drawings..........................................  9

3.0 Oath by applicant.................................  11

1

## BASIS FOR APPLICATION FOR A PATENT

THE ELECTRONIC READING DEVICE, application for a patent for which is herewith made, is a device which, by aggregating existing component devices in such a manner as to constitute an original invention, as defined under Title 35 USCA, 10., constitutes **"new use"** of a known process and machine, and is, therefore, patentable pursuant to Title 35 USCA, 101, 102 and 103.

The application for a patent for THE ELECTRONIC READING DEVICE is made this **tenth day of September, 1992,** by providing the **Specifications,** pursuant to Title 35 USCA, 112, a **Drawing** of the device, pursuant to Title 35 USCA, 113 and a **Oath** pursuant to Title 35 USCA, 115, as provided for in Title 35 USCA, 111 of Chapter 11 - Application for Patent.

2

## 1.0 Specifications

    1.1 Description of invention

    1.2 Claims

## 1.1 Description of invention

The device, constituting the invention, is a computerized, electronic reading device, the purpose of which is to provide an alternative to paper-based print media such as books, magazines, manuscripts and news media.

In general, the Electronic Reading Device shall **function** as a book, having portability, ease of use, variety of physical size, capacity for amount and type of information generally associated with paperback books, hard-bound books, instructional textbooks, magazines, newsprint and all manner of printed reading material but without the physical limitations inherent with paper media, pages, single volume use and the deteriorating qualities characteristic with all such printed media. Rather, the Electronic reading device will generally be comprised of **hardware** and **software** the combination of which shall allow for the use of the same physical device for many units of information, generally organized as works of literature, instructional texts, news information, artistic displays, technical and scientific writings, legal and business information, as well as entertainment information.

3

The **hardware** shall be of the dimensions and weight generally varied in size to that associated with the range between a paperback and a hard-bound, standard textbook.  The reading device shall comprise of an input-output machine capable of accepting information from an external storage medium and storing same, internally in such a fashion as to remain at the user's disposal until disposed of subject only to the capacity limitations of the **internal storage** component.  It shall further be capable of displaying the desired information on an output component such as a built-in **display screen**, which may be limited to "text" material or may, optionally, be capable of displaying "graphic" material in monochrome or color, depending on the desired model.  The reading device shall, furhter, be capable of accepting and processing information provided by the user.  Such information shall be accepted through an input component such as a built-in **keyboard**, touch-screen, or mouse-type input component, whose functionality, may be limited to accepting commands for the purpose of terminating the device (power On-off), turning the screen light on or off, clearing the screen, storing authorized user codes, storing last-page on display before power-off, page selection and paging forward or backward, or it may be furhter expanded to include more extensive input such as the capability of accepting user's notations and requests for other ancillary functions, if installed, such as calendar, time, calculator, timer, messaging as well as other built-in or add-on functions.  Finally, the reading device shall have a **power supply** that will allow it to operate with or without a dependent AC power source, having a built-in,

4

rechargeable power storage device such as an easily replaceable
battery and/or solar cell component, and the means to connect to
a standard AC power source.

The **software** shall comprise of a self-booting **operating
system** that will provide management of programmed instructions and
information sufficient to process the neccessary input-output functions
inherent to the design of the electronic reading device.  It shall
also include proprietary **program products** necessary to provide the
functionality generally associated with the reading and, optionally,
writing of printed material..  The device may, also, include proprietary
program products to allow for security functions, printing and
communication functions as well as clock, calendar, timer and other
numeric calculations.  The device shall also contain software functions
generally associated with a group of programs known as **utilities**,
such as sorting, organizational tools, logs and install facility,
menu handling and message handling functions.

In its simplest form, the user shall **operate** the reading
device by being able to hold it on one hand, turn on the power by
pressing the power key, enter the pre-selected user code, and turn the
screen light on or off, depending on the ambient light conditions.
At this point, the reading device shall activate the initialization
process (boot up) provided by the installed operating system, and
shall then display a "Master Menu" allowing the user to select a
number of functions, as previously described, so long as those functions

5

had been previously installed. Where the reading function is
selected, the device shall load the selected reading material, if
internally installed, otherwise, it shall request that the user load
the desired text through the external input device component such as
a magnetic medium (floppy diskette), CD or by transmission component.
Having completed the loading of the text material, the reading device
shall automatically display the last page on the screen before
termination of the reading function. Should the user desire to access
a page other than the one on display, the user may select such a page
through the input component, or may page forward or backward one page
at the time, or may go directly to the first or last page of the text
by activating the appropriate key provided for that purpose.

In its more complex form, the reading device may accept
notations made by the user, via the input component, in such a manner
as to associate such notes with the specific text loaded, as well as,
if desired, with a specific page on the display screen at the time
the notes were taken. The device shall, further, be capable of
re-displaying such notations with reference to its associated text and
page, in conjunction with the actual text and page referenced, or
independently. The notations made by the user may, optionally, be
displayed on a separate screen, similar in size and dimensions as the
display screen used for the reading material, thus positioning one
adjacent to the other in such a manner as to provide two separate, but
connected, leaves, providing an effect much like the two leaves of
an open book, where one side shall be the reading material and the other
shall be the user's note-book, or they may be displayed on the same

single-leafed display screen providing a "split-screen" display where the top part, for example, would display the reading text and the bottom portion would display the user's notes, one portion operating independently of the other while still retaining their relationship of reference.

Other ancillary functions installed in the reading device would be selected by the user, from the master menu and might be activated simultaneously with the reading/writing function, as an overlay to the primary screen display, or may be activated to perform on a dedicated basis and on a cleared screen.

7

## 1.2 Claim

The electronic reading device is a machine that aggregates existing hardware components and existing software components, together with proprietary programs, in such amanner as to constitute original intellectual property qualifying as an original invention as defined under Title 35 USCA, 100.

The uniqueness of the device is that its construction, material and operation are specifically combined to create the functionality of existing printed media, such as all manner of books, magazines and newsprint, in a novel manner, by replacing the structure of such items with the structure of the device, replacing the paper material with the material aggregated to produce information upon a display component while retaining the familiar operation associated with reading such printed material , with added functionality that enhances the usefulness of reading tasks by simultaneously increasing availability of text volume while decreasing the mass otherwise required to store equivalent text volume on to printed media. Additionally, the device uniquely associates the ease of note-taking, together with reading of text, thus facilitating instructional, study and research tasks. Finally, the devise integrates input-output component functions, cellular communication functions and the portability of reusable power supplies for the purpose of providing a unique reading/writing device with access to remote text storage facilities that would readily provide the user with information limited only by the

8

capacity of its internal storage component and usage independent of AC power supplies for periods of time limited only by the capacity limitations of the reusable, built-in other storage component.

All of these functions are so combined in a device constructed for portability and versatility so as to greatly improve ready access to reading material without the traditional inconvenience of bulk associated with accessability of large amounts of printed text, and bundled in a light, compact and easily portable device that would additionally function as a note-book (optionally), calendar, clock, timer, calculator, factsimile device, cellular phone, message handler, and other presently unforseen functional possibilities, all without the inconvenience and bulk of having all of these functionalities on individual and separate units.

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TXu 1-919-460

**Effective date of registration:**

May 4, 2014

---

## Title

**Title of Work:** The Electronic Reading Device

Patent Application #07/974,428

## Completion/Publication

**Year of Completion:** 1992

## Author

■ **Author:** Thomas S Ross

**Author Created:** text

**Citizen of:** United States

**Year Born:** 1944

## Copyright claimant

**Copyright Claimant:** Thomas S Ross

████████████ Miramar, FL, 33027, United States

## Rights and Permissions

**Name:** Thomas S. Ross

**Email:** tross@globarize.com    **Telephone:** ████████

**Address:** ████████████

Miramar, FL 33027  United States

## Certification

**Name:** Thomas S. Ross

**Date:** May 4, 2014

---

**Correspondence:** Yes

Page 1 of 1

# EXHIBIT C

*Courtney B. Weisholtz, P.A.*
**Attorney at Law**
P.O. Box 277794
Miramar, Florida  33027
Phone: 954-298-8061
Email: cbwlegal@aol.com

March 10, 2015                                   <u>**Via Certified Mail, Return Receipt Requested**</u>

Timothy Donald Cook
CEO
 APPLE, INC.
1 Infinite Loop
Cupertino, California 95014

Re: **CEASE AND DESIST DEMAND**

Dear Timothy Cook,

This firm and the undersigned, represent Thomas S. Ross in the enforcement of his intellectual property rights. Thomas S. Ross is the author and owner of the following copyright protected works that Apple, Inc. has been, and continues to, infringe:

- VAu 1-186-491  **Title** of Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428
- VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428
- VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application #07/974,428
- VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading Device Patent Application # 07/974,428
- TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application #07/974,428

Apple, Inc. has infringed, and continues to infringe, on his works, by unauthorized copying of same on multiple media, including, but not limited to, product designs, content on *www.apple.com*, advertisements, product boxes and packaging, user manuals, technical manuals, patent drawings and claims.

We hereby demand, on behalf of our client, that you 1) **immediately cease and desist** distribution of any infringing works and publications, and that you further provide verification in writing within twenty (20) business days of the date of this letter, that such activity has ceased, 2) compensate Thomas S. Ross, and, to that end, within thirty (30) business days, provide all necessary information needed to make an equitable determination, including, but not limited to, inventory, location of profit centers, income generating websites, accounting of all sales and revenues, and any and all other media upon which Thomas S. Ross' works have been copied or affixed to.

We ask that you acknowledge receipt of this letter promptly and that you ask your counsel to contact us within ten (10) business days of the date of this letter so that we may be apprised of your intentions.

Sincerely,


Courtney B. Weisholtz
Attorney at Law
CBW/tr
cc:  Peter M. Moldave, Esq.
     John Fore, Esq.



*Courtney B. Weisholtz, P.A.*
**Attorney at Law**
P.O. Box 277794
Miramar, Florida 33027
Phone: 954-298-8061
Email: cbwlegal@aol.com

Date:  May 4, 2015                          <u>Via FedEx Return Receipt Requested</u>

Jeffrey V. Lasker
IP Transactions
 APPLE, INC.
1 Infinite Loop MS 169-31PL
Cupertino, California 95014

Re: Request for information

Dear  Mr. Lasker,

Thank you for your response to my client's Cease and Desist Demand sent to you on or about March 10, 2015. Please find enclosed the following documents:

1.  copies of the following Certificates of Copyright Registration, together with copies of the Copyrighted original works:
    - VAu 1-186-491  Title of Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428
    - VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428
    - VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application # 07/974,428
    - VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading Device Patent Application # 07/974,428
    - TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application #07/974,428

2.  The objects that are targets for copyright infringement, are:
    - Iphone® product designs
    - Ipads® product designs;
    - Itunes® communication diagrams;
    - Designs and text contained in several of Apple's Patents
    - Two-screen device products

A comparison of our client's copyrighted works, to Apple's products, designs, advertisements, broadcasted images, etc.,  will make the infringement issues self evident.



Courtney Weisholtz, P.A., Attorney At Law, P.O. Box 277794 Miramar, Florida  33027

We ask that you acknowledge receipt of this material promptly, and that you contact us within ten (10) business days of the date of this letter, so that we may be apprised of your intentions.  We remind you that time is of the essence, per original Cease and Desist Letter, demands of which are herein incorporated.


Sincerely,


Courtney B. Weisholtz
Attorney at Law
CBW/tr

*Courtney B. Weisholtz, P.A.*
**Attorney at Law**
P.O. Box 277794
Miramar, Florida  33027
Phone: 954-298-8061
Email: cbwlegal@aol.com

Date:  June 1, 2015                                    <u>Via EMAIL and Certified U.S. Mail</u>

Jeffrey V. Lasker
IP Transactions
 APPLE, INC.
1 Infinite Loop MS 169-31PL
Cupertino, California 95014

Re: Phone call of 5/20/2015

Dear  Mr. Lasker,

It was a pleasure to talk to you on Wednesday, May 20, 2015.  During the conversation, you indicated that you were "confused" about my client's claims and demands, so I explain.

The Cease and Desist Letter of March 10, 2015, plainly states that Apple is infringing on five (5) registered original works. The identifying descriptions of the registrations were plainly included.  The letter goes on to summarize the way Apple has, and is, infringing and that my client demands just compensation.

In a letter dated May 4, 2015, you requested additional information, to which I responded by sending you a copy of each **Certificate**, along with a copy of each **original work**.  I also enumerated some of **Apple's infringing works.**

As indicated above, we then had a phone conversation on May 20th, where you expressed confusion as to copyrightability, similarity and access to my client's original works.

Without litigating those issues in this correspondence, let me offer but the briefest of rebuttals, to provide additional clarity.

As to copyrightability, the Copyright Act of 1986 explicitly included "technical drawings, charts, and writings, as works that are protected. 17 USC §101 *"Pictorial, graphic, and sculptural works" include two-dimensional and three dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans \* \* \*"*

As to the rest of the issues, I will quote from a recent U.S. Supreme Court Case:

Page **1** of 2



Courtney Weisholtz, P.A., Attorney At Law, P.O. Box 277794 Miramar, Florida 33027

*"Key evidence in the litigation, then, will be the **certificate**, the **original work**, and the **allegedly infringing** work. And the adjudication will often turn on the factfinder's direct comparison of the original and the infringing works, i.e., on the factfinder's "**good eyes and common sense**" in comparing the two works' "**total concept and overall feel**." <u>Petrella v Metro-Goldwyn-Mayer, Inc.</u>, 572 U. S. ____ (2014) quoting Peter F. <u>Gaito Architecture, LLC v. Simone Development Corp.</u>, 602 F. 3d 57, 66 (CA2 2010) (internal quotation marks omitted).*

       Apple, Inc., and its worldwide supply chain, affiliates, agents and companies, continue the willful infringements, unabated. My client is amenable to entertain discussions towards a reasonable out of court settlement. To this end, please respond in writing, within five (5) calendar days of the date of this letter, to let me know whether you are interested in exploring a compromise, or not. I remind you that time is of the essence, and that demands of the Cease and Desist letter, have yet to be met, and are herein incorporated.

Sincerely,

Courtney B. Weisholtz
Attorney at Law
CBW/tr

Page 2 of 2



June 9, 2015                                    Via Overnight Mail & Email

Courtney B. Weisholtz
Courtney B. Weisholtz, P.A.
PO Box 277794
Miramar, Florida 33027
Email: cbwlegal@aol.com

                    Re:    Thomas S. Ross

Dear Courtney,

I write in response to your letters dated May 4, 2015 and June 1, 2015, and to follow up on our phone conversation on May 20, 2015.

Based on our understanding of the matter, Mr. Ross is claiming copyright in certain patent applications.  During our conversation on May 20, you were unable to provide any details as to how you contend Apple accessed Mr. Ross's patent applications, other than to say that Apple copied Mr. Ross's "ideas."   You also confirmed that Mr. Ross's patent applications were not disseminated or published, other than possibly in connection with filings relating to Mr. Ross's litigation against the U.S. government.

We have investigated Mr. Ross's claims and believe they have no merit.  Copyrights do not protect "ideas."  *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 US 340, 345 (1990).  And they do not protect against independent creation.  *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 4 (9th Cir. 1933) ("There can be no infringement unless there has been a copying either in whole or in part of the copyrighted work.").  A claim for copyright infringement thus requires proof of access and actual copying.  *Jason v. Fonda*, 698 F.2d 966 (9th Cir. 1982).

Based on the information you provided, Apple could not possibly have had access to, let alone copied, Mr. Ross' applications.  Additionally, based on our review of the materials you provided, we do not believe there is any similarity between Apple's products and Mr. Ross's applications. Any pursuit of claims against Apple in light of these facts would be baseless and objectively unreasonable.  *See Fogerty v. Fantasy, Inc.*, 94 F.3d 553 (9th Cir. 1996).  We, therefore, do not believe there are any grounds for Apple to cease any activities or provide any compensation to Mr. Ross.

If you would like to discuss this matter further, please feel free to contact me.  Absent further information from you, we will consider this matter closed.

Regards,

Jeffrey V. Lasker
Legal Counsel, IP Transactions

**Plaintiff's Exhibit**

**C.4**

exhibitstickers.com #406

Apple Inc.
Jeffrey Lasker
408-862-1377
1 Infinite Loop, MS 169-3IPL
Cupertino, CA  95014-2084

# EXHIBIT D

EX-3.1 2 dex31.htm RESTATED ARTICLES OF INCORPORATION

**EXHIBIT 3.1**

## RESTATED ARTICLES OF INCORPORATION
### OF
### APPLE INC.

Peter Oppenheimer and Daniel Cooperman certify that:

1.   They are the Senior Vice President and Chief Financial Officer and the Senior Vice President, General Counsel and Secretary, respectively, of Apple Inc., a California corporation.

2.   The Restated Articles of Incorporation of this corporation, filed on January 27, 1988, were amended by separate Certificates of Amendment, filed on February 1, 1990, April 22, 1999, May 4, 2000, and February 25, 2005, and by a Certificate of Ownership, filed on January 9, 2007.

3.   A Certificate of Determination of Preferences of Series A Non-Voting Convertible Preferred Stock was filed on August 6, 1997.

4.   Pursuant to Section 1110(d) of the California Corporations Code, the name of this corporation was changed from "Apple Computer, Inc." to "Apple Inc." on January 9, 2007.

5.   The Restated Articles of Incorporation of this corporation are restated to read in full as follows:

"**I**

The name of the corporation is Apple Inc.

**II**

The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

**III**

This corporation is authorized to issue two classes of shares designated respectively "Common Stock" and "Preferred Stock." The number of shares of Common Stock which this corporation is authorized to issue is 1,800,000,000. The number of shares of Preferred Stock which this corporation is authorized to issue is 5,000,000.

**IV**

The Preferred Stock may be issued from time to time in one or more series. The Board of Directors is authorized to fix the number of shares of any series of Preferred Stock and to determine the designation of any such series. The Board of Directors is further authorized to determine or alter the rights, preferences, privileges and restrictions granted to or imposed upon any wholly unissued series of Preferred Stock and, within the limits and restrictions stated in any resolution or resolutions of the Board of Directors originally fixing the number of shares constituting any series, to increase or decrease (but not below the number of shares of each series outstanding) the number of shares of any such series subsequent to the issuance of shares of that series.



**Plaintiff's Exhibit**

**D.1**

exhibitexpress.com 8456

**V**

Section 1.   *Limitation of Directors' Liability.*   The liability of the directors of this corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

Section 2.   *Indemnification of Corporate Agents.*   The corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporations Code) through bylaw provisions, agreements with agents, vote of shareholders or disinterested directors or otherwise, in excess of the indemnification otherwise permitted by Section 317 of the California Corporations Code, subject only to the applicable limits set forth in Section 204 of the California Corporations Code with respect to actions for breach of duty to the corporation and its shareholders.

Section 3.   *Repeal or Modification.*   Any repeal or modification of the foregoing provisions of this Article V by the shareholders of this corporation shall not adversely affect any right or protection of an agent of this corporation existing at the time of such repeal or modification.

**VI**

There shall be no right with respect to shares of stock of this corporation to cumulate votes in the election of directors.

**VII**

Through and until immediately prior to the annual meeting of shareholders to be held in fiscal year 2000, the directors shall be divided into two classes, designated Class I and Class II, each consisting of one-half of the directors or as close an approximation as possible, and each director shall serve for a term running until the second annual meeting of shareholders succeeding his or her election and until his or her successor shall have been duly elected and qualified; provided, however, that the terms of all directors shall expire at the annual meeting of shareholders to be held in fiscal year 2000. Commencing at the annual meeting of shareholders to be held in fiscal year 2000, each director shall be elected to serve until the annual meeting of shareholders held in the following fiscal year or until his or her successor shall have been duly elected and qualified.

**VIII**

The Certificate of Determination of Preferences of Series A Non-Voting Convertible Preferred Stock, filed on August 6, 1997, a copy of which is attached hereto as Exhibit A, is hereby incorporated by reference as Article VIII."

6.   Pursuant to Section 910 of the California Corporations Code, the foregoing restatement of the Restated Articles of Incorporation of this corporation was duly approved by the Board of Directors alone on May 27, 2009.

The undersigned declare under penalty of perjury that the matters set forth in the foregoing certificate are true of their own knowledge.

Executed at Cupertino, California on July 9, 2009.

/s/   Peter Oppenheimer
_____
Peter Oppenheimer
*Senior Vice President and*
*Chief Financial Officer*

/s/   Daniel Cooperman
_____
Daniel Cooperman
*Senior Vice President, General Counsel*
*and Secretary*

-3-

•••• ⬡    9:41 AM    ⬩ 100% 🔋

maui|    ⊗  Cancel

OFFERS

**Adorable Garden Gingerbread House**
Maui, HI • Entire home
★ ★ ★ ★ ★ 47 Ratings
Airbnb

**K**   **San Francisco to Maui**
Flight VA220 from SFO to OGG
Tuesday, July 7, 2015
• KAYAK

WIKIPEDIA

**Maui**
The island of Maui is **the second-largest**
of the Hawaiian Islands at 727.2 square
miles and is the 17th largest island in the
United States. Maui is part of the State of
Hawaii and is the larger of Maui County ... >

q w e r t y u i o p

a s d f g h j k l

⬆ z x c v b n m ⊗

123 ☺ space Search

iPhone



Plaintiff's
Exhibit
D.2



iPad

iPhone



www.patentlyapple.com

www.patentlyapple.com

FIG. 2A

iTunes Store Patent



See Plaintiff's Exhibit B.4
to compare

exhibitindexes.com 8496

Plaintiff's
Exhibit
D.3

**U.S. Patent**          May 10, 2016          Sheet 1 of 5          US D755,784 S



*FIG. 1*

*FIG. 2*

**U.S. Patent**          May 10, 2016          Sheet 2 of 5          US D755,784 S



FIG. 3                              FIG. 4

US00D724078S

(12) **United States Design Patent**      (10) Patent No.:      **US D724,078 S**
Andre et al.                            (45) Date of Patent:   ** **Mar. 10, 2015**

(54) **ELECTRONIC DEVICE**

(71) Applicant: **Apple Inc.**, Cupertino, CA (US)

(72) Inventors: **Bartley K. Andre**, Palo Alto, CA (US);
**Daniel J. Coster**, San Francisco, CA
(US); **Daniele De Iuliis**, San Francisco,
CA (US); **Richard P. Howarth**, San
Francisco, CA (US); **Jonathan P. Ive**,
San Francisco, CA (US); **Steven P. Jobs**,
Palo Alto, CA (US); **Duncan Robert
Kerr**, San Francisco, CA (US); **Shin
Nishibori**, Kailua, HI (US); **Matthew
Dean Rohrbach**, San Francisco, CA
(US); **Peter Russell-Clarke**, San
Francisco, CA (US); **Douglas B.
Satzger**, Menlo Park, CA (US);
**Christopher J. Stringer**, Woodside, CA
(US); **Eugene Antony Whang**, San
Francisco, CA (US); **Rico
Zörkendörfer**, San Francisco, CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/467,655**

(22) Filed: **Sep. 20, 2013**

**Related U.S. Application Data**

(60) Continuation of application No. 29/432,242, filed on
Sep. 14, 2012, now Pat. No. Des. 690,298, which is a

(Continued)

(51) **LOC (10) Cl.** ............................................... **14-02**

(52) **U.S. Cl.**
USPC ...................................................... **D14/341**

(58) **Field of Classification Search**
USPC ............. D14/341–347, 137, 138 R, 138 AA,
D14/138 C, 138 G, 496, 203.1, 203.3, 203.4,
D14/203.7, 129, 130, 147, 218, 248, 389,
D14/388, 426, 420; D10/65, 104.1;
D18/6–7; D21/324, 329, 330;
455/556.1, 556.2, 566, 575.1, 90.3;
379/433.04, 433.01, 433.06, 916;
345/173, 901, 905; 361/679.26, 679.3,
361/679.55, 679.56
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

D25,638 S    6/1896   Casey et al.
D30,079 S    1/1899   Sametz
(Continued)

FOREIGN PATENT DOCUMENTS

AU    315078    7/2007
CA    72548    5/1993
(Continued)

OTHER PUBLICATIONS

Hilon LG DMB MP3 FM35,posted Jun. 26, 2006, [online], [retrieved
on Dec. 26, 2008]. Retrieved from Internet, <URL: http://hilon.com.
cn.autobak/a8810005549>.

(Continued)

*Primary Examiner* — Barbara Fox

(74) *Attorney, Agent, or Firm* — Sterne, Kessler, Goldstein
& Fox P.L.L.C.

(57)                **CLAIM**

The ornamental design for an electronic device, as shown and
described.

**DESCRIPTION**

FIG. 1 is a front perspective view of an electronic device
showing our new design;
FIG. 2 is a rear perspective view thereof;
FIG. 3 is a front view thereof;
FIG. 4 is a rear view thereof;
FIG. 5 is a side view thereof;
FIG. 6 is another side view thereof;
FIG. 7 is a top view thereof;
FIG. 8 is a bottom view thereof; and,
FIG. 9 is an enlarged front view of the top portion of the front
face of the device as shown in FIG. 3.
The broken lines in the Figures show portions of the elec-
tronic device that form no part of the claimed design.

**1 Claim, 3 Drawing Sheets**



**U.S. Patent**         Mar. 10, 2015         Sheet 1 of 3                US D724,078 S



*FIG. 1*



*FIG. 2*



*FIG. 3*

*FIG. 4*

*FIG. 5*      *FIG. 6*

*FIG. 7*

*FIG. 8*



**Figure 2**

US008638549B2

(12) **United States Patent**
Garelli et al.

(10) Patent No.: **US 8,638,549 B2**
(45) Date of Patent: **Jan. 28, 2014**

(54) **ELECTRONIC DEVICE DISPLAY MODULE**

(75) Inventors: **Adam T. Garelli**, Santa Clara, CA (US);
**Dinesh C. Mathew**, Fremont, CA (US);
**Thomas W. Wilson, Jr.**, Saratoga, CA
(US); **Keith J. Hendren**, Capitola, CA
(US); **Peteris K. Augenbergs**, San
Francisco, CA (US); **Brett W. Degner**,
Menlo Park, CA (US); **Bradley J.
Hamel**, Sunnyvale, CA (US); **Michael
A. Damlanakis**, San Francisco, CA
(US); **Patrick Kessler**, Mountain View,
CA (US)

(73) Assignee: **Apple Inc.**, Cupertino, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 143 days.

(21) Appl. No.: **12/862,748**

(22) Filed: **Aug. 24, 2010**

(65) **Prior Publication Data**
US 2012/0050975 A1    Mar. 1, 2012

(51) **Int. Cl.**
*H05K 5/00*      (2006.01)
*H05K 7/00*      (2006.01)
*G06F 1/16*      (2006.01)

(52) **U.S. Cl.**
USPC ............. **361/679.27**; 361/679.26; 361/679.55

(58) **Field of Classification Search**
USPC .......................... 361/679.02, 679.21, 679.55,
361/679.26–679.3, 679.56
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 2,964,887 A | 12/1960 | Orozco |
| 3,517,466 A | 6/1970 | Bouvier |
| 4,766,746 A | 8/1988 | Henderson et al. |
| 5,237,486 A | 8/1993 | LaPointe et al. |
| 5,531,950 A | 7/1996 | Kimura et al. |
| 5,606,438 A | 2/1997 | Margalit et al. |
| 5,611,517 A | 3/1997 | Saadi et al. |
| 5,795,430 A | 8/1998 | Beeteson et al. |
| 5,828,341 A | 10/1998 | Delamater |
| 5,881,103 A | 3/1999 | Wong et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

| EP | 0683026 | 3/2001 |
| EP | 0911717 | 3/2003 |

(Continued)

OTHER PUBLICATIONS

Mathew et al., U.S. Appl. No. 12/483,205, filed Jun. 11, 2009.

(Continued)

*Primary Examiner* — Anthony Haughton
(74) *Attorney, Agent, or Firm* — Treyz Law Group; G. Victor
Treyz; Jennifer Luh

(57)                **ABSTRACT**

Electronic devices may have housings. A housing may contain a display on its front face and a rear plate such as a plate formed from glass on its rear face. A peripheral housing member may surround the display and rear plate. An antenna may be formed in the peripheral housing member. The rear plate may be formed from laminated layers including a light guide layer. Device hinges may include hinge structures that are integral to the peripheral housing member. A logo may be formed by coating the rear plate with a patterned masking layer. Display structures for the display and the rear plate may be mounted to opposing sides of a shelf portion of the peripheral housing member. The rear plate may be formed from electrochromic glass and may cover photovoltaic cells and touch sensors. Driver boards may be mounted within a clutch barrel perpendicular to the display.

**17 Claims, 26 Drawing Sheets**







FIG. 1A



FIG. 1B















iPod touch apps and features may vary based on your location, language, and model of iPod touch. To find out which features are supported in your area, see www.apple.com/ios/feature-availability/. To learn which features are available on your iPod touch, see www.apple.com/ipod-touch/specs.html.

## Accessories

The following accessories are included with iPod touch.

**Apple EarPods.** Use the Apple EarPods to listen to music, videos, audiobooks, podcasts, and games.

**Connecting cable.** Using the Lightning to USB Cable, connect iPod touch to your computer to sync and charge, or to the USB power adapter (sold separately) to charge.



# iPod touch at a glance

## iPod touch overview

This guide describes the features of iOS 8.4 for:

- iPod touch 5th generation
- iPod touch 6th generation



Apple Inc.









We have always been shameless about stealing great ideas.

*Steve Jobs*

AZ QUOTES

http://www.azquotes.com/picture-quotes/qu....



exhibitindexes.com #496

Plaintiff's
Exhibit
D.6



"Good artists copy, great artists steal. We have always been shameless about stealing great ideas."

- Steve Jobs

"WE HAVE ALWAYS BEEN
SHAMELESS ABOUT STEALING
GREAT IDEAS."

— STEVE JOBS



# Apple Revenue (000s)

EXERPTED FROM PG 77

**Apple Inc.**
**Form 10-K**
**For the Fiscal Year Ended September 28, 2013**

The U.S. and China were the only countries that accounted for more than 10% of the Company's net sales in 2013, 2012 and 2011. There was no single customer that accounted for more than 10% of net sales in 2013, 2012 or 2011. Net sales for 2013, 2012 and 2011 and long-lived assets as of September 28, 2013 and September 29, 2012 are as follows (in millions):

| | 2013 | 2012 | 2011 |
|---|---|---|---|
| Net sales: | | | |
| U.S. | $ 66,197 | $ 60,949 | $ 41,812 |
| China (a) | 25,946 | 22,797 | 12,472 |
| Other countries | 78,767 | 72,762 | 53,965 |
| Total net sales | $ 170,910 | $ 156,508 | $ 108,249 |

| | 2013 | 2012 | 2011 |
|---|---|---|---|
| **Net Sales by Product:** | | | |
| iPhone (a) | $ 91,279 | $ 78,692 | $ 45,998 |
| iPad (a) | 31,980 | 30,945 | 19,168 |
| Mac (a) | 21,483 | 23,221 | 21,783 |
| iPod (a) | 4,411 | 5,615 | 7,453 |
| iTunes, Software and Services (b) | 16,051 | 12,890 | 9,373 |
| Accessories (c) | 5,706 | 5,145 | 4,474 |
| Total net sales | $ 170,910 | $ 156,508 | $ 108,249 |

(a)   Includes deferrals and amortization of related non-software services and software upgrade rights.
(b)   Includes revenue from sales on the iTunes Store, the App Store, the Mac App Store, and the iBooks Store, and revenue from sales of AppleCare, licensing and other services.
(c)   Includes sales of hardware peripherals and Apple-branded and third-party accessories for iPhone, iPad, Mac and iPod.

**EXERPTED FROM PG 68**

**Apple Inc.**
**Form 10-K**
**For the Fiscal Year Ended September 28, 2016**

The U.S. and China were the only countries that accounted for more than 10% of the Company's net sales in 2015, 2014 and 2013. There was no single customer that accounted for more than 10% of net sales in 2015, 2014 or 2013. Net sales for 2015, 2014 and 2013 and long-lived assets as of September 26, 2015 and September 27, 2014 are as follows (in millions):

| Net sales: | 2015 | 2014 | 2013 |
|---|---|---|---|
| U.S. | $ 81,732 | $ 68,909 | $ 66,197 |
| China [1] | 56,547 | 30,638 | 25,946 |
| Other countries | 95,436 | 83,248 | 78,767 |
| **Total net sales** | **$ 233,715** | **$ 182,795** | **$ 170,910** |

Net sales by product for 2015, 2014 and 2013 are as follows (in millions):

| Net Sales by Product: | 2015 | 2014 | 2013 |
|---|---|---|---|
| iPhone [1] | $ 155,041 | $ 101,991 | $ 91,279 |
| iPad [1] | 23,227 | 30,283 | 31,980 |
| Mac [1] | 25,471 | 24,079 | 21,483 |
| Services [2] | 19,909 | 18,063 | 16,051 |
| Other Products [1][3] | 10,067 | 8,379 | 10,117 |
| **Total net sales** | **$ 233,715** | **$ 182,795** | **$ 170,910** |

[1]   Includes deferrals and amortization of related software upgrade rights and non-software services.

[2]   Includes revenue from the iTunes Store, App Store, Mac App Store, iBooks Store, Apple Music, AppleCare, Apple Pay, licensing and other services.

[3]   Includes sales of Apple TV, Apple Watch, Beats products, iPod and Apple-branded and third-party accessories.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 07- CV61723 – (Judge James Cohn)**

THOMAS S. ROSS,
Plaintiff,

vs.

APPLE, INC.,
Defendant.
_____/


STATE OF FLORIDA       )
                               )
                               )
                               )
COUNTY OF BROWARD   )


<u>**AFFIDAVIT IN SUPPORT OF**</u>
<u>**COMPLAINT FOR MISAPPROPRIATION OF INTELLECTUAL PROPERTY AND**</u>
<u>**COPYRIGHT INFRINGEMENT**</u>

Now comes THOMAS S. ROSS, Affiant, and, in support of Complaint For Misappropriation of Intellectual Property and Copyright Infringement, states as follows:

1.        I am Thomas S. Ross;

2.        I am the Plaintiff in this instant case;

3.        I am proceeding as Attorney *Pro Se*;

4.        Plaintiff is the Affiant;

5.        On June 27, 2016, Ross filed Complaint against Apple, Inc.

On Information and belief, Affiant states as follows:

1.        I am the original inventor of the Electronic Reading Device (ERD);

2.        I am the legal owner of the Intellectual Property referred to, herein and in the

1

Complaint, as the Electronic Reading Device or ERD;

3.     I created the Intellectual Property that is the object of this Complaint, when:

    a. on or about May 23, 1992, Unnamed drawing identifiable by the design of a two-leafed ERD device, was affixed to paper;

    b. on or about June 28, 1992,

        i.   "Drawing I" was affixed to paper;

        ii.   "Drawing II" was affixed to paper;

        iii.  a drawing of a flow chart titled "Skyguild System for use with ERD", was affixed to paper;

    c. On or about September 10, 1992, I authored a written narrative titled "The Electronic Reading Device Patent Application"

4.     On or about May 4, 2014, I filed for the following Applications for Registration of Copyright:

    a. VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428

    b. VAu 1-186-859 Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428

    c. VAu 1-186-860 Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application # 07/974,428

    d. VAu 1-186-862 Title of Work: Drawing lOA Chart I The Electronic Reading Device Patent Application # 07/974,428

    e. TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application #07/974,428

5.      On or about March 10, 2015, I sent a Cease and Desist Notice to Apple, Inc.

6.      On or about June 9, 2015, Apple, Inc., declined to honor the Cease and Desist

Demand.


I, THOMAS S. ROSS, Affiant, states, under penalty of perjury, that, with respect to the

above captioned Complaint, and this Affidavit in support thereof, as to statements of fact,

they are true and correct, to the best of my knowledge, and as to statements of

information and belief, I believe them to be true.


THOMAS S. ROSS

Dated: _____, 2016
Miramar, Florida

Respectfully submitted,

_____
Thomas S. Ross, Affiant
P.O. Box 279381
Miramar, Florida, 33027
Telephone: 954-312-7532
Facsimile: 954-312-7604
Email: erd1992@globarize.com