UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-61471-CIV-WILLIAMS

THOMAS S. ROSS,

    Plaintiff,

vs.

APPLE, INC.

    Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendant Apple, Inc.'s ("Apple") corrected motion to dismiss. (DE 19). *Pro Se* Plaintiff Thomas S. Ross has filed a response to the motion (DE 23) and Apple has filed a reply (DE 27). For the reasons below, the motion (DE 19) is **GRANTED** and the Complaint (DE 1) is **DISMISSED**.

**I.    BACKGROUND**

Ross brings this 40-page Complaint—which attaches 67 pages of exhibits—against Apple for "misappropriation of intellectual property and copyright infringements." (DE 1 at 1). The Complaint states that in 1992, Ross conceived of an Electronic Reading Device ("ERD") (DE 1 ¶¶ 1-4, 14-16), a "reading and writing device, with a back-lit screen that contained all manner of reading material, as well as other media, stored in the device or obtained from an external storage device or other remote sources . . . all of which could be used in spite of the absence of ambient light." (DE 1 ¶ 14). Ross contemplated a device that would "allow one to read stories, novels, news articles, as well as look at pictures, watch video presentations, or even movies, on a flat

touch-screen that was back-lit." (DE 1 ¶ 15). Ross also imagined that the ERD "could include communications functions" and that the device "would have batteries and even be equipped with solar panels." (DE 1 ¶ 15). "The ERD Ross envisioned had various configurations ranging in size, features and functions, to accommodate various settings and uses." (DE 1 ¶ 16).

Between May 23, 1992 and September 10, 1992, Ross "designed three technical drawings, one flow chart, and one narrative of his invention" (collectively, the "ERD Written Materials") (DE 1 ¶ 17). On September 10, 1992, Ross applied for a patent in relation to the ERD, to which the United States Patent and Trademark Office ("USPTO") assigned the application number #07/974,428 on November 12, 1998 and the application number #07/999,524 on December 30, 1992.[1] (DE 1 ¶ 22). However, the "USPTO, due to failure to pay the application fee," declared Ross's application abandoned in 1995. (DE 1 ¶ 23). Ross attempted "revival and/or substitution of his original invention, on or about 1999, but it was also declared abandoned in 2000, by the USPTO, this time, for reasons other than failure to pay fees." (DE 1 ¶ 24). Seven years later on July 11, 2007, Ross filed a lawsuit against USPTO before another court of this District, alleging "unconstitutional depr[i]vation of patent rights in the 1992 patent applications, and detrimental reliance on USPTO procedures and instructions, for the 1999 failed effort to revive his original patent application." (DE 1 ¶ 25; see also Ross v. United States of America, Case No. 07-cv-61723-JIC). The district court dismissed Ross's 2007 action as time-barred and the Federal Circuit Court of Appeals later affirmed this dismissal. (DE 1 ¶ 26; see also DE 54, Ross v. United States of America,

---

[1] Ross states, without additional explanation, that the issuance of the application number #07/974,428 was "in error, as it was a duplicate." (DE 1 ¶ 22 n.1).

Case No. 07-cv-61723-JIC). Almost seven years later, on May 14, 2015,[2] Ross "secured a Copyright Registration with the United States Copyright Office" for each of the ERD Written Materials that he produced in 1992: VAu 1-186-491 (the "491 Copyright"), VAu 1-186-859 (the "859 Copyright"), VAu 1-186-860 (the "860 Copyright"), VAu 1-186-862 (the "862 Copyright"), and TXu 1-919-460 (the "460 Copyright"). (DE 1 ¶ 27; DE 1 at 46-63, 65-70). He claims that these 2015 registrations "copyright protected" the ERD Written Materials "as of their respective date of creation, in 1992." (DE 1 ¶ 21; DE 1 at 43).

Ross next alleges that Apple's current and former executives bragged publicly about the company's culture of stealing (DE 1 ¶ 28) and that Apple therefore must have "engaged in systematic searching for other people's ideas by rummaging through all sorts of resources, private and governmental, for 'abandoned' and 'discarded' prior art, and ideas, and, when it found something promising, 'made it its own.'" (DE 1 ¶ 29). He concludes that because of this culture of theft, Apple found and used the ERD Written Materials (DE 1 ¶ 31) and "generated infringing two-dimensional copies of [the drawing that is the subject of the 491 Copyright] in packaging, advertising, broadcast media, print media and . . . three-dimensional devices copied therefrom." (DE 1 ¶ 35). He lists 25 products Apple released from 2007 to 2010 and 39 more products Apple released from 2011 to 2016 that allegedly misappropriate or infringe his intellectual property rights. (DE 1 ¶¶ 35-36). He also claims that Apple further infringed his rights in seeking and obtaining 17 patents and 3 trade dress registrations from the USPTO, including a patent for a "two screen device" that resembles drawing that is the subject of the 859

---

[2] The copyright registrations which Ross attaches as exhibits are all dated May 4, 2014—a full year earlier than the date Ross alleges that he obtained registrations in the body of his Complaint. (DE 1 at 46-63).

Copyright and two patents for devices that "provid[e] remote media content to users of iTunes® and iBook Store®" which used or copied elements of the drawing that is the subject of the 862 Copyright and the writing that is the subject of the 460 Copyright. Ross does not identify what language or features from the ERD Written Materials that Apple used copied, and does not identify in detail what Apple's remaining patents and registrations were for or how they infringe his rights. (DE 1 ¶¶ 37-41).[3] On March 10, 2015, Ross sent a cease and desist letter to Apple. Apple replied on June 10, 2015 denying any infringement. (DE 1 ¶¶ 42-43; DE 1 at 72-77).

Ross's Complaint brings seventeen causes of action against Apple:

- Count 1 for "misappropriation of intellectual property as chattel";

- Count 2 for "unjust enrichment resulting from misappropriation of intellectual property as chattel";

- Counts 3, 4, 5, 6, and 7 for "direct infringement of copyright" in relation to the 491 Copyright, the 859 Copyright, the 860 Copyright, the 862 Copyright, and the 460 Copyright, respectively;

- Counts 8, 9, 10, 11, and 12 for "wil[l]ful[] infring[e]ment of copyrights" in relation to the 491 Copyright, the 859 Copyright, the 860 Copyright, the 862 Copyright, and the 460 Copyright, respectively;

- Counts 13, 14, 15, 16, and 17 for "unjust enrichment resulting from infringement of copyrights" in relation to the 491 Copyright, the 859 Copyright, the 860 Copyright, the 862 Copyright, and the 460 Copyright, respectively.

---

[3] Ross identifies Apple's infringing patents as US8638549B2, US7774708B2, US9084089B2, D627,790, D602,016, D618,677, D690,300, D681,632, D750,065, D750,062, D748,622, D755,784, D752,577, D752,037, D724,078, D712,405, and utility patent 7,479,949. (DE 1 ¶ 38-40). He identifies Apple's infringing trade dress registrations "awarded to Apple for the design and configuration of the iPhone" as U.S. Registration Nos. 3,470,983, 3,457,218, and 3,475,327. (DE 1 ¶ 41).

4

He demands several injunctions and over $10 billion in damages and restitution. (DE 1 at 33-37). Apple moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545). Although *pro se* pleadings are held to a less stringent standard and construed liberally, *see Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), they still must satisfy the basic pleading requirements of applicable law and the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

## III. DISCUSSION

Apple argues that the Complaint does not allege sufficient facts to support Ross's Copyright Act infringement claims, Counts 3 through 17. It also contends that Ross's remaining claims—Counts 1 and 2—are similarly deficient or are, in the alternative, preempted by his copyright claims. The Court agrees with these arguments and dismisses the Complaint.

Ross brings Counts 3 through 17 pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*, alleging for each of the five ERD Written Materials a separate count for "direct infringement," "willful infringement," and "unjust enrichment." Construing these claims liberally as causes of actions for copyright infringement as to each of the ERD Written Materials, the Complaint fails to state a claim.[4] "To state a claim for copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247–48 (11th Cir. 1999) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see also Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994); *BellSouth Advertising & Publishing Corp. v. Donnelley Info. Publishing, Inc.*, 999 F.2d 1436, 1440 (11th Cir. 1993) (en banc). Ross's Complaint satisfies the first element of an infringement claim by alleging that he

---

[4] Ross's Complaint is "the proverbial shotgun pleading." *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."). For instance, Ross arbitrarily separates his copyright infringement causes of action into "direct infringement," "willful infringement," and "unjust enrichment" counts, and then indiscriminately incorporates every antecedent allegation into each subsequent claim for relief. Courts disfavor such pleadings because they "wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner*, 464 F.3d at 1279 (citations omitted).

holds five copyright registrations in relation to each ERD Written Material. It does not, however, allege any facts showing when and how Apple copied constituent elements of Ross's original works.

As alleged, the Complaint relies almost exclusively on public statements by current and former Apple executives: in 1996, former CEO Steve Jobs said that Apple engaged in "shameless stealing"; "Sr. VP of Worldwide Marketing" Phil Schiller was "once quoted" as saying that Apple had a culture of taking others' ideas and "making them their own"; and "Vice President of Apple" Bud Tribble was "quoted as saying" that idea theft was "part of Apple's DNA." (DE 1 ¶ 28). From these statements, the Complaint posits two allegations that do not necessarily follow: that Apple actively "engaged in systematic searching for other people's ideas by rummaging through all sorts of resources" and that "Apple chose to adopt a culture of dumpster diving as an R&D strategy." (DE 1 ¶¶ 29-30). These factually unsupported conclusions are the basis, without any additional facts, for the assumption that Apple actually came into possession of Ross's ERD Written Materials. (DE 1 ¶ 31). And from this inference, the Complaint reaches the blanket conclusion that 64 Apple products released since 2007, and all the accompanying marketing materials, copied constituent elements of Ross's original works. The Complaint also concludes that Apple copied the ERD Written Materials in applying for and obtaining 17 patents and 3 trade dress registrations, but provides insufficient details about the subject matter of these patents or registrations and how precisely they infringed on Ross's rights.[5]

---

[5] Because Ross provides no details about which aspects of Apple's patent or registration applications infringed his rights, the Court declines to address Apple's arguments that the Noerr-Pennington doctrine immunizes its conduct from suit.

7

Critically, Ross's Complaint alleges no facts permitting this broad swath of deductions. Contrary to Ross's argument (DE 23 at 13-14), the presence of the ERD Written Materials in the public record and Apple executives' generalized statements in no way show that Apple directly copied or even had access to the ERD Written Materials. Ross responds with a citation to the Sixth Circuit case *Jones v. Blige*, 558 F.3d 485 (6th Cir. 2009). However, the discussion in *Jones* actually illustrates the central flaw with Ross's copyright infringement claims: "access may not be inferred through mere speculation or conjecture. A mere assertion of access, unsupported by probative evidence is inadequate. Nor is the bare possibility of access sufficient." *Jones*, 558 F.3d at 491 (quotation marks and citations omitted). The Eleventh Circuit has similarly held that "mere speculation or conjecture" is not enough and that the defendant must have had a "reasonable opportunity" to establish access. *Herzog*, 193 F.3d at 1250. In *Herzog*, the plaintiff alleged that a defendant infringed her rights to a film screenplay, arguing that the defendant had "access" because he visited Miami while a physical copy of the screenplay was in the city. *Id*. In rejecting this argument, the Eleventh Circuit found, "notwithstanding the bare physical possibility" that the defendant had viewed the screenplay during his Miami visit, that "[r]easonable opportunity does not encompass any bare possibility in the sense that anything is possible." *Id.* (citing Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.02[A] at 13-19). Ross's assertion of "access" also falls short because he does not allege that Apple or its agents had a reasonable opportunity to access the ERD Written Materials. Accordingly, the Court cannot reasonably infer that Apple directly copied or had access to the ERD Written Materials.

Even without alleging direct copying or access, Ross may "still prevail on his copyright infringement claim by demonstrating that the original and infringing works are 'strikingly similar.'"  See *Herzog*, 193 F.3d at 1248 (citing *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978)).  "Striking similarity exists where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (quotation marks and citation omitted).  But the Complaint does not present with particularity a description of any infringing work on which to base a "striking similarity" analysis.  Instead, it presents a single side-by-side pictorial comparison of the drawing that is the subject of the 491 Copyright and an "Apple® 2007" device (DE 1 ¶¶ 48), accompanied by the conclusory allegation that "[a] casual observer with ordinary perception will conclude that the iPhone® has the same overall concept and feel as Ross's ERD design of 1992." (DE 1 ¶ 49).  To the extent the Complaint presents any specific factual allegations about "striking similarity," it is that Apple once represented in an unrelated litigation that the "iPhone . . . has a distinctive shape and appearance—a flat rectangular shape with rounded corners" (DE 1 ¶ 49).  But it remains unclear how this allegation relates to any specific work that Apple produced which infringes any work for which Ross has a valid copyright.  As Ross appears to confirm in his briefing, he relies on the overbroad claim that 64 different Apple products[6] and the accompanying "packaging, advertising,

---

[6] Ross's list of 64 Apple products includes products released as recently as 2016. Apple argues that Ross's claims are nevertheless time-barred pursuant to the Copyright Act's three-year statute of limitations.  17 U.S.C. § 507(b).  However, because of the deficiency of Ross's conclusory allegations, the Court is unable to determine whether Ross has alleged continuing infringement sufficient to overcome the Copyright Act's

9

broadcast media, print media," all infringed his rights because they have the same overall look and feel as the ERD. (DE 23 at 14).

This lack of specificity leaves the Complaint bereft of detail sufficient to afford Apple the opportunity to draft a meaningful responsive pleading. See *Mahnke v. Munchkin Prod., Inc.*, No. 99CIV.4684(LTS)(THK), 2001 WL 637378, at *6 (S.D.N.Y. June 7, 2001) (dismissing copyright infringement claims for failure to identify with particularity a specific infringing work and the time period in which the infringement occurred). The generalized nature of Ross's allegations is also in significant tension with the established principle that copyright protects specific expressions of ideas, not ideas themselves. "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Herzog*, 193 F.3d at 1248 (quoting *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976)); see also 17 U.S.C. § 102(b); *Baker v. Selden,* 101 U.S. 99 (1880). In order to state a copyright infringement claim, Ross must identify the particular expression to which he objects and explain in detail how that expression infringes on his rights. Counts 3 through 17 fail to do so and the Court dismisses these claims.

Ross's misappropriation and unjust enrichment claims, Counts 1 and 2, also do not survive Apple's motion to dismiss. Although Ross—a Florida plaintiff filing suit in Florida—does not explicitly characterize either as such, the Court interprets both Counts 1 and 2 as common law causes of action brought pursuant to Florida law.[7] Additionally,

---

statute of limitations. Accordingly, the Court declines to reach the statute of limitations argument as this juncture.

[7] Since *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), federal courts have applied state substantive law and moved away from general federal common law. In his

while Ross brings a claim for "misappropriation of intellectual property as chat[t]el," the factual allegations supporting his claim most accurately reflect a claim for the misappropriation of the ERD idea. (DE 1 ¶ 45). "To establish a claim for misappropriation of an idea, a plaintiff must show that: (1) the idea was novel; (2) disclosure of the idea was made in confidence; and (3) the idea was adopted and used by the defendant." *Dyer v. Wal-Mart Stores, Inc.*, 535 F. App'x 839, 842 (11th Cir. 2013) (citation omitted). Even assuming that the ERD was a novel idea—a tenuous proposition given the dearth of supporting facts in the Complaint—Ross does not claim that he disclosed the ERD idea to Apple in confidence. Accordingly, Ross's misappropriation claim, Count 1, fails.

To state a claim for "unjust enrichment . . . under Florida law," a plaintiff "must allege (1) the plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit conferred, and (4) the circumstances indicate that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Merle Wood & Assocs. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013). As discussed above, the Complaint contains no facts connecting Apple to the ERD or to the ERD Written Materials in a manner that would support any of these elements. Consequently, the Court dismisses the unjust enrichment claim as well.

Independently, the Copyright Act preempts Ross's common law causes of action. "Section 301 of the Act preempts all state causes of action based on a right found in the

---

response to Apple's motion to dismiss, Ross denies that his misappropriation claim had any basis in Florida statute. (DE 23 at 19). Eventually though, he argues that his Complaint satisfied the elements of a Florida common law cause of action. (DE 23 at 19-20).

11

Act or an equivalent to such a right." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001). However, "[t]he Act 'preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law.'" *Id.* (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992)). Thus, a state law claim can survive preemption by adding an "extra element" which changes the nature of the claim, making it "*qualitatively* different from a copyright infringement claim." *Id.* (emphasis in original).

The Copyright Act preempts Ross's unjust enrichment claim, Count 2, because it is identical to his copyright infringement claims. *See, e.g., Levine v. Landy*, 832 F. Supp. 2d 176, 187 (N.D.N.Y. 2011) (quoting *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999)); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533 (E.D. Va. 2005); *see also* William F. Patry, Patry on Copyright § 18:51 ("The mere phrasing of this claim reveals its preemptive nature: typical unjust enrichment claims are preempted because they are mere attempts to state a claim for damages for unauthorized copying or other activity encompassed by Section 106."). The Copyright Act also preempts Ross's misappropriation claim, even though Florida courts recognize that in some circumstances misappropriation claims may be exempt from such preemption. *See, e.g., Garrido v. Burger King Corp.*, 558 So. 2d 79, 83 (Fla. 3d Dist. Ct. App. 1990). For example, in *Garrido*, the court found that the Copyright Act did not preempt a misappropriation claim premised on the plaintiff's confidential disclosure of a novel idea to the defendant with the expectation of payment. *Id.* But, as discussed, Ross does not allege confidential disclosure or some other element that would distinguish his misappropriation claim from a standard copyright infringement claim.

Ross objects that his misappropriation claim relates to the "taking of his personal property" and to "rights other than those protected under the Copyright laws," (DE 23 at 18), but this objection lacks substance: as alleged, Ross's misappropriation and copyright claims rely on the exact same allegations and theories of harm and are "qualitatively identical." Consequently, the Copyright Act preempts Ross's misappropriation claim as well. *Foley*, 249 F.3d at 1285.

## IV.  CONCLUSION

For the foregoing reasons, Apple's corrected motion to dismiss (DE 19) is **GRANTED** and the Complaint (DE 1) is **DISMISSED**. If Ross wishes to amend his complaint in a manner consistent with this Order, he must seek leave to do so by **January 21, 2017**. Ross's motion for leave to file proposed case management plan and order (DE 28) is **DENIED** with leave to renew after responses to any amended pleading. Apple's motion to stay discovery (DE 30) is **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 30th day of December, 2016.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

cc: Thomas S. Ross
PO Box 279381
Miramar, FL 33027