## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 16-61471-CV (Judge Williams/Simonton)

THOMAS S. ROSS,                     )
        Plaintiff             )
vs.                                 )
                              )
APPLE INC., a California corporation )
        Defendant             )
_____)

> FILED BY _____ D.C.
>
> JAN 2 3 2017
>
> STEVEN M. LARIMORE
> CLERK U.S. DIST. CT.
> S.D. OF FLA. FT. LAUD.

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

NOW COMES Plaintiff, Thomas S. Ross (Ross), Attorney *Pro Se* and respectfully moves this honorable court to grant Plaintiff leave to file the Amended Complaint attached herein and made part hereof by reference. In support, Plaintiff states, on information and belief, as follows:

1. On or about December 30, 2016, This Court Granted Defendant's Motion to Dismiss and stated that "*If Ross wished to amend the Complaint in a manner consistent with this order, he must seek to do so by January 21, 2017*". (DOCKET #35)

2. Pursuant to Local Rule 7.1 (a)(c)(1), because January 21, 2017 falls on a Saturday, the deadline for filing extends till Monday, January 23, 2017.

3. Ross believes that he amended the Complaint in a manner consistent with the court order of December 30, 2016.

WHEREFORE, Plaintiff Thomas S. Ross, Attorney *Pro Se* prays that this honorable court grant him leave to file this instant Amended Complaint, or grant such other relief as it may deem just and proper.

THOMAS S. ROSS
Dated: _Jan 23_ , 2017

Respectfully submitted,

_____
THOMAS S. ROSS
Attorney *Pro Se*

P.O. Box 279381
Miramar, Florida 33027
Telephone: 954-312-7532
Facsimile: 954-312-7604

### Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by US Mail on _____, 2017 on all counsel or parties of record on the attached service list.

THOMAS S. ROSS
Attorney *Pro Se*
P.O. Box 279381
Miramar, Florida 33027
Telephone: 954-312-7532
Facsimile: 954-312-7604
Email: erd1992@globarize.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 16-61471-CV (Judge Williams/Simonton)**

| | |
|---|---|
| THOMAS S. ROSS, | ) |
|              Plaintiff | ) |
| vs. | ) |
| | ) |
| APPLE INC., a California corporation | ) |
|              Defendant | ) |
| | ) |

**CERTIFICATE OF GOOD FAITH CONFERENCE**
**UNABLE TO CONFER**

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that *Pro Se* the movant has made reasonable efforts to confer with all parties and non-parties who may be affected by the relief sought in the motion but has been unable to do so.  The reasonable efforts made were specifically as follows: On January 23, 2017 at 7:57 AM EST, Ross sent attached email requesting whether or not Apple will oppose or not, the Motion for Leave to File Amended Complaint, pursuant to Court Order of December 30, 2016.  In addition, Ross called the Miami office of Hogan Lovells US LLP, at 10:15 AM EST and spoke to Olga Garcia who said that Mr. O'Sullivan was out of the State. Also, Ross called the Denver Office of Hogan Lovells US LLP, at 10:20 AM EST, and left messages with Mr. James, Ms. Livingston, and Ms. Nelson.

THOMAS S, ROSS

Dated: January 23, 2017

Respectfully submitted,

THOMAS S. ROSS
Plaintiff *Pro Se*
P.O. Box 279381
Miramar, Florida 33027
Telephone: 954-312-7532
Facsimile: 954-312-7604
Email: erd1992@globarize.com

erd1992@globarize.com...                                                                Page 1 of 1

This is our new mail interface! We love it, you will too! Here's why we're changing.

Email          Contacts          Settings          |

Search Mail...

**MAILBOXES**

Inbox

Drafts

Sent

Spam

Trash

**FOLDERS**

old-messages

**FILTERS**

Unread

Flagged

Purchases

Friends

Newsletters

Notifications

**To:** Clayton James <clay.james@hoganlovells.com>, Jane Carter <ja...

# MOTION FOR LEAVE TO FILE AMENDED COM

1/23/17 07:55

Dear Mr. O'Sullivan,

Today is the deadline for my filing a Motion for Leave to File an Amended Complaint, as permitted by the December 30th 2016 Order of the court.

Please respond as soon as possible, as to whether or not you will Oppose it.

Best Regards,

Thomas S. Ross

*Pro Se* Plaintiff

Ross v. Apple, Inc.

P.O. Box 279381

Miramar, Florida 33027

TELEPHONE  954-312-7532

FACSIMILE  954-312-7604

Email: erd1992@globarize.com

NOTICE REQUIREMENTS: " * * * **Pro se litigants will be served and noticed by U.S. mail or in person** (or, if agreed, by facsimile or e-mail) * * *". CM/ECF Administrative Procedures Southern District of Florida, Sec. 2C.

CONFIDENTIALITY NOTICE: The information contained in this e-mail is intended only for the confidential use of the recipient(s) named above. This message and its attachments are attorney-client privileged communications, work product and mental impressions of the above sender. If the reader of this message is not the intended recipient or if you have received this communication in error, you are hereby notified that you have received this in error, that you should destroy it, notify us at once and any review, dissemination or copying is strictly prohibited.

**SERVICE LIST**
Thomas S. Ross v Apple, Inc.
CASE NO. 16-61471-CV (Judge Williams/Simonton)
United States District Court, Southern District of Florida

**Attorneys for Defendant APPLE, INC.**
**John F. O'Sullivan**
Hogan Lovells US LLP
Brickell World Plaza
600 Brickell Ave.
Suite 2700
Miami, FL 33131
305 459-6651
Fax: 305-459-6550
Email: john.osullivan@hoganlovells.com
**Clayton C. James**
Hogan Lovells US LLP
1601 Wewatta Street
Suite 900
Denver, CO 80202
303-899-7300
Fax: 303-899-7333
Email: clay.james@hoganlovells.com
**Jane Zenzi Li Carter**
Hogan Lovells US LLP
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
415-374-2300
Email: jane.carter@hoganlovells.com
**Jessica Black Livingston**
Hogan Lovells US LLP
1601 Wewatta Street
Suite 900
Denver, CO 80202
303-899-7300
Fax: 303-899-7333
Email: jessica.livingston@hoganlovells.com
**Katherine A. Nelson**
Hogan Lovells US LLP
1601 Wewatta Street
Suite 900
Denver, CO 80202
303-899-7300
Fax: 303-899-7333
Email: katherine.nelson@hoganlovells.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 16-61471-CV (Judge Williams/Simonton)**

THOMAS S. ROSS,                              )
              Plaintiff                )
vs.                                          )
                                       )
APPLE INC., a California corporation         )
                                       )
              Defendant                )
_____)

## [PROPOSED] ORDER GRANTING MOTION FOR
## LEAVE TO FILE AMENDED COMPLAINT

Having reviewed and considered the Motion and the pleadings in support thereof, and finding good cause therefor, the Court rules as follows:

**IT IS HERBY ORDERED:**
    1.  The Motion is GRANTED;

DATED _____ 2017

                                                         _____
                                                        The Honorable Kathleen M. Williams,
                                                        Judge of the United States District or
                                                         Andrea M. Simonton, Magistrate
                                                        Judge
                                                        Court for the Southern District of
                                                        Florida

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-61471-CIV-WILLIAMS**

THOMAS S. ROSS,

      Plaintiff,

vs.

APPLE, INC.

      Defendant.

_____/

**ORDER**

**THIS MATTER** is before the Court on Defendant Apple, Inc.'s ("Apple") corrected motion to dismiss. (DE 19). *Pro Se* Plaintiff Thomas S. Ross has filed a response to the motion (DE 23) and Apple has filed a reply (DE 27). For the reasons below, the motion (DE 19) is **GRANTED** and the Complaint (DE 1) is **DISMISSED**.

**I.    BACKGROUND**

Ross brings this 40-page Complaint—which attaches 67 pages of exhibits—against Apple for "misappropriation of intellectual property and copyright infringements." (DE 1 at 1). The Complaint states that in 1992, Ross conceived of an Electronic Reading Device ("ERD") (DE 1 ¶¶ 1-4, 14-16), a "reading and writing device, with a back-lit screen that contained all manner of reading material, as well as other media, stored in the device or obtained from an external storage device or other remote sources . . . all of which could be used in spite of the absence of ambient light." (DE 1 ¶ 14). Ross contemplated a device that would "allow one to read stories, novels, news articles, as well as look at pictures, watch video presentations, or even movies, on a flat

touch-screen that was back-lit." (DE 1 ¶ 15). Ross also imagined that the ERD "could include communications functions" and that the device "would have batteries and even be equipped with solar panels." (DE 1 ¶ 15). "The ERD Ross envisioned had various configurations ranging in size, features and functions, to accommodate various settings and uses." (DE 1 ¶ 16).

Between May 23, 1992 and September 10, 1992, Ross "designed three technical drawings, one flow chart, and one narrative of his invention" (collectively, the "ERD Written Materials") (DE 1 ¶ 17). On September 10, 1992, Ross applied for a patent in relation to the ERD, to which the United States Patent and Trademark Office ("USPTO") assigned the application number #07/974,428 on November 12, 1998 and the application number #07/999,524 on December 30, 1992.[1] (DE 1 ¶ 22). However, the "USPTO, due to failure to pay the application fee," declared Ross's application abandoned in 1995. (DE 1 ¶ 23). Ross attempted "revival and/or substitution of his original invention, on or about 1999, but it was also declared abandoned in 2000, by the USPTO, this time, for reasons other than failure to pay fees." (DE 1 ¶ 24). Seven years later on July 11, 2007, Ross filed a lawsuit against USPTO before another court of this District, alleging "unconstitutional depr[i]vation of patent rights in the 1992 patent applications, and detrimental reliance on USPTO procedures and instructions, for the 1999 failed effort to revive his original patent application." (DE 1 ¶ 25; *see also Ross v. United States of America*, Case No. 07-cv-61723-JIC). The district court dismissed Ross's 2007 action as time-barred and the Federal Circuit Court of Appeals later affirmed this dismissal. (DE 1 ¶ 26; *see also* DE 54, *Ross v. United States of America*,

---

[1] Ross states, without additional explanation, that the issuance of the application number #07/974,428 was "in error, as it was a duplicate." (DE 1 ¶ 22 n.1).

Case No. 07-cv-61723-JIC).  Almost seven years later, on May 14, 2015,[2] Ross "secured a Copyright Registration with the United States Copyright Office" for each of the ERD Written Materials that he produced in 1992:  VAu 1-186-491 (the "491 Copyright"), VAu 1-186-859 (the "859 Copyright"), VAu 1-186-860 (the "860 Copyright"), VAu 1-186-862 (the "862 Copyright"), and TXu 1-919-460 (the "460 Copyright").  (DE 1 ¶ 27; DE 1 at 46-63, 65-70).  He claims that these 2015 registrations "copyright protected" the ERD Written Materials "as of their respective date of creation, in 1992." (DE 1 ¶ 21; DE 1 at 43).

Ross next alleges that Apple's current and former executives bragged publicly about the company's culture of stealing (DE 1 ¶ 28) and that Apple therefore must have "engaged in systematic searching for other people's ideas by rummaging through all sorts of resources, private and governmental, for 'abandoned' and 'discarded' prior art, and ideas, and, when it found something promising, 'made it its own.'"  (DE 1 ¶ 29).  He concludes that because of this culture of theft, Apple found and used the ERD Written Materials (DE 1 ¶ 31) and "generated infringing two-dimensional copies of [the drawing that is the subject of the 491 Copyright] in packaging, advertising, broadcast media, print media and . . . three-dimensional devices copied therefrom."  (DE 1 ¶ 35).  He lists 25 products Apple released from 2007 to 2010 and 39 more products Apple released from 2011 to 2016 that allegedly misappropriate or infringe his intellectual property rights.  (DE 1 ¶¶ 35-36).  He also claims that Apple further infringed his rights in seeking and obtaining 17 patents and 3 trade dress registrations from the USPTO, including a patent for a "two screen device" that resembles drawing that is the subject of the 859

---

[2]  The copyright registrations which Ross attaches as exhibits are all dated May 4, 2014—a full year earlier than the date Ross alleges that he obtained registrations in the body of his Complaint.  (DE 1 at 46-63).

Copyright and two patents for devices that "provid[e] remote media content to users of iTunes® and iBook Store®" which used or copied elements of the drawing that is the subject of the 862 Copyright and the writing that is the subject of the 460 Copyright. Ross does not identify what language or features from the ERD Written Materials that Apple used copied, and does not identify in detail what Apple's remaining patents and registrations were for or how they infringe his rights.  (DE 1 ¶¶ 37-41).[3]  On March 10, 2015, Ross sent a cease and desist letter to Apple.  Apple replied on June 10, 2015 denying any infringement.  (DE 1 ¶¶ 42-43; DE 1 at 72-77).

Ross's Complaint brings seventeen causes of action against Apple:

- Count 1 for "misappropriation of intellectual property as chattel";

- Count 2 for "unjust enrichment resulting from misappropriation of intellectual property as chattel";

- Counts 3, 4, 5, 6, and 7 for "direct infringement of copyright" in relation to the 491 Copyright, the 859 Copyright, the 860 Copyright, the 862 Copyright, and the 460 Copyright, respectively;

- Counts 8, 9, 10, 11, and 12 for "wil[l]ful[] infring[e]ment of copyrights" in relation to the 491 Copyright, the 859 Copyright, the 860 Copyright, the 862 Copyright, and the 460 Copyright, respectively;

- Counts 13, 14, 15, 16, and 17 for "unjust enrichment resulting from infringement of copyrights" in relation to the 491 Copyright, the 859 Copyright, the 860 Copyright, the 862 Copyright, and the 460 Copyright, respectively.

---

[3] Ross identifies Apple's infringing patents as US8638549B2, US7774708B2, US9084089B2, D627,790, D602,016, D618,677, D690,300, D681,632, D750,065, D750,062, D748,622, D755,784, D752,577, D752,037, D724,078, D712,405, and utility patent 7,479,949.  (DE 1 ¶ 38-40).  He identifies Apple's infringing trade dress registrations "awarded to Apple for the design and configuration of the iPhone" as U.S. Registration Nos. 3,470,983, 3,457,218, and 3,475,327.  (DE 1 ¶ 41).

He demands several injunctions and over $10 billion in damages and restitution. (DE 1 at 33-37). Apple moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545). Although *pro se* pleadings are held to a less stringent standard and construed liberally, *see Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), they still must satisfy the basic pleading requirements of applicable law and the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

## III. DISCUSSION

Apple argues that the Complaint does not allege sufficient facts to support Ross's Copyright Act infringement claims, Counts 3 through 17. It also contends that Ross's remaining claims—Counts 1 and 2—are similarly deficient or are, in the alternative, preempted by his copyright claims. The Court agrees with these arguments and dismisses the Complaint.

Ross brings Counts 3 through 17 pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*, alleging for each of the five ERD Written Materials a separate count for "direct infringement," "willful infringement," and "unjust enrichment." Construing these claims liberally as causes of actions for copyright infringement as to each of the ERD Written Materials, the Complaint fails to state a claim.[4] "To state a claim for copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247–48 (11th Cir. 1999) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)); *see also Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994); *BellSouth Advertising & Publishing Corp. v. Donnelley Info. Publishing, Inc.,* 999 F.2d 1436, 1440 (11th Cir. 1993) (en banc). Ross's Complaint satisfies the first element of an infringement claim by alleging that he

---

[4] Ross's Complaint is "the proverbial shotgun pleading." *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."). For instance, Ross arbitrarily separates his copyright infringement causes of action into "direct infringement," "willful infringement," and "unjust enrichment" counts, and then indiscriminately incorporates every antecedent allegation into each subsequent claim for relief. Courts disfavor such pleadings because they "wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner*, 464 F.3d at 1279 (citations omitted).

6

holds five copyright registrations in relation to each ERD Written Material. It does not, however, allege any facts showing when and how Apple copied constituent elements of Ross's original works.

As alleged, the Complaint relies almost exclusively on public statements by current and former Apple executives: in 1996, former CEO Steve Jobs said that Apple engaged in "shameless stealing"; "Sr. VP of Worldwide Marketing" Phil Schiller was "once quoted" as saying that Apple had a culture of taking others' ideas and "making them their own"; and "Vice President of Apple" Bud Tribble was "quoted as saying" that idea theft was "part of Apple's DNA." (DE 1 ¶ 28). From these statements, the Complaint posits two allegations that do not necessarily follow: that Apple actively "engaged in systematic searching for other people's ideas by rummaging through all sorts of resources" and that "Apple chose to adopt a culture of dumpster diving as an R&D strategy." (DE 1 ¶¶ 29-30). These factually unsupported conclusions are the basis, without any additional facts, for the assumption that Apple actually came into possession of Ross's ERD Written Materials. (DE 1 ¶ 31). And from this inference, the Complaint reaches the blanket conclusion that 64 Apple products released since 2007, and all the accompanying marketing materials, copied constituent elements of Ross's original works. The Complaint also concludes that Apple copied the ERD Written Materials in applying for and obtaining 17 patents and 3 trade dress registrations, but provides insufficient details about the subject matter of these patents or registrations and how precisely they infringed on Ross's rights.[5]

---

[5] Because Ross provides no details about which aspects of Apple's patent or registration applications infringed his rights, the Court declines to address Apple's arguments that the Noerr-Pennington doctrine immunizes its conduct from suit.

Critically, Ross's Complaint alleges no facts permitting this broad swath of deductions. Contrary to Ross's argument (DE 23 at 13-14), the presence of the ERD Written Materials in the public record and Apple executives' generalized statements in no way show that Apple directly copied or even had access to the ERD Written Materials. Ross responds with a citation to the Sixth Circuit case *Jones v. Blige*, 558 F.3d 485 (6th Cir. 2009). However, the discussion in *Jones* actually illustrates the central flaw with Ross's copyright infringement claims: "access may not be inferred through mere speculation or conjecture. A mere assertion of access, unsupported by probative evidence is inadequate. Nor is the bare possibility of access sufficient." *Jones*, 558 F.3d at 491 (quotation marks and citations omitted). The Eleventh Circuit has similarly held that "mere speculation or conjecture" is not enough and that the defendant must have had a "reasonable opportunity" to establish access. *Herzog*, 193 F.3d at 1250. In *Herzog*, the plaintiff alleged that a defendant infringed her rights to a film screenplay, arguing that the defendant had "access" because he visited Miami while a physical copy of the screenplay was in the city. *Id.* In rejecting this argument, the Eleventh Circuit found, "notwithstanding the bare physical possibility" that the defendant had viewed the screenplay during his Miami visit, that "[r]easonable opportunity does not encompass any bare possibility in the sense that anything is possible." *Id.* (citing Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.02[A] at 13-19). Ross's assertion of "access" also falls short because he does not allege that Apple or its agents had a reasonable opportunity to access the ERD Written Materials. Accordingly, the Court cannot reasonably infer that Apple directly copied or had access to the ERD Written Materials.

Even without alleging direct copying or access, Ross may "still prevail on his copyright infringement claim by demonstrating that the original and infringing works are 'strikingly similar.'" *See Herzog*, 193 F.3d at 1248 (citing *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978)). "Striking similarity exists where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (quotation marks and citation omitted). But the Complaint does not present with particularity a description of any infringing work on which to base a "striking similarity" analysis. Instead, it presents a single side-by-side pictorial comparison of the drawing that is the subject of the 491 Copyright and an "Apple® 2007" device (DE 1 ¶¶ 48), accompanied by the conclusory allegation that "[a] casual observer with ordinary perception will conclude that the iPhone® has the same overall concept and feel as Ross's ERD design of 1992." (DE 1 ¶ 49). To the extent the Complaint presents any specific factual allegations about "striking similarity," it is that Apple once represented in an unrelated litigation that the "iPhone . . . has a distinctive shape and appearance—a flat rectangular shape with rounded corners" (DE 1 ¶ 49). But it remains unclear how this allegation relates to any specific work that Apple produced which infringes any work for which Ross has a valid copyright. As Ross appears to confirm in his briefing, he relies on the overbroad claim that 64 different Apple products[6] and the accompanying "packaging, advertising,

---

[6] Ross's list of 64 Apple products includes products released as recently as 2016. Apple argues that Ross's claims are nevertheless time-barred pursuant to the Copyright Act's three-year statute of limitations. 17 U.S.C. § 507(b). However, because of the deficiency of Ross's conclusory allegations, the Court is unable to determine whether Ross has alleged continuing infringement sufficient to overcome the Copyright Act's

broadcast media, print media," all infringed his rights because they have the same overall look and feel as the ERD. (DE 23 at 14).

This lack of specificity leaves the Complaint bereft of detail sufficient to afford Apple the opportunity to draft a meaningful responsive pleading. *See Mahnke v. Munchkin Prod., Inc.*, No. 99CIV.4684(LTS)(THK), 2001 WL 637378, at *6 (S.D.N.Y. June 7, 2001) (dismissing copyright infringement claims for failure to identify with particularity a specific infringing work and the time period in which the infringement occurred). The generalized nature of Ross's allegations is also in significant tension with the established principle that copyright protects specific expressions of ideas, not ideas themselves. "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Herzog*, 193 F.3d at 1248 (quoting *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976)); *see also* 17 U.S.C. § 102(b); *Baker v. Selden*, 101 U.S. 99 (1880). In order to state a copyright infringement claim, Ross must identify the particular expression to which he objects and explain in detail how that expression infringes on his rights. Counts 3 through 17 fail to do so and the Court dismisses these claims.

Ross's misappropriation and unjust enrichment claims, Counts 1 and 2, also do not survive Apple's motion to dismiss. Although Ross—a Florida plaintiff filing suit in Florida—does not explicitly characterize either as such, the Court interprets both Counts 1 and 2 as common law causes of action brought pursuant to Florida law.[7] Additionally,

---

statute of limitations. Accordingly, the Court declines to reach the statute of limitations argument as this juncture.

[7] Since *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), federal courts have applied state substantive law and moved away from general federal common law. In his

while Ross brings a claim for "misappropriation of intellectual property as chat[t]el," the factual allegations supporting his claim most accurately reflect a claim for the misappropriation of the ERD idea. (DE 1 ¶ 45). "To establish a claim for misappropriation of an idea, a plaintiff must show that: (1) the idea was novel; (2) disclosure of the idea was made in confidence; and (3) the idea was adopted and used by the defendant." *Dyer v. Wal-Mart Stores, Inc.*, 535 F. App'x 839, 842 (11th Cir. 2013) (citation omitted). Even assuming that the ERD was a novel idea—a tenuous proposition given the dearth of supporting facts in the Complaint—Ross does not claim that he disclosed the ERD idea to Apple in confidence. Accordingly, Ross's misappropriation claim, Count 1, fails.

To state a claim for "unjust enrichment . . . under Florida law," a plaintiff "must allege (1) the plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit conferred, and (4) the circumstances indicate that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Merle Wood & Assocs. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013). As discussed above, the Complaint contains no facts connecting Apple to the ERD or to the ERD Written Materials in a manner that would support any of these elements. Consequently, the Court dismisses the unjust enrichment claim as well.

Independently, the Copyright Act preempts Ross's common law causes of action. "Section 301 of the Act preempts all state causes of action based on a right found in the

---

response to Apple's motion to dismiss, Ross denies that his misappropriation claim had any basis in Florida statute. (DE 23 at 19). Eventually though, he argues that his Complaint satisfied the elements of a Florida common law cause of action. (DE 23 at 19-20).

Act or an equivalent to such a right." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001). However, "[t]he Act 'preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law.'" *Id.* (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992)). Thus, a state law claim can survive preemption by adding an "extra element" which changes the nature of the claim, making it "*qualitatively* different from a copyright infringement claim." *Id.* (emphasis in original).

The Copyright Act preempts Ross's unjust enrichment claim, Count 2, because it is identical to his copyright infringement claims. *See, e.g., Levine v. Landy*, 832 F. Supp. 2d 176, 187 (N.D.N.Y. 2011) (quoting *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999)); *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533 (E.D. Va. 2005); *see also* William F. Patry, Patry on Copyright § 18:51 ("The mere phrasing of this claim reveals its preemptive nature: typical unjust enrichment claims are preempted because they are mere attempts to state a claim for damages for unauthorized copying or other activity encompassed by Section 106."). The Copyright Act also preempts Ross's misappropriation claim, even though Florida courts recognize that in some circumstances misappropriation claims may be exempt from such preemption. *See, e.g., Garrido v. Burger King Corp.*, 558 So. 2d 79, 83 (Fla. 3d Dist. Ct. App. 1990). For example, in *Garrido*, the court found that the Copyright Act did not preempt a misappropriation claim premised on the plaintiff's confidential disclosure of a novel idea to the defendant with the expectation of payment. *Id.* But, as discussed, Ross does not allege confidential disclosure or some other element that would distinguish his misappropriation claim from a standard copyright infringement claim.

Ross objects that his misappropriation claim relates to the "taking of his personal property" and to "rights other than those protected under the Copyright laws," (DE 23 at 18), but this objection lacks substance: as alleged, Ross's misappropriation and copyright claims rely on the exact same allegations and theories of harm and are "qualitatively identical." Consequently, the Copyright Act preempts Ross's misappropriation claim as well. *Foley*, 249 F.3d at 1285.

## IV. CONCLUSION

For the foregoing reasons, Apple's corrected motion to dismiss (DE 19) is **GRANTED** and the Complaint (DE 1) is **DISMISSED**. If Ross wishes to amend his complaint in a manner consistent with this Order, he must seek leave to do so by **January 21, 2017**. Ross's motion for leave to file proposed case management plan and order (DE 28) is **DENIED** with leave to renew after responses to any amended pleading. Apple's motion to stay discovery (DE 30) is **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 30ᵗʰ day of December, 2016.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

cc:   Thomas S. Ross
      PO Box 279381
      Miramar, FL 33027

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-61471-CV (Judge Williams/Simonton)

THOMAS S. ROSS,　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　)　　**JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　　)　　**COMPLAINT FOR COPYRIGHT**
vs.　　　　　　　　　　　　　　　)　　**INFRINGEMENT**
　　　　　　　　　　　　　　　　　)
APPLE INC., a California corporation,　)
　　　Defendant.　　　　　　　　　　)

---

## AMENDED COMPLAINT

Plaintiff, THOMAS S. ROSS (Ross), **PRO SE,** in the above styled cause, sues Apple, Inc. (Apple), for copyright infringements, and, on information and belief, alleges as follows:

### NATURE OF THE ACTION

1.　　Ross is the sole and exclusive owner of the intellectual property identified herein as the Electronic Reading Device (ERD) and is the sole and exclusive owner and copyright holder of original work of authorship, the expression of which is that of the ERD.

　　　a.　In 1992, Ross created a set of drawings and documents that preserved, on paper, what the ERD was, what it did and what it looked like. These works of original authorship were copyright protected as of the date Ross affixed them on paper, in 1992, and continues to the date of this writing.

　　　b.　Ross registered his works of original authorship, with the United States Copyright Office, and secured Certificates of Registration for each of five (5) works of

Ross's Amended Complaint

Case No: 16-61471-cv

original authorship.   One (1) work of original authorship, and its respective Certificate of Registration, is relevant in this cause of action, to wit:

- VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428.  (hereinafter **491**)



The Certificate of Registration cited above, is attached herein. (EXHIBIT A)

2.  The ERD was patentable as an idea, and ROSS filed an application for a utility patent with the United States Patent and Trademark Office (USPTO), on November 12, 1992. The USPTO declared this application unintentionally abandoned on April 10, 1995. (patent application #07/974,428 (hereinafter "**428**")).  Fast forward to January 28, 1999, Ross attempted to "revive" the **428** application.  "Revival" would have treated the **428** application, as if "no time had passed", by considering only art that came prior to November 12, 1992.  This failed because the window of time that allowed this procedure had passed.  Then, the USPTO advised Ross to file a "substitution" application.  He did, and this failed because this procedure required the examiner to consider art that was

created between 1993 and 1999, all of which came after the 1992 **428** patent application[1].

Ross, then sued the USPTO on July 11, 2007[2].

3.  The work of original authorship cited herein, was part of the **428** Application for Patent and is relevant only in that it provides documentation that the chain of title relates back to 1992, when Ross clothed the idea in form by means of a picture.  Functioning as a "birth certificate", the "dressing" of the ERD was evidenced by the identity of the author and the dates of their creation, affixed on the original works of authorship.

4.  Ross alleges, that for the original work of authorship cited above, Apple infringed on his exclusive copyright, where Apple 1) copied Ross's original design, cited above, 2) prepared derivative works based upon Ross's copyrighted work, 3) distributed copies of Ross's copyright protected work to the public by sale or other transfer of ownership, or by rental, lease or lending, and 4) Apple caused images of Ross's copyrighted work to be displayed publicly, without Ross's permission and in violation of Ross's exclusive rights, as Ross will detail below.

5.  On or about March 10, 2015, Ross sent a Cease and Desist letter to Apple, at its address, 1 Infinite Loop, Cupertino, CA.  See EXHIBIT B.1, B.2, B.3.

6.  On or about June 10, 2015, Apple sent a letter declining to comply.  See EXHIBIT B.4.

---

[1] Patent Application # 09/245,075 (Substitution of patent 07/974/428)
[2] *Ross v United States* 07-CV61723, 7/11/2007.

Ross's Amended Complaint                                             P a g e  3 | 31

Case No: 16-61471-cv

7.   By this action, ROSS seeks to put a stop to Apple's illegal conduct and obtain compensation for the violations that have occurred thus far.

## PARTIES

**Plaintiff Thomas S. Ross.**

8.   Thomas S. Ross is an individual, a citizen of the United States of America, having his principal domicile in Miramar, Florida.

**Defendant Apple**

9.   Ross is informed and believes that Apple is a California corporation having its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

10. Ross is informed and believes that Apple conducts business in the State of Florida, throughout the United States of America and many Countries that are signatories to Berne and Paris international treaties and conventions, governing Copyrights.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the claims relating to the Copyright Act (17 U.S.C. §§ 101,501), 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1338(a) (any act of Congress relating to copyrights, patents and trademarks) and 28 U.S.C. §1367 (supplemental jurisdiction)

12. This Court has personal jurisdiction over Apple because it has committed and continues to commit acts of infringement in violation of 17 U.S.C. § 106 and places infringing

products in the stream of commerce, with the knowledge and understanding that such products are sold in the State of Florida, including in this District. The acts of Apple cause injury to Ross in this District. Upon information and belief, Apple derives substantial revenue from the sale of infringing works within this District, expects their action to have consequences in this District and derives substantial revenue from interstate and international commerce.

13. This Court has subject matter jurisdiction to both specific and general personal jurisdictions. Accordingly, both jurisdiction and venue are proper in this court. See 28 U.S.C. §§ 1391, 1400.

## VENUE AND INTRADISTRICT ASSIGNMENT

14. Venue is proper within this District under 28 U.S.C. §§ 1391(b) and (c), and §1400(a), because Apple transacts business within this district and offers for sale in this district products that infringe the Ross copyrights.  In addition, venue is proper because Ross's principal domicile is in this district, and Ross suffered harm in this district.

## BACKGROUND

### *Ross's Innovative Drawing*

15. The ERD Ross envisioned, had the **491** drawing, ranging in size, features and functions, to accommodate various settings and uses.

16. The **491** drawing, when viewed without the functional parts, has a unique look and feel that is the result of design elements consisting of  1) rectangular panel with a display screen area that covers most of the available surface, on one side, where 2) the screen is centrally positioned and 3) thinly framed on two sides and leaving a wider frame on top

and the bottom , 4) featuring evenly rounded corners, 5) a thin band around the outer edge of the structure, sufficient to allow for functional elements to be embedded therein, offering a visually sleek appearance, small enough to be hand-held, and all of which is, ornamental and non-functional.

17. When Ross first "clothed" the ERD as the **491** drawing, on June 28, 1992, nothing like it existed before.  In 1992, the **491** drawing was radically different from the prevailing design used in the then contemporary hand-held devices, such as a cell phone and, some years later, the Personal Digital Assistant (PDA).   Many early cell phone designs mimicked the "*Transporter*" device, made popular by the 1966 Star Trek television series, famously associated with the call to "*beam me Scotty*".  They featured a clam-like design that had one piece placed vertically on top of another, with the top piece having a screen and the bottom piece having a keyboard, with both pieces attached by hinges.  This device was commonly referred to as the "*flip-phone*".

18. In 1993, Apple released the Newton MessagePad 2100 (Newton).  It featured a design dominated by a screen, framed by a bulky looking shell, with an integrated pen holder, having the look and feel of an armored field instrument.

19. During the late nineteen nineties, PDAs, were marketed with mixed success.  While featuring a larger, more dominant screen design than the flip-phone design, none of them matched the elegant look and feel of the **491** drawing.  In the late 1990s, devices emerged, that were generally known as "tablets", all following a design that roughly resembled the look and feel of the PDAs of the time.

20. On March 21, 2007, Apple released its first model of the iPhone, and its design was, and is, strikingly similar to that of the ERD **491** drawing, in every distinctive ornamental design element, identified in detail below, and, not coincidentally, had substantially all of the functionality described in Ross's **428** patent application of 1992, creating a virtual identity that gave the 2007 iPhone, the identical look and feel of the **491** drawing. From that point on, all iPhones and certain other derivative products, featured the same **491** drawing.

21. Simple but distinctive. The ingenious simplicity of the **491** drawing, afforded the ability to utilize the periphery, for appending, or not, a variety of functional controls, such as turning the device on or off, keyboard, pagination, sound volume, etc., and attach peripherals such as microphone, speakers, cameras, solar panels, storage devices and interfaces for other external devices.

22. Alternately, the frame could remain free of functional elements, where peripheral functions could be performed by software, and peripherals could be placed embedded at the edges or the side or the rear panel. In short, stripping away all functional elements, would reveal the purely ornamental design elements. The ERD embodied a fusion of design and function, in a way that never existed prior to 1992.

*491 ornamental elements at issue*

23. The following elements of Ross's design comprise the original work of authorship at issue in this case:

   • A rectangular structure with four evenly rounded corners;

- A flat surface covering the front of the structure;

- A display screen placed on the front surface with a border that surrounds it;

- A proportionally spaced border area on top and bottom with a narrower border at the sides.

- Sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design.

- Dimensions within a range that were consistent with the ability to be hand-held or small enough to be portable.

*When and how did Apple have an opportunity to see the **491** design*

24. During the period of 1998 and 2007, Apple was eager to change its mission, and ultimately its financial fortunes, from a company that just built computers, to a company that created revolutionary products. Apple went on a quest to find the proverbial Holy Grail of wireless devices.  In 1992, Ross came up with a design whose virtual identity became a ubiquitous and iconic design for portable communication and entertainment devices, and existed vicariously in the body of Apple products.

25. A close examination of the development of the smartphone, the tablet and the digital music player, reveals that every single key component that was ultimately used by Apple in its iPhone and other derivative products, are not only components that came from US government but reflect the functionality first described in the **428** patent application, and, more importantly, they reflect Ross's **491** drawing.

26. How did Apple acquire this iconic design?  Two identical designs like that of the 491 drawing and the iPhone, could no more be conceived from two separate entities than twins could be born from two separate mothers.

27. Apple's opportunity to discover the **491** drawing came 1999, when Ross submitted a "substitution" patent application that included the **491** design, that was now, searchable, and when, in the late 1990s and early 2000s, powerful data collection and mining tools became available that made it possible for Apple to search fast and in a wide universe of data.  Apple was a persistent researcher determined to find solutions for its challenges. They identified the technology to put together the iPhone, and discovered the **491** drawing, the way astronomers search the universe for new things, they use the best tools available and search persistently until they find what they theorize must be out there. Judging from the striking similarity of Apple's products to the 491 drawing, it struck pay dirt.  Apple started to copy the **491** drawing with the first iPhone® released in 2007.

28. Apple liked the design so much that it kept on copying it on every new iPhone®, iPod touch® and iPad® Model ever since, right up to the last 2016 releases.

29. **Figure 1 - ERD 1992**                                          **Figure2 - APPLE Ⓡ 2007**




30. The 2007 iPhone is substantially the same as all iPhones that followed.  It consisted of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional.  This iPhone infringed on Ross's **491** original work of authorship.

31. The keyboard in the picture, is not a physical keyboard, but its positioning is the same as that depicted in the 491 drawing.  While the keyboard itself is a functional element, the positioning of the keyboard at the bottom, achieves a strikingly similar aesthetic effect that is considered purely ornamental element because its positioning has no other purpose but to contribute to the aesthetic quality of the product.

*Apple's Infringing Products*

32. Ross alleges that in the last three years prior to the date of the first Cease and Desist Demand letter dated 2/10/2015, Apple launched the following devices, each of which were infringing two-dimensional copies of Ross's technical drawing registered as the **491** design in packaging, advertising, broadcast media, print media and where aesthetic and ornamental design from the technical drawing, are embodied in three-dimensional devices copied therefrom. The list that follows includes but is not limited to, such devices:

33. All of the iPhone, iPod and iPad products cited herein, infringe on the design elements of the **491** design and are strikingly similar to it:

- A rectangular structure with four evenly rounded corners;

- A flat surface covering the front of the structure;

- A display screen placed on the front surface with a border that surrounds it;

- A proportionally spaced border area on top and bottom with a narrower border at the sides.

- Sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design.

- Dimensions within a range that were consistent with the ability to be hand-held or small enough to be portable.

34. Each product line constitutes continuous infringement of each released model, and each model released constitutes a new instance of infringement because each is a copy of the 491 drawing in that each embodies the ornamental design elements consisting of

35. The following products infringe on Ross's copyright, in that they are strikingly similar to Ross's 491 drawing:

| Year | Launched | Model | Family | Discontinued |
|------|----------|-------|--------|--------------|
| **2011** | 10-Feb | iPhone 4 (CDMA) (16 & 32 GB) | iPhone | 10/4/2011 |
| | 11-Mar | iPad 2 (16 GB) | iPad | 3/18/2014 |
| | | iPad 2 (32 & 64 GB) | iPad | 3/7/2012 |
| | 14-Oct | iPhone 4 (8 GB) | iPhone | 9/10/2013 |
| | | iPhone 4S (16 GB) | iPhone | 9/10/2013 |
| | | iPhone 4S (32 & 64 GB) | iPhone | 9/12/2012 |
| | 16-Mar | iPad (3rd gen) | iPad | 10/23/2012 |
| | | iPod Touch (4th gen) (16 GB) | iPod Touch | 5/30/2013 |
| | 21-Sep | iPhone 5 | iPhone | 9/10/2013 |
| | 11-Oct | iPod Touch (5th gen) (32 & 64 GB) | iPod Touch | current |

Ross's Amended Complaint

Case No: 16-61471-cv

| | | | |
|---|---|---|---|
| 2-Nov | iPad Mini (Wi-Fi) (16 GB) | iPad | current |
| | iPad Mini (Wi-Fi) (32 & 64 GB) | iPad | 10/22/2013 |
| | iPad (4th gen) (Wi-Fi) (16 GB) | iPad | 10/16/2014 |
| | iPad (4th gen) (Wi-Fi) (32 & 64 GB) | iPad | 10/22/2013 |
| 16-Nov | iPad Mini (Wi-Fi + Cellular) (16 GB) | iPad | current |
| | iPad Mini (Wi-Fi + Cellular) (32 & 64 GB) | iPad | 10/22/2013 |
| | iPad (4th gen) (Wi-Fi + Cellular) (16 GB) | iPad | 10/16/2014 |
| | iPad (4th gen) (Wi-Fi + Cellular) (32 & 64 GB) | iPad | 10/22/2013 |
| 30-May | iPod Touch (5th gen) (16 GB) | iPod Touch | 6/26/2014 |
| 20-Sep | iPhone 4S (8 GB) | iPhone | 9/9/2014 |
| | iPhone 5C (16 & 32 GB) | iPhone | 9/9/2014 |
| | iPhone 5S (16 & 32 GB) | iPhone | current |
| | iPhone 5S (64 GB) | iPhone | 9/9/2014 |

Ross's Amended Complaint

Case No: 16-61471-cv

| | | | | |
|---|---|---|---|---|
| | 1-Nov | iPad Air (16 & 32 GB) | iPad | current |
| | | iPad Air (64 & 128 GB) | iPad | 10/16/2014 |
| | 12-Nov | iPad Mini (2nd generation) (16 & 32 GB) | iPad | current |
| | | iPad Mini (2nd generation) (64 & 128 GB) | iPad | 10/16/2014 |
| 2014 | 18-Mar | iPhone 5C (8 GB) | iPhone | current |
| | 19-Sep | iPhone 6 | iPhone | current |
| | | iPhone 6 Plus | iPhone | current |
| | 22-Oct | iPad Air 2 (16, 64 & 128 GB) | iPad | current |
| | | iPad Mini 3 (16, 64 & 128 GB) | iPad | current |

| | | | | |
|---|---|---|---|---|
| | July 15 | iPod Touch (6th gen) | iPod Touch | current |
| 2015 | September 9 | iPad Mini 4 | iPad | current |
| | September 25 | iPhone 6S | iPhone | current |
| | | iPhone 6S Plus | iPhone | current |

| 2016 | March 31 | iPad Pro (9.7") | iPad | current |
|---|---|---|---|---|
| | | iPhone SE | iPhone | current |
| 2016 | September 16 | iPhone 7 | iPhone | current |

36. All of the aforementioned Apple products are, each, strikingly similar to the **491** drawing in that each consists of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional. Each product infringes on Ross's **491** original work of authorship.

37. To avoid a tsunami of repetitive descriptions of all these devices that infringe on Ross's **491** drawing, Plaintiff will include only the description of some of the latest products, by way of examples, and that will also be intended to apply to all earlier infringing products, the detail narratives of which, would be unnecessarily repetitive.

38. The **iPhone 7** looks identical to the 2014 iPhone 6 and the 2015 iPhone 6S, that consists of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds

it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional.  The iPhone 7 infringes on Ross's **491** original work of authorship.

39. The **iPhone SE** is a smartphone designed and marketed by Apple as part of the iPhone series of devices. It was unveiled on March 21, 2016, at Apple's Cupertino headquarters and was released on March 31, 2016. The iPhone SE serves as a replacement for the iPhone 5S.  It maintains a nearly identical design to the 5S, that consists of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design, and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional.  This product infringes on Ross's **491** original work of authorship.

40. **iPad Pro** is a line of tablet computers designed, developed, and marketed by Apple, that runs the iOS mobile operating system. It is available in 2 screen sizes, 9.7 inch and 12.9 inch.  The first iPad Pro, the 12.9 inch version, was announced on September 9, 2015, and released on November 11, 2015.  The 12.9 inch tablet was later followed by the

smaller 9.7 inch version, which was announced on March 21, 2016, and released on March 31, 2016.  Its characteristic design elements consists of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design, and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional.  This product infringes on Ross's **491**original work of authorship.

41. The **iPhone 6S and iPhone 6S Plus** are smartphones marketed by Apple. The devices were announced on September 9, 2015, at the Bill Graham Civic Auditorium in San Francisco by Apple CEO Tim Cook, and went on sale on September 25, 2015. The iPhone 6S and 6S Plus, jointly serve as successors to the iPhone 6 and iPhone 6 Plus of 2014 and were the flagship devices of the iPhone series until September 7, 2016, when they were replaced by the iPhone 7 and iPhone 7 Plus. As with all prior apple smartphones, media players and tablets, the design consists of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design, and dimensions within a range that is consistent with the

ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional.  This product infringes on Ross's **491**original work of authorship.

42. The **iPad Mini 4** was the first major redesign of the iPad Mini line, with a slightly taller and wider body (though with no increase in screen size) compared to the iPad Mini 2 and Mini 3. There is also a much thinner design, and lighter than the previous generation by 33.2 grams, but it also features the design elements that makes it strikingly similar to Ross's **491** design, consisting of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design, and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional. This product infringes on Ross's **491**original work of authorship.

43. The **iPod Touch** is an iOS-based all-purpose handheld PC designed and marketed by Apple with a user interface that is touchscreen-based. It not a smartphone, though it has a similar design to the iPhone and is often referred to as the "iPhone without a phone".  The first generation was released September 7, 2007.  The fifth generation was released in October 11, 2012, and the 6th generation was released in July 15, 2015. As with prior Apple releases of similar products, the design elements that infringe on the **491** drawing remain consistent, consisting of a rectangular shape with four evenly rounded corners, a

flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design, and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable. All these described elements are ornamental and non-functional. This product infringes on Ross's **491** original work of authorship.

44. The **iPad Mini 3** is the third-generation iPad Mini tablet computer designed, developed and marketed by Apple. It was announced alongside the **iPad Air 2** on October 16, 2014 and then released on October 22. It uses the same design and hardware as that of its predecessor, the **iPad Mini 2**. On September 9, 2015, the iPad Mini 3 was discontinued and was replaced by the **iPad Mini 4**. The design for these products consists of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design, and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable. All these described elements are ornamental and non-functional. This product infringes on Ross's **491** original work of authorship.

45. The **iPhone 6 and iPhone 6 Plus** are smartphones designed and marketed by Apple. The devices are part of the iPhone series and were announced on September 9, 2014, and

released on September 19, 2014.  The iPhone 6 and iPhone 6 Plus jointly serve as successors to the iPhone 5S and were themselves replaced as flagship devices of the iPhone series by the iPhone 6S and iPhone 6S Plus on September 9, 2015.  The iPhone 6 and iPhone 6 Plus include larger 4.7 and 5.5 inches (120 and 140 mm) displays and featured the same design elements common to the entire Apple lineup of iPhones, iPads and iPods, consisting of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design, and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional. This product infringes on Ross's **491** original work of authorship.

46. The design of the **iPhone 5C** is also considerably thicker but closely similar to the design of the **iPod Touch (5th generation) models**, which is also available in a variety of colors, but in a different coating finish. Other minor changes include a different camera assembly and the design of the mute/ringer switch.  Having said that, the iPhone 5C featured the same ornamental design elements, consisting of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall

aesthetic balance of the design, and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.  All these described elements are ornamental and non-functional.  This product infringes on Ross's **491** original work of authorship.

47. By this action, Ross seeks to put a stop to Apple's illegal conduct, determine the worldwide financial gain attributable to Ross's intellectual property, and obtain equitable compensation for the virtual identity theft and copyright infringements that have occurred thus far, going back as far as the law permits and the court deems appropriate.

## CLAIM FOR RELIEF
### (Exclusive rights in copyrighted works)
### (17 U.S.C. §106)

48. Ross is, and at all relevant times has been, the copyright owner of exclusive rights under the United States Copyright Laws, with respect to the original work of authorship identified herein as the **491** drawing.

49. Among the exclusive rights granted to Ross under the Copyright Act, are the exclusive rights to reproduce the original works and to distribute original works, to the public, or not. Apple, without permission or consent of Ross, has used, and continues to use, copies and derivatives of the Copyrighted original work of authorship, to distribute images of the copyrighted **491** original work to the public, and/or to make the copyrighted original works available for distribution to others without Ross's consent.  In doing so, Apple has violated Ross's exclusive rights of reproduction and distribution. Apple's actions constitute infringement of Ross's copyrights under Copyright Laws.

50. Ross is informed and believes that virtually all of the copies manufactured by Apple, have been distributed without permission of the copyright holder.

51. The foregoing acts of infringement have been willful and intentional, in disregard of, and with indifference to the rights of Plaintiff Ross.

52. As a result of Apple's infringement of Ross's exclusive rights, Ross is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Apple's infringement of each of the Copyrighted original works. Ross further is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

53. The conduct of Apple is causing and, unless enjoined and restrained by this Court, will continue to cause Ross great and irreparable injury that cannot fully be compensated or measured in money. Ross has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Ross is entitled to injunctive relief prohibiting Apple from further infringing Ross's copyrights, and ordering Apple to destroy all copies and derivatives made in violation of Ross's exclusive rights.

## PRAYER FOR RELIEF

WHEREFORE, Ross prays for judgment against Apple as follows:

1. A judgment that Apple has infringed one or more claims of each of Ross's asserted copyrights;

2.  An order and judgment preliminarily and permanently enjoining Apple and its officers, directors, agents, employees, affiliates, attorneys and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of infringements of Ross's asserted copyrights;

3.  A judgement awarding Ross all damages adequate to compensate for Apple's infringement of Ross's asserted copyrights, and in no event less than a reasonable royalty for Apple's acts of infringement, including pre-judgement and post-judgement interest at the maximum rate permitted by law;

4.  A judgement awarding Ross all damages, based on any infringement found to be willful pursuant to 17 U.S.C §504, together with pre-judgement and post-judgement interest at the maximum rate permitted by law;

5.  A judgement awarding Ross such portion of Apple's profits, pursuant to 17 U.S.C §504, as may be found to be attributable to the original works of authorship that were infringed upon together with pre-judgement interest;

6.  Actual damages suffered by Ross as a result of Apple's unlawful conduct, in an amount to be proven at trial, as well as pre-judgement interest as authorized by law;

7.  An accounting of Apple's profits pursuant to 17 U.S.C. §504(b);

8. Reasonable licensing fees for future use of Ross's asserted copyrights to be determined at trial;

9. For Ross's costs in this action.

10. For Ross's reasonable attorneys' fees incurred herein.

11. Restitutionary relief against Apple and in favor of Ross, including disgorgement of wrongfully obtained profits and,

12. For such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Ross demands trial by jury of

all issues triable by right of jury.

THOMAS S, ROSS

Dated: January 23, 2017

Respectfully submitted,

_____

THOMAS S. ROSS
Pro Se Attorney
P.O. Box 279381
Miramar, Florida 33027
Telephone: 954-312-7532
Facsimile: 954-312-7604
Email: erd1992@globarize.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-cv-61471 – (Judge Williams/Simonton)

THOMAS S. ROSS,　　　　　)
　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
APPLE, INC.,　　　　　　　　)
　　　　　Defendant.　　　　　)
_____)

STATE OF FLORIDA　　　　)
　　　　　　　　　　　　　　) SS
COUNTY OF BROWARD　　)

### AFFIDAVIT IN SUPPORT OF
### AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT

I, THOMAS S. ROSS, Affiant, being duly sworn, state as follows:

1.　　I am Thomas S. Ross;
2.　　I am the Plaintiff in this instant case;
3.　　Plaintiff is the Affiant;
4.　　I am proceeding as Attorney *Pro Se* and I am familiar with the file, records and pleadings in this matter;
5.　　The above captioned Motion was filed on or about January 23, 2017.

I, THOMAS S. ROSS, Affiant, states, under penalty of perjury, that, with respect to the

above captioned Motion, and this Affidavit in support thereof, as to statements of fact,

they are true and correct, to the best of my knowledge, and as to statements of

information and belief, I believe them to be true.

THOMAS S. ROSS

Dated: January 23, 2017

Miramar, Florida 33027

Respectfully submitted,

Thomas S. Ross, Affiant
P.O. Box 279381
Miramar, Florida, 33027
Telephone: 954-312-7532
Facsimile: 954-312-7604
Email: erd1992@globarize.com

**Sworn and subscribed before me**

This 23 day of JANUARY 2017

**Notary Public**

FOR DEPOSIT ONLY
KS&D PROPERTY HOLDINGS, LLC
1200000253

**Certificate of Service**

**I hereby certify** that a true and correct copy of the foregoing was served by US Mail on

January 23, 2017 on all counsel or parties of record on the Service List below.

_____

THOMAS S. ROSS
Attorney *Pro Se*
P.O. Box 279381
Miramar, Florida 33027
Telephone: 954-312-7532
Facsimile: 954-312-7604
Email: erd1992@globarize.com

Ross's Amended Complaint

Case No: 16-61471-cv

# SERVICE LIST

Thomas S. Ross v Apple, Inc.
CASE NO. 16-61471-CV (Judge Williams/Simonton)
United States District Court, Southern District of Florida

1   **Attorneys for Defendant APPLE, INC.**

2

3   **John F. O'Sullivan**
4   Hogan Lovells US LLP
5   Brickell World Plaza
6   600 Brickell Ave.
7   Suite 2700
8   Miami, FL 33131
9   305 459-6651
10  Fax: 305-459-6550
11  Email: john.osullivan@hoganlovells.com
12
13  **Clayton C. James**
14  Hogan Lovells US LLP
15      1601 Wewatta Street
16      Suite 900
17      Denver, CO 80202
18      303-899-7300
19  Fax: 303-899-7333
20      Email: clay.james@hoganlovells.com
21
22  **Jane Zenzi Li Carter**
23  Hogan Lovells US LLP
24  3 Embarcadero Center, Suite 1500
25  San Francisco, CA 94111
26  415-374-2300
27  Email: jane.carter@hoganlovells.com
28
29  **Jessica Black Livingston**
30  Hogan Lovells US LLP
31  1601 Wewatta Street
32      Suite 900
33      Denver, CO 80202
34      303-899-7300
35      Fax: 303-899-7333
36  Email: jessica.livingston@hoganlovells.com
37
38

Ross's Amended Complaint

Case No: 16-61471-cv

39  **Katherine A. Nelson**
40  Hogan Lovells US LLP
41  1601 Wewatta Street
42      Suite 900
43      Denver, CO 80202
44      303-899-7300
45      Fax: 303-899-7333
46  Email: katherine.nelson@hoganlovells.com
47

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 16-61471-CV (Judge Williams/Simonton)**


THOMAS S. ROSS,                                )
     Plaintiff,                               )
vs.                                            )
                                               )
APPLE, INC., a California corporation          )
                                               )          **JURY TRIAL DEMANDED**
     Defendant.                          )
_____

## EXHIBITS

## IN SUPPORT OF AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT


**A.** Ross's 1992 Original Drawing and its corresponding Certificates of Copyright
     Registrations:

VAu 1-186-491 Title of Work: Drawing 10.1 The Electronic Reading Device Patent
     Application #07/974,428

**B.** Cease and Desist Demand

    1.  Ross's Cease and Desist Demand Letter

    2.  Ross's Supplemental documents requested by Apple

    3.  Ross's Follow up letter to phone conversation dated 4/20/2015

    4.  Apple's final response

**C.** Original Summons & Proof of Service

**D.** Samples of Apple's infringing products

    1.  Apple's iPhone

    2.  Apple's iPad

    3.  Apple's iPod Touch

    4.  Apple's print packaging

    5.  Apple's print advertising

**E.** Apple's Financial Charts and Reports

# EXHIBITS

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VAu 1-186-491

**Effective date of registration:**

May 4, 2014

## Title

| | |
|---|---|
| Title of Work: | Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428 |
| Title of Larger Work: | The Electronic Reading Device Patent Application # 07/974,428 |

## Completion/Publication

Year of Completion: 1992

## Author

- Author: Thomas S. Ross
  Author Created: text, technical drawing

  Citizen of: United States
  Year Born: 1944

## Copyright claimant

Copyright Claimant: Thomas S. Ross

. Miramar, FL, 33027, United States

## Rights and Permissions

Name: Thomas S. Ross
Email:                                                    Telephone:
Address:

Miramar, FL 33027  United States

## Certification

Name: Thomas S Ross
Date: May 4, 2014

Correspondence: Yes



**Registration #:**  VAU001186491
**Service Request #:**  1-1410544861

Thomas S. Ross

Miramar, FL 33027  United States



# EXHIBIT B

*Courtney B. Weisholtz, P.A.*
**Attorney at Law**
P.O. Box 277794
Miramar, Florida 33027
Phone: 954-298-8061
Email: cbwlegal@aol.com

March 10, 2015                                        <u>Via Certified Mail, Return Receipt Requested</u>

Timothy Donald Cook
CEO
 APPLE, INC.
1 Infinite Loop
Cupertino, California 95014

Re: **CEASE AND DESIST DEMAND**

Dear Timothy Cook,

This firm and the undersigned, represent Thomas S. Ross in the enforcement of his intellectual property rights. Thomas S. Ross is the author and owner of the following copyright protected works that Apple, Inc. has been, and continues to, infringe:

- VAu 1-186-491 **Title** of Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428
- VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428
- VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application # 07/974,428
- VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading Device Patent Application # 07/974,428
- TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application #07/974,428

Apple, Inc. has infringed, and continues to infringe, on his works, by unauthorized copying of same on multiple media, including, but not limited to, product designs, content on *www.apple.com*, advertisements, product boxes and packaging, user manuals, technical manuals, patent drawings and claims.

We hereby demand, on behalf of our client, that you 1) **immediately cease and desist** distribution of any infringing works and publications, and that you further provide verification in writing within twenty (20) business days of the date of this letter, that such activity has ceased, 2) compensate Thomas S. Ross, and, to that end, within thirty (30) business days, provide all necessary information needed to make an equitable determination, including, but not limited to, inventory, location of profit centers, income generating websites, accounting of all sales and revenues, and any and all other media upon which Thomas S. Ross' works have been copied or affixed to.

We ask that you acknowledge receipt of this letter promptly and that you ask your counsel to contact us within ten (10) business days of the date of this letter so that we may be apprised of your intentions.

Sincerely,


Courtney B. Weisholtz
Attorney at Law
CBW/tr
cc:  Peter M. Moldave, Esq.
     John Fore, Esq.

Page **1** of **1**



*Courtney B. Weisholtz, P.A.*
**Attorney at Law**
P.O. Box 277794
Miramar, Florida  33027
Phone: 954-298-8061
Email: cbwlegal@aol.com

Date:   May 4, 2015

<u>**Via FedEx Return Receipt Requested**</u>

Jeffrey V. Lasker
IP Transactions
 APPLE, INC.
1 Infinite Loop MS 169-31PL
Cupertino, California 95014

Re: Request for information

Dear  Mr. Lasker,

Thank you for your response to my client's Cease and Desist Demand sent to you on or about March 10, 2015. Please find enclosed the following documents:

1.  copies of the following Certificates of Copyright Registration, together with copies of the Copyrighted original works:
    - VAu 1-186-491  Title of Work: Drawing 10.1 The Electronic Reading Device Patent Application #07/974,428
    - VAu 1-186-859  Title of Work: Drawing 10.2 The Electronic Reading Device Patent Application #07/974,428
    - VAu 1-186-860  Title of Work: Drawing 10.3 The Electronic Reading Device Patent Application # 07/974,428
    - VAu 1-186-862  Title of Work: Drawing 10.4 Chart I The Electronic Reading Device Patent Application # 07/974,428
    - TXu 1-919-460 Title of Work: The Electronic Reading Device Patent Application #07/974,428

2.  The objects that are targets for copyright infringement, are:
    - Iphone® product designs
    - Ipads® product designs;
    - Itunes® communication diagrams;
    - Designs and text contained in several of Apple's Patents
    - Two-screen device products

A comparison of our client's copyrighted works, to Apple's products, designs, advertisements, broadcasted images, etc.,  will make the infringement issues self evident.

Page **1** of **2**



Plaintiff's
Exhibit
**B.2**

exhibitsticker.com #496

Courtney Weisholtz, P.A., Attorney At Law, P.O. Box 277794 Miramar, Florida  33027

We ask that you acknowledge receipt of this material promptly, and that you contact us within ten (10) business days of the date of this letter, so that we may be apprised of your intentions.  We remind you that time is of the essence, per original Cease and Desist Letter, demands of which are herein incorporated.

Sincerely,

Courtney B. Weisholtz
Attorney at Law
CBW/tr

*Courtney B. Weisholtz, P.A.*
**Attorney at Law**
P.O. Box 277794
Miramar, Florida 33027
Phone: 954-298-8061
Email: cbwlegal@aol.com

Date:   June 1, 2015                    <u>Via EMAIL and Certified U.S. Mail</u>

Jeffrey V. Lasker
IP Transactions
APPLE, INC.
1 Infinite Loop MS 169-31PL
Cupertino, California 95014

Re: Phone call of 5/20/2015

Dear Mr. Lasker,

It was a pleasure to talk to you on Wednesday, May 20, 2015. During the conversation, you indicated that you were "confused" about my client's claims and demands, so I explain.

The Cease and Desist Letter of March 10, 2015, plainly states that Apple is infringing on five (5) registered original works. The identifying descriptions of the registrations were plainly included. The letter goes on to summarize the way Apple has, and is, infringing and that my client demands just compensation.

In a letter dated May 4, 2015, you requested additional information, to which I responded by sending you a copy of each **Certificate**, along with a copy of each **original work**. I also enumerated some of **Apple's infringing works.**

As indicated above, we then had a phone conversation on May 20th, where you expressed confusion as to copyrightability, similarity and access to my client's original works.

Without litigating those issues in this correspondence, let me offer but the briefest of rebuttals, to provide additional clarity.

As to copyrightability, the Copyright Act of 1986 explicitly included "technical drawings, charts, and writings, as works that are protected. 17 USC §101 *"Pictorial, graphic, and sculptural works" include two-dimensional and three dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans * * *"*

As to the rest of the issues, I will quote from a recent U.S. Supreme Court Case:

Page **1** of **2**



Courtney Weisholtz, P.A., Attorney At Law, P.O. Box 277794 Miramar, Florida  33027

*"Key evidence in the litigation, then, will be the **certificate**, the **original work**, and the **allegedly infringing work**. And the adjudication will often turn on the factfinder's direct comparison of the original and the infringing works, i.e., on the factfinder's "**good eyes and common sense**" in comparing the two works' "**total concept and overall feel**." <u>Petrella v Metro-Goldwyn-Mayer, Inc.</u>, 572 U. S. ___ (2014) quoting Peter F. <u>Gaito Architecture, LLC v. Simone Development Corp.</u>, 602 F. 3d 57, 66 (CA2 2010) (internal quotation marks omitted).*

Apple, Inc., and its worldwide supply chain, affiliates, agents and companies, continue the willful infringements, unabated.  My client is amenable to entertain discussions towards a reasonable out of court settlement.  To this end, please respond in writing, within five (5) calendar days of the date of this letter, to let me know whether you are interested in exploring a compromise, or not.  I remind you that time is of the essence, and that demands of the Cease and Desist letter, have yet to be met, and are herein incorporated.

Sincerely,

Courtney B. Weisholtz
Attorney at Law
CBW/tr

Page 2 of 2



June 9, 2015                          Via Overnight Mail & Email

Courtney B. Weisholtz
Courtney B. Weisholtz, P.A.
PO Box 277794
Miramar, Florida 33027
Email: cbwlegal@aol.com

       Re:    Thomas S. Ross

Dear Courtney,

I write in response to your letters dated May 4, 2015 and June 1, 2015, and to follow up on our phone conversation on May 20, 2015.

Based on our understanding of the matter, Mr. Ross is claiming copyright in certain patent applications. During our conversation on May 20, you were unable to provide any details as to how you contend Apple accessed Mr. Ross's patent applications, other than to say that Apple copied Mr. Ross's "ideas." You also confirmed that Mr. Ross's patent applications were not disseminated or published, other than possibly in connection with filings relating to Mr. Ross's litigation against the U.S. government.

We have investigated Mr. Ross's claims and believe they have no merit. Copyrights do not protect "ideas." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 US 340, 345 (1990). And they do not protect against independent creation. *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 4 (9th Cir. 1933) ("There can be no infringement unless there has been a copying either in whole or in part of the copyrighted work."). A claim for copyright infringement thus requires proof of access and actual copying. *Jason v. Fonda*, 698 F.2d 966 (9th Cir. 1982).

Based on the information you provided, Apple could not possibly have had access to, let alone copied, Mr. Ross' applications. Additionally, based on our review of the materials you provided, we do not believe there is any similarity between Apple's products and Mr. Ross's applications. Any pursuit of claims against Apple in light of these facts would be baseless and objectively unreasonable. *See Fogerty v. Fantasy, Inc.*, 94 F.3d 553 (9th Cir. 1996). We, therefore, do not believe there are any grounds for Apple to cease any activities or provide any compensation to Mr. Ross.

If you would like to discuss this matter further, please feel free to contact me. Absent further information from you, we will consider this matter closed.

Regards,

Jeffrey V. Lasker
Legal Counsel, IP Transactions

Plaintiff's
Exhibit
B.4
exhibitstickers.com #496

Apple Inc.
Jeffrey Lasker
408-862-1377
1 Infinite Loop, MS 169-3IPL
Cupertino, CA  95014-2084

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 16-61471-CV (Judge Williams/Simonton)

THOMAS S. ROSS,           )
           Plaintiff        )
                       )

vs.                       )
                       )

APPLE INC., a California corporation    )
                       )    **JURY TRIAL DEMANDED**

           Defendant       )

---

## SUMMONS

To:    Tim Cook, CEO
       APPLE, INC.
       c/o CT CORPORATION SYSTEM
       818 West Seventh St. STE 930
       Los Angeles, CA  905014

      A lawsuit has been filed against you.

      Within 20 [21] days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, THOMAS S. ROSS, *Pro Se*, whose address is P.O. Box 279381, Miramar, Florida 33027.

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                                 **STEVEN M. LARIMORE**

Date:  AUG - 1 2016 , 2016       *Kim I. Streets* – DEPUTY

                         Clerk of Court        CLERK

(Court Seal)

Plaintiff's
Exhibit

**C**

exhibitindexes.com #196

Civil Action No. 16-61471-CV

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for **APPLE, INC.,** was received by me on ___8-2-2016___ ,2016.

___XX___ I served the summons on CT CORPORATION SYSTEM, 818 West Seventh St. STE 930,

Los Angeles, CA 90017, who is designated by law to accept service of process on behalf of

***APPLE, INC***. a California Corporation, Entity Number C0806592, whose principal place of

business is 1 Infinite Loop, Cupertino, CA 95014, on ___8-2-2016___ ,2016.

8.05/mile x 25 miles.

My fees are $ __14.50__ for travel and $ ___100___ for services, for a total of $ __114.50__.

I declare under penalty of perjury that this information is true.

Date: ___8-2-2016___ , 2016

*Server's signature*

BRANDON A. ROSS
*Printed name and title*

225 N. Rose St. #411 Burbank, CA 91505

*Server's address*

Additional information regarding attempted service, etc:
CT declined to sign receipt instead offered business card
of Vivian Imperial, Sr SUP Operations Intake Coordinator.



Plaintiff's
Exhibit

C

exhibitindexes.com #436

# EXHIBIT D

iPhone 7

# iPhone 7



iPhone 7 Plus in Jet Black

| | |
|---|---|
| **Brand** | Apple Inc. |
| **Manufacturer** | Foxconn[1] (on contract) |
| | Pegatron[1] (on contract) |
| **Slogan** | *This is 7*[2] |
| **Generation** | 10th |
| **Model** | A1660 |
| | (iPhone 7 with Qualcomm modem) |
| | A1661 |
| | (iPhone 7 Plus with Qualcomm modem) |
| | A1778 |
| | (iPhone 7 with Intel modem) |
| | A1784 |

Mini 2

# iPad mini 2

## iPad mini
**with Retina display**



**Top:** New iPad Mini 2 Logo and Original iPad mini 2 Logo
with the name "iPad Mini with Retina Display"
**Bottom:** iPad Mini 2 in Silver

| | |
|---|---|
| **Developer** | Apple Inc. |
| **Manufacturer** | Foxconn |
| **Product family** | iPad Mini |
| **Type** | Tablet computer |
| **Generation** | 2nd |

| | |
|---|---|
| **Release date** | November 12, 2013 |

iPod Touch

# iPod touch



<u>iPod Touch (sixth generation)</u> in Pink

| | |
|---|---|
| **Developer** | <u>Apple Inc.</u> |
| **Manufacturer** | <u>Foxconn</u> |
| **Product family** | <u>iPod</u> |
| **Type** | <u>Media Player</u> |
| **Release date** | **1st gen**: September 5, 2007<br>**2nd gen**: September 9, 2008<br>**3rd gen**: September 9, 2009<br>**4th gen**: September 1, 2010<br>**5th gen**: October 11, 2012<br>**6th gen**: July 15, 2015 |
| **Units sold** | 100 million (as of May 2013)[1] |

| **Operating system** | iOS |
|---|---|
| **System-on-chip** used | **1st gen:** S5L8900<br>**2nd gen:** S5L8720<br>**3rd gen:** S5L8920<br>**4th gen:** Apple A4<br>**5th gen:** Apple A5<br>**6th gen:** Apple A8 |







# EXHIBIT E



**Selected Financial Data**

The information set forth below for the five years ended September 26, 2015, is not necessarily indicative of results of future operations, and should be read in conjunction with Part II, Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" and the consolidated financial statements and related notes thereto included in Part II, Item 8 of this Form 10-K to fully understand factors that may affect the comparability of the information presented below (in millions, except number of shares, which are reflected in thousands, and per share amounts).

| | 2015 | 2014 | 2013 | 2012 | 2011 |
|---|---|---|---|---|---|
| Net sales | $ 233,715 | $ 182,795 | $ 170,910 | $ 156,508 | $ 108,249 |
| Net income | $ 53,394 | $ 39,510 | $ 37,037 | $ 41,733 | $ 25,922 |
| Earnings per share: | | | | | |
| Basic | $ 9.28 | $ 6.49 | $ 5.72 | $ 6.38 | $ 4.01 |
| Diluted | $ 9.22 | $ 6.45 | $ 5.68 | $ 6.31 | $ 3.95 |
| Cash dividends declared per share | $ 1.98 | $ 1.82 | $ 1.64 | $ 0.38 | $ 0 |
| Shares used in computing earnings per share: | | | | | |
| Basic | 5,753,421 | 6,085,572 | 6,477,320 | 6,543,726 | 6,469,806 |
| Diluted | 5,793,069 | 6,122,663 | 6,521,634 | 6,617,483 | 6,556,514 |
| Total cash, cash equivalents and marketable securities | $ 205,666 | $ 155,239 | $ 146,761 | $ 121,251 | $ 81,570 |
| Total assets | $ 290,479 | $ 231,839 | $ 207,000 | $ 176,064 | $ 116,371 |
| Commercial paper | $ 8,499 | $ 6,308 | $ 0 | $ 0 | $ 0 |
| Total term debt [2] | $ 55,963 | $ 28,987 | $ 16,960 | $ 0 | $ 0 |
| Other long-term obligations [1] | $ 33,427 | $ 24,826 | $ 20,208 | $ 16,664 | $ 10,100 |
| Total liabilities | $ 171,124 | $ 120,292 | $ 83,451 | $ 57,854 | $ 39,756 |
| Total shareholders' equity | $ 119,355 | $ 111,547 | $ 123,549 | $ 118,210 | $ 76,615 |

(1)   Other long-term obligations exclude non-current deferred revenue.

(2)   Includes current and long-term portion of term debt.

Apple Inc. | 2015 Form 10-K | 22

Financial Statements for Apple Inc. - Google Finance

Page 1 of 3



**Get Google Chrome**
Try a fast, secure browser with updates built in

NO THANKS     YES

nasdaq:aapl

Sign in

More results

Finance

**Apple Inc.**   (NASDAQ:AAPL)

Add to portfolio

Hide charts

Company
Summary
News
Option chain
Related companies
Historical prices
Financials

Markets
News
Portfolios
Stock screener
Google Domestic Trends

Recent Quotes (30 days)

You have no recent
quotes

**Income Statement** | Balance Sheet | Cash Flow
View: **Quarterly Data** | Annual Data

| In Millions of USD (except for per share items) | 13 weeks ending 2016-09-24 | 13 weeks ending 2016-06-25 | 13 weeks ending 2016-03-26 | 13 weeks ending 2015-12-26 | 13 weeks ending 2015-09-26 |
|---|---|---|---|---|---|
| Revenue | 46,852.00 | 42,358.00 | 50,557.00 | 75,872.00 | 51,501.00 |
| Other Revenue, Total | - | - | - | - | - |
| Total Revenue | 46,852.00 | 42,358.00 | 50,557.00 | 75,872.00 | 51,501.00 |
| Cost of Revenue, Total | 29,039.00 | 26,252.00 | 30,636.00 | 45,449.00 | 30,953.00 |
| Gross Profit | 17,813.00 | 16,106.00 | 19,921.00 | 30,423.00 | 20,548.00 |
| Selling/General/Admin. Expenses, Total | 3,482.00 | 3,441.00 | 3,423.00 | 3,848.00 | 3,705.00 |
| Research & Development | 2,570.00 | 2,560.00 | 2,511.00 | 2,404.00 | 2,220.00 |
| Depreciation/Amortization | - | - | - | - | - |
| Interest Expense(Income) - Net Operating | - | - | - | - | - |
| Unusual Expense (Income) | - | - | - | - | - |

https://www.google.com/finance?fstype=ii&q=nasdaq:aapl

1/23/2017

Financial Statements for Apple Inc. - Google Finance

| In Millions of USD (except for per share items) | 13 weeks ending 2016-09-24 | 13 weeks ending 2016-06-25 | 13 weeks ending 2016-03-26 | 13 weeks ending 2015-12-26 | 13 weeks ending 2015-09-26 |
|---|---|---|---|---|---|
| Other Operating Expenses, Total | - | - | - | - | - |
| Total Operating Expense | 35,091.00 | 32,253.00 | 36,570.00 | 51,701.00 | 36,878.00 |
| Operating Income | 11,761.00 | 10,105.00 | 13,987.00 | 24,171.00 | 14,623.00 |
| Interest Income(Expense), Net Non-Operating | - | - | - | - | - |
| Gain (Loss) on Sale of Assets | - | - | - | - | - |
| Other, Net | -159.00 | -263.00 | -510.00 | -263.00 | -149.00 |
| Income Before Tax | 12,188.00 | 10,469.00 | 14,142.00 | 24,573.00 | 15,062.00 |
| Income After Tax | 9,014.00 | 7,796.00 | 10,516.00 | 18,361.00 | 11,124.00 |
| Minority Interest | - | - | - | - | - |
| Equity In Affiliates | - | - | - | - | - |
| Net Income Before Extra. Items | 9,014.00 | 7,796.00 | 10,516.00 | 18,361.00 | 11,124.00 |
| Accounting Change | - | - | - | - | - |
| Discontinued Operations | - | - | - | - | - |
| Extraordinary Item | - | - | - | - | - |
| Net Income | 9,014.00 | 7,796.00 | 10,516.00 | 18,361.00 | 11,124.00 |
| Preferred Dividends | - | - | - | - | - |
| Income Available to Common Excl. Extra Items | 9,014.00 | 7,796.00 | 10,516.00 | 18,361.00 | 11,124.00 |
| Income Available to Common Incl. Extra Items | 9,014.00 | 7,796.00 | 10,516.00 | 18,361.00 | 11,124.00 |
| Basic Weighted Average Shares | - | - | - | - | - |
| Basic EPS Excluding Extraordinary Items | - | - | - | - | - |
| Basic EPS Including Extraordinary Items | - | - | - | - | - |
| Dilution Adjustment | - | - | - | - | - |
| Diluted Weighted Average Shares | 5,393.33 | 5,472.78 | 5,540.89 | 5,594.13 | 5,682.52 |
| Diluted EPS Excluding Extraordinary Items | 1.67 | 1.42 | 1.90 | 3.28 | 1.96 |
| Diluted EPS Including Extraordinary Items | - | - | - | - | - |
| Dividends per Share - Common Stock Primary Issue | 0.57 | 0.57 | 0.52 | 0.52 | 0.52 |
| Gross Dividends - Common Stock | - | - | - | - | - |
| Net Income after Stock Based Comp. Expense | - | - | - | - | - |
| Basic EPS after Stock Based Comp. Expense | - | - | - | - | - |
| Diluted EPS after Stock Based Comp. Expense | - | - | - | - | - |
| Depreciation, Supplemental | - | - | - | - | - |
| Total Special Items | - | - | - | - | - |

https://www.google.com/finance?fstype=ii&q=nasdaq:aapl

Financial Statements for Apple Inc. - Google Finance

Page 3 of 3

| In Millions of USD (except for per share items) | 13 weeks ending 2016-09-24 | 13 weeks ending 2016-06-25 | 13 weeks ending 2016-03-26 | 13 weeks ending 2015-12-26 | 13 weeks ending 2015-09-26 |
|---|---|---|---|---|---|
| Normalized Income Before Taxes | - | - | - | - | - |
| Effect of Special Items on Income Taxes | - | - | - | - | - |
| Income Taxes Ex. Impact of Special Items | - | - | - | - | - |
| Normalized Income After Taxes | - | - | - | - | - |
| Normalized Income Avail to Common | - | - | - | - | - |
| Basic Normalized EPS | - | - | - | - | - |
| Diluted Normalized EPS | 1.67 | 1.42 | 1.90 | 3.28 | 1.96 |

Google Finance Beta available in: Hong Kong - Canada - U.S. - China - U.K.

Information is provided "as is" and solely for informational purposes, not for trading purposes or advice, and may be delayed.
To see all exchange delays, please see disclaimer.

©2017 Google - Google Home - Blog - Help - Report a Problem - Privacy Policy - Terms of Service