# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 16-CV-61471-KMW

Thomas S. Ross,

        Plaintiff,

v.

Apple Inc.,

        Defendant.

_____

## APPLE INC.'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Defendant Apple Inc. ("Apple") opposes Plaintiff Thomas Ross's Motion for Leave to

File Amended Complaint (D.E. 36).  The Court properly dismissed Mr. Ross's original

Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because

Mr. Ross failed to allege, among other things, facts identifying: (a) when and how Apple copied

any original constituent elements of Mr. Ross's copyrighted works; (b) the constituent *expressive*

elements of his works; and (c) Apple's access to his works or, in the alternative, that those works

were so strikingly similar to Mr. Ross's works as to preclude explanations other than copying.

*See* Order, D.E. 35.

Mr. Ross's proposed Amended Complaint does not cure any of those deficiencies.[1]  Like

his original effort, the proposed Amended Complaint is replete with threadbare allegations and

---

[1]  The Court's Order required Mr. Ross to seek leave before seeking to amend.  Mr. Ross filed a motion (D.E. 36), but it does not state any grounds on which the Court should allow amendment.  Instead, he simply attached a proposed Amended Complaint.  Because Mr. Ross has not first been granted leave to amend, Apple's Response in Opposition is directed to his motion for leave and focuses on the futility of *any* amendment, including without limitation, his proposed Amended Complaint.  However, because Mr. Ross already has submitted two complaints to this Court, any further attempt at amendment should be denied.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend can be denied when there has been "repeated failure to cure deficiencies by amendments").

speculative conclusions, but it does not allege specific facts that add up to a plausible claim that Apple copied any original and expressive content owned by Mr. Ross.

Mr. Ross's Motion and any further requests to amend should be denied as futile because, like the original Complaint, the proposed Amended Complaint fails to allege specific facts plausibly supporting his claim for copyright infringement, and there are no set of facts he can credibly allege to support that or any other claim.[2]  Although Mr. Ross has removed many of his more inappropriate and impertinent allegations, he did not replace them with any non-speculative allegations that Apple had access to or copied Mr. Ross's copyrighted work.  Without any credible allegation of access, Mr. Ross must show "striking similarity" between his work and Apple's devices.  But they are not even substantially similar, let alone strikingly so.  Moreover, it is not logically possible that myriad Apple devices that do not look strikingly similar to each other are *all* strikingly similar to the single registered pictorial work asserted in Mr. Ross's Amended Complaint.

Further, Mr. Ross's proposed amendments serve mainly to emphasize that while he may have a valid copyright in some undefined expressive elements of his drawing of an Electronic Reading Device ("ERD") with certain physical features, that is not what he is trying to enforce. Rather, he believes that by "clothing" his idea for such a device in a "picture," he has thereby laid claim to the *idea* itself.  Proposed Am. Compl. ¶¶ 1, 3.  His proposed Amended Complaint fails once again to identify any specific copyrightable expression that he claims Apple infringed; instead, he just points to a portion of his drawing and expects the Court to figure out what he is trying to protect.  Worse, as explained below, the content of both his original Complaint and the

---

[2]  Mr. Ross's claims for misappropriation of intellectual property and unjust enrichment were also dismissed.  His proposed Amended Complaint does not assert them and is limited to a single claim for copyright infringement.  His proposed Amended Complaint also appears to assert infringement of only a single drawing.  Proposed Am. Compl. ¶ 1.

proposed Amended Complaint verify that he is not suing to enforce copyrightable expression, but rather non-copyrightable ideas and utilitarian designs. Mr. Ross's continuing confusion regarding the scope of protection provided by copyright law, as opposed to patent law, is not good cause for allowing an amendment, particularly where the nature of that confusion confirms the futility of the proposed amendment.

## LEGAL STANDARD

In exercising its discretion under Federal Rule of Civil Procedure 15(a)(2), a court may properly deny leave to amend when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999). "Futility justifies the denial of leave to amend where the complaint, as amended, would still be subject to dismissal." *Patel v. Georgia Dep't BHDD*, 485 Fed. App'x 982, 982 (11th Cir. 2012) (denying motion for leave when plaintiff failed to plead sufficient factual allegations in original and proposed amended complaints). That is the case here. Mr. Ross must "plead sufficient facts to state a claim that is 'plausible on its face'" to survive dismissal under Rule 12(b)(6). Order at 5 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Mr. Ross's complaint "must provide 'more than labels and conclusions'" and "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007) and *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007)). His original Complaint failed under *Iqbal* and *Twombly*. His proposed Amended Complaint does as well, and there are no facts he can credibly allege that would add up to a plausible claim.

3

## ARGUMENT

### A.    Amendment is Futile Because Mr. Ross Still Is Attempting to Use Copyright Law to Protect an Idea.

Apple does not dispute that Mr. Ross has alleged that he owns copyrights in certain drawings from his abandoned patent applications.  The problem, however, is that Mr. Ross continues to presume that he can extend his rights in whatever expressive elements those drawings may contain—which he does not identify, at least in any way that distinguishes expressive elements from everything else—to the *ideas* that the drawings depict.  His proposed Amended Complaint emphasizes once again that Mr. Ross is alleging that because he once *drew* one such device, copyright precludes Apple from *conceiving and making* a different one.  But copyright does not protect ideas, and it does not protect even similar expression (though that is not at issue here) unless it was copied.  Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.01 ("The rights of a copyright owner are not infringed if a subsequent work, although substantially similar (or even identical), has been independently created without reference to the prior work.").  It protects only against copying and only with respect to copyrightable elements—and ideas are not copyrightable.[3]  Mr. Ross's misunderstanding regarding the scope of copyright law was one reason the Court dismissed his original Complaint. Order at 10 ("The generalized nature of Ross's allegations is also in significant tension with the established principle that copyright protects expressions of ideas, not the ideas themselves.").  That misunderstanding is not and cannot be cured by the proposed Amended Complaint because Mr. Ross's claimed injury is inconsistent with that fundamental restriction on copyright law's scope.

---

[3]  Indeed, absent copying, anyone can make a work that is *identical in all respects* to a copyrighted work, as long as they were independently created.  *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d. Cir. 1936) (Judge Learned Hand's famous example of a writer composing from scratch a work identical to Keats's *Ode on a Grecian Urn*).

It is an "established principle that copyright protects specific expressions of ideas, not ideas themselves."  Order at 10 (citing *Herzog v. Castle Rock Ent'mt*, 193 F.3d 1241, 1248 (11th Cir. 1999)).  Mr. Ross's proposed Amended Complaint demonstrates, however, that he still believes he is entitled to own the *idea* of an electronic reading device by virtue of copyrighting a *drawing* of such a device.  He alleges: "Ross is the sole and exclusive owner of the intellectual property identified herein as the Electronic Reading Device (ERD) and is the sole and exclusive owner and copyright holder of original work of authorship, *the expression of which is that of the ERD*."  Proposed Am. Compl. ¶ 1 (emphasis added).  Notably, Mr. Ross considers the *ERD* to be his copyrighted work, not the specific expressive drawing that instantiates it.  This becomes even more clear when he alleges that he "clothed the idea in form by means of a picture," which "function[s] as a 'birth certificate'" and "dressing" for his idea.  *Id.* ¶ 3.  He further alleges that the iPhone "*had substantially all of the <u>functionality</u>* described in Ross's 428 patent application of 1992, creating a virtual identity that gave the 2007 iPhone, the identical look and feel of the 491 drawing."  *Id.* ¶ 20 (emphasis added).  In other words, whatever similarity exists is because the devices allegedly have the same *functionality*.  All of this confirms that Mr. Ross sees his ERD and its functions as the intellectual property at issue, and his quarrel is that Apple devices have those same functions or that the devices were designed to accommodate similar functions.  But features that are driven by functional considerations are not copyrightable.  *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) ("copyright protection does not extend to utilitarian aspects of a work") (citing *Mazer v. Stein*, 347 U.S. 201, 218 (1954)).

Although Mr. Ross asserts in conclusory terms that the elements he seeks to protect are "ornamental and non-functional," *id.* ¶ 16, his specific factual allegations tell a different story. For example, he asserts that his drawing depicts "a display screen placed on the front surface,"

"sides that accommodate positioning of functional elements," as well as dimensions that allow portability. *Id.* ¶¶ 23, 33. Those elements plainly are functional, because they have utilitarian purposes which are self-evident and in some instances expressly identified by Mr. Ross. For example, a "display screen placed on the front surface" is hardly a non-functional design choice, as where else would such a display be placed? "Sides that accommodate positioning of functional elements" obviously means that the device must have a certain depth if it is to accommodate buttons, switches, etc. Dimensions that allow portability are inherent in a device meant to be carried by a person.

Mr. Ross does not attempt to separate expressive elements from functional elements, much less identify any expressive elements that originated with him and that are not inherent in the idea of a flat, rectangular, portable electronic device. Moreover, the fundamental point that confuses Mr. Ross is that even if he had invented the idea of a flat, rectangular, portable device, he cannot lay claim to that idea by "clothing" it in a drawing that he then uses to claim protection through copyright law. It is only that drawing itself that is a protected copyright, and not the idea of a flat, rectangular, portable device that it portrays. *See* 13-CLRS27 Nimmer on Copyright II (2015) ("[C]opyright in a drawing or picture of a nonartistic object of utility does not preclude others from making the three-dimensional object portrayed in the drawing or picture."). Because copyright law does not protect ideas, and ideas are what Mr. Ross seeks to protect, permitting Mr. Ross to amend his Complaint is futile.

> ### B.   Amendment is Futile Because the Proposed Amended Complaint Does Not Contain Sufficient Factual Allegations to State a Copyright Claim Against Apple.

Granting Mr. Ross's motion also would be futile because even if he were trying to enforce protectable expressive elements as opposed to ideas, his proposed Amended Complaint

does not allege sufficient facts to satisfy the elements of a copyright infringement claim.  While

the proposed Amended Complaint may supply *new* speculative and conclusory assertions, they

remain speculative and conclusory—and are thus insufficient as a matter of law.

### 1.    Mr. Ross Fails to Identify the Infringed or Infringing Expression.

The Court's Order required Mr. Ross to "identify the particular expression to which he

objects and explain in detail how that expression infringes on his rights."  Order at 10; *see also*

*Mahnke v. Munchkin Prod., Inc.*, No. 99CIV.4684(LTS)(THK), 2001 WL 637378, at *6

(S.D.N.Y. June 7, 2001) (dismissing copyright infringement claims for failure to identify

infringing work with particularity and the time period in which the infringement occurred).  He

has not done so.

First, with respect to identifying "the particular expression to which he objects," Mr. Ross

seeks to avoid alleging anything specific about a *particular* Apple device by instead providing a

lengthy list of devices and suggesting, implicitly and implausibly, that they *all* infringe the same

thing in the same way.  This is insufficient under *Twombly* because it does not provide fair notice

of the claims levied against Apple.  *See Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. &*

*Consulting Inc.*, 299 Fed. App'x 509, 512 (6th Cir. 2008) (*Twombly* requires showing "plausible

grounds" for copyright infringement; plaintiff could not meet this burden without alleging an

infringing work).  Mr. Ross attempts to avoid both the Court's direction and his post-*Twombly*

pleading burden not by enumerating each particular infringing work, but rather by providing a

laundry list of all Apple portable media devices produced after a certain date and suggesting that

*all* of those different-looking versions of different-looking products *all* infringe a single

copyrighted drawing.  Mr. Ross fails to describe most of them and fails to allege how any of

them actually infringes the copyright-protected elements of his drawing.  And his only

explanation for providing "only the description of some of the latest products" instead of a side-

by-side comparison of infringed and infringing expressive elements covering the full scope of his allegations is "[t]o avoid a tsunami of repetitive descriptions."  Proposed Am. Compl. ¶ 37.

He also attempts to obscure obvious differences in the Apple products by describing them in abstract, boiler-plate fashion, often including features that he admits are functional elements. But similarity between abstract or functional elements does not establish similarity probative of copyright infringement.  *See, e.g.*, *Castorina v. Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 112 (E.D.N.Y. 2011) (rejecting plaintiff's allegations of similarities between functional elements as proof of copyright infringement); *Whitehead v. Columbia Pictures Indus., Inc.*, No. CIV. A. 98-2938, 2001 WL 1218908, at *7 (D.D.C. June 14, 2001) (rejecting plaintiff's allegations of similarities between abstract plot features as proof of copyright infringement).  For example, Mr. Ross describes the design of the iPhone 7 and the iPad Mini 4, two very different products with different appearances, functions, and features in almost exactly the same way:

> The iPhone 7 looks identical to the 2014 iPhone 6 and the 2015 iPhone 6S, that consists of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.
>
> Proposed Am. Compl. ¶ 38.

> The iPad Mini 4 was the first major redesign of the iPad Mini line … but it also features the design elements that makes it strikingly similar Ross's 491 design, consisting of a rectangular shape with four evenly rounded corners, a flat surface covering the front of the structure, a display screen placed on the front surface with a border that surrounds it, and a proportionally spaced border area on top and bottom with a narrower border at the sides, sides that accommodate positioning of functional elements so as not to detract from the overall aesthetic balance of the design and dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable.
>
> *Id.* ¶ 42.

But, an iPhone and an iPad mini simply do not look the same:

8

iPhone 7

iPad Mini 4




If they do not look the same as each other, then it is difficult to understand how they both could infringe the same visual aspects of Mr. Ross's work.

Second, Mr. Ross also fails to specify the expressive elements he is trying to protect and fails to distinguish expression from function.  As stated above, he concedes that the similarity he alleges in the "look and feel" of the 2007 iPhone and his drawing is because his ERD and Apple's 2007 iPhone had, according to Mr. Ross, near identical functionality.[4]  He also fails to allege that there was anything original in any non-functional aspects of his ERD design.  Instead, he offers bare conclusions that unoriginal features of his drawing, such as a "rectangular structure," are similar to features of Apple's products.  *Id*. ¶¶ 23, 33.  In short, he never identifies particular elements of his drawing that are expressive and non-functional, and he does not compare those elements to expressive and non-functional elements of Apple's devices.  In fact, instead of describing the expressive elements of his drawing and then comparing those to Apple's products, he tends to work backwards, first describing aspects of Apple's products (at a high level of abstraction, *e.g.* flat, round corners, screen on the front, etc.), then characterizing his drawing as having similar broad features but ignoring all the elements his drawing contains

---

[4] The iPhone "*had substantially all of the <u>functionality</u>* described in Ross's 428 patent application of 1992, creating a virtual identity *<u>that gave the 2007 iPhone, the identical look and feel</u>* of the 491 drawing."  *Id.* ¶ 20 (emphasis added).

that the Apple devices do not, such as a keyboard and multiple buttons and logos.

Mr. Ross alleges in passing that in addition to infringement by various devices, Apple advertising and packaging infringe.  But, his allegations on that score are even less detailed.  He suggests that Apple's "packaging, advertising, broadcast media, [and] print media" infringe, *id*. ¶ 32, and he appends certain exhibits depicting packaging and what appear to be screenshots from web pages.  But he does not include a single, specific factual allegation matching elements of any such packaging or advertising media against his drawing.

### 2.       Mr. Ross Fails to Allege When and How Apple Copied.

The Court's Order emphasized that Mr. Ross's original Complaint failed to state a claim because he did not "allege any facts showing when and how Apple copied constituent elements of Ross's original works."  Order at 7.  That has not changed.  And because he cannot plead facts showing access, let alone copying, his only way to state a viable claim is to show "striking similarity."  He cannot do so and thus his claim is not viable and amendment would be futile.

### a.       Mr. Ross Fails to Allege When Apple Copied.

Mr. Ross does not provide a single fact supporting a plausible allegation of when Apple's alleged copying took place.  Instead, he simply lists the release dates of various products without alleging when or how those release dates correlate to any alleged access to his drawings.  *See* Proposed Am. Compl. ¶ 35.  The closest he comes to any allegation regarding timing is to speculate that since his drawing has unoriginal features like a "rectangular structure," and the first iPhone sold in 2007 had some corresponding structure, Apple must have copied beginning at that time.  *Id*. ¶¶ 27–28.  This simply is not enough.

### b.       Mr. Ross Fails to Plead Access or Opportunity.

Mr. Ross also fails to plead facts showing that Apple had access to his drawing, or even a reasonable opportunity of such access.  Access may not be inferred based on "mere speculation

or conjecture." *Herzog*, 193 F.3d at 1250; Order at 8.  Rather, any such inference would require, at a minimum, that Apple had at least a "reasonable opportunity" to access Mr. Ross's drawing. *Herzog*, 193 F.3d at 1250; Order at 8.  Reasonable opportunity, however, "does not encompass any bare possibility in the sense that anything is possible." *Herzog*, 193 F.3d at 1250 (citing Nimmer on Copyright § 13.02[A] at 13–19).  In *Herzog*, the plaintiff attempted to establish reasonable opportunity by arguing that she had given a copy of her work to certain individuals who could have given her work to the defendant while both were present in the same city at the same time. *Herzog*, 193 F.3d at 1249–50.  The court held that this did not create a reasonable opportunity of access, as the "mere fact that Ms. Herzog's screenplay was physically in the same city in which Mr. Sayles visited did not give him an opportunity to view the manuscript so as to constitute access, notwithstanding the bare physical possibility of such a view." *Id.* at 1250.

Mr. Ross's allegations are even more speculative than those in *Herzog*.  In his original Complaint, Mr. Ross concluded that Apple "engaged in systematic searching for other people's ideas." Compl. ¶ 29.  The Court rejected the notion that this plausibly alleged that Apple actually had access to Mr. Ross's materials. Order at 7.  The same is true of Mr. Ross's proposed Amended Complaint—he alleges essentially the same facts, differently labeled.  For example, gone are the allegations that Apple "dumpster dives" to steal ideas, but Mr. Ross replaces those inappropriate and impertinent allegations with something equally untenable, namely that after he submitted a "substitution" patent application in 1999 containing his drawings, Apple used "powerful data collection and mining tools . . . that made it possible for Apple to search fast and in a wide universe of data." Proposed Am. Compl. ¶ 27.  Without providing a single detail about these powerful but unidentified data mining tools, he asks this Court to infer that Apple must have discovered his drawing because Apple is a "persistent

researcher." *Id.*

Mr. Ross asserts that the submission of his 1999 patent application was Apple's "opportunity" to discover his drawings, but he does not allege whether it was published by the Patent and Trademark Office, whether applications were easily searchable, or what the "powerful … tools" were that supposedly allowed Apple to discover it.  Not only do these allegations not add up to a plausible inference of access, they are highly *implausible* because they are *contrary* to the actual facts regarding the extent to which patent applications were searchable and accessible.  Patent applications submitted in 1999 were not published and, in fact, the USPTO was usually required to keep them *secret*.  37 C.F.R. § 1.14 (1999); Exhibit A.[5]  The PTO began publishing patent applications for the first time when 37 C.F.R. § 1.211 was enacted, which required publication of applications filed on or after *Nov. 29, 2000*.  *See* Changes to Implement Eighteen-Month Publication of Patent Applications, 65 Fed. Reg. 57,024 (Sept. 20, 2000); Exhibit B.

Mr. Ross's allegation that Apple could have used its skills as a "persistent researcher" to discover an unpublished patent application is not only insufficient to state a plausible claim, given the inconsistency of that allegation with the USPTO's then-current regulations, it is highly *implausible,* rising not even to the level of a bare possibility.  Further, even if patent applications had been published and were searchable, absent some evidence that Apple actually did do such a search, the situation is similar to the pure speculation rejected by the *Herzog* court.  Here the degree of speculation and implausibility is even higher: Apple would have had to overcome and violate USPTO regulations, use "powerful tools" to find Mr. Ross's application, affirmatively discover Mr. Ross's drawing in order to copy it, and do so despite the lack of any allegation that

---

[5] Apple respectfully requests that the Court take judicial notice of the federal regulations attached hereto as Exhibits A and B.  *See* Apple Inc.'s Request for Judicial Notice in Support of Opp'n to Pl.'s Mot. for Leave to File Am. Compl., Feb. 6, 2017.

Apple had any reason to look for the application or even knew such a drawing might exist. Mr. Ross's allegation does not meet *Twombly*'s requirement that allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**c.**      **Mr. Ross Fails to Plead Striking Similarity.**

Absent allegations of direct copying that include plausible allegations of access, Mr. Ross's claim can survive only if he plausibly alleges that his drawing and Apple's products are so "strikingly similar" that such access can be presumed.  Order at 9 (citing *Herzog*, 193 F.3d at 1248).  Mr. Ross's drawing is not even substantially similar to Apple's devices and, as depicted and explained more fully below, there are numerous points of *dissimilarity*.  But given that Mr. Ross has no proof at all of copying or even access, he must meet the much higher "striking similarity" standard.  "Striking similarity exists where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are . . . precluded."  Order at 9 (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)).  In assessing "striking similarity" the level and granularity of detail are critical.  "[T]here is no 'striking similarity' even between two *identical* works so as to warrant an inference of copying to the extent that, albeit copyrightable, they are trite or commonplace; or if functional considerations can account for the identity."  Nimmer on Copyright § 13.02 at 4-13.  *See also Watt v. Butler*, 457 Fed. App'x 856, 861–62 (11th Cir. 2012) ("A plaintiff claiming striking similarity must present evidence that the similarities between the two works are unique or complex.").

Indeed, "[l]ists of similarities between two works are inherently subjective and unreliable, particularly where the list contains random similarities, as many such similarities can be found in very dissimilar works."  *Singleton v. Dean*, 611 Fed. App'x 671, 672 (11th Cir. 2015).  Here, Mr. Ross uses such a list of similarities in two misleading ways.  First, he

13

characterizes Apple's devices at a high level of abstraction and then asserts that his drawing depicts those highly abstract features.  Second, he simply ignores features of his drawing that are highly *dissimilar* to Apple's designs.

"Striking similarity" cannot be established where the similarities are driven by functional considerations.  *See* Nimmer § 13.02 at 4-13.  However, as noted above, Mr. Ross concedes that the alleged similarity between his ERD and Apple's iPhone resulted from similar functionality. Further, when describing the content of both the infringed and infringing works, Mr. Ross does so not in terms of their expressive aesthetics, but rather in terms of their functional purpose.  His description of Apple's products includes visual aspects plainly driven by functional considerations such as "sides that accommodate positioning of functional elements" and "dimensions within a range that is consistent with the ability to be hand-held or small enough to be portable."  *Compare* Proposed Am. Compl. ¶ 23 (describing Mr. Ross's drawing) *with id.* ¶¶ 33, 38–46 (describing certain Apple products).   Although Mr. Ross asserts in conclusory fashion that the elements he seeks to protect are "ornamental and non-functional," *id.* ¶ 16, his own descriptions of alleged similarities—like portable dimensions and sides designed to accommodate functional elements—are inconsistent with that characterization.

Mr. Ross's second strategy is to create similarity where there is none by reading all *dissimilarities* between his drawing and Apple's products out of his comparisons.  He simply ignores multiple features of his alleged ERD invention that are different from the Apple devices. But those differences are apparent.  In Figure 1, Mr. Ross juxtaposes his drawing next to a purported "Apple ® 2007" product.  He admits that the purported Apple product does not have a physical keyboard, while the device in his drawing *does* have a physical keyboard consisting of

numerals and an enter key.[6] *Id.* ¶ 31.



Figure 1, Proposed Am. Compl. ¶ 30.

The device featured in his drawing also has, among other features dissimilar to any of the

accused Apple designs, (1) a textual logo in the front top left corner; (2) forward and backward

keys shaped like arrows on the front bottom left and right corners; and (3) functional buttons on

the front bottom center for "screen clear," "user code store," "screen light on off" and "power on

off."  *See id.*, Ex. A.  These features are either very different on the Apple devices or absent

altogether.

Mr. Ross further undermines his claim of "striking similarity" by accusing various Apple

product lines of infringing the same drawing, even though there are substantial differences

among versions of those devices and, moreover, across the divergent product lines.  Differences

---

[6] In fact, the Apple devices' keyboards are "virtual" and are not visible at all unless and until the device is powered up and certain application functions are used. This again illustrates the core problem with Mr. Ross's efforts to read a two-dimensional drawing on three-dimensional devices and, in this case, devices whose visible features change depending on whether they are powered on or off and on the applications that are running on them at any particular time.  In addition to the futility of trying to compare his device to unidentified infringing works, his keyboard comparison illustrates that the Court would also have to compare his static drawing to various Apple devices in various states of use or display.  Thus, Mr. Ross's own claims demonstrate that he has not identified and cannot identify any defined Apple expression to compare against his claimed copyrighted work.  Because Mr. Ross essentially is trying to protect an idea and functional features instead of expression, this is a fatal defect that no amendment can fix.  *Herzog*, 193 F.3d at 1248 ("copyright protects specific expressions of ideas, not ideas themselves").

between Apple product lines are apparent from any comparative sampling of the accused products.

iPhone 6S                    iPad Pro                    iPod Touch, 1st Generation



The iPhone 5C, depicted below, came in five different colors and was 4.9 inches tall, 2.33 inches wide, and 0.35 inches thick.  In contrast, the original iPod Touch released in 2007 came only in silver and was considerably shorter, at 4.3 inches tall, 2.4 inches wide, and 0.31 inches thick.

iPhone 5C



iPod Touch, 1st Generation



The same holds true for differences between product generations.  For example, substantial

differences are apparent when comparing a 2007 iPhone to its 2016 successor:



The original iPhone did not come in a variety of colors, and featured only a silver body with a

black band at the bottom.  It was 4.5 inches tall by 2.4 inches wide, and had a depth of 2.4

inches.  In contrast, the iPhone 7 Plus released in 2016 comes in five different colors.  It is 6.23

inches tall, 3.07 inches wide, and 0.29 inches deep.

If such variation exists between Apple product lines and within product generations, it

cannot follow that *all* Apple iPhone, iPad, and iPod products released since 2007 are strikingly

similar to Mr. Ross's single drawing.  It simply is not possible that devices that do not look strikingly similar to *each other* are *all* strikingly similar to some third thing.  If A and B do not look like each other, then how can they *both* look like C with respect to the same protected look?  In more concrete terms, if an iPhone 4 does not look like an iPad Air 2 such that their protected visual expression is different, then how can those two different forms of expression *both* look strikingly similar to the same allegedly protected expression of a "ERD" drawing, whatever that unidentified expression may be?

iPhone (2007)                                                                                           iPad Pro (2016)




They cannot, but Mr. Ross asks the Court to accept that they can while including admissions in his proposed Amended Complaint that are not compatible with that proposition.

In sum, the similarity that Mr. Ross posits is achieved only through a combination of (a) an inappropriately high-level of abstract descriptions; (b) failing to distinguish between functional and expressive elements; and (c) ignoring multiple differences between and among his drawing and Apple's devices.

### C.    Amendment is Futile Because Mr. Ross's Copyright Claim is Time-Barred.

Amendment is also futile because Mr. Ross's copyright claim is barred by the applicable three-year limitations period.  7 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969–70 (2014).  The three-year copyright statute of limitations accrues when a

plaintiff learned, or should have learned through reasonable diligence, of the alleged

infringement.  *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F.

Supp. 2d 1340, 1354–55 (S.D. Fla. 2014).  Mr. Ross suggested in his original Complaint and

here that he discovered Apple's original alleged infringement in 2007, when the iPhone was

originally released.  *See* Compl. ¶¶ 34–35; Proposed Am. Compl. ¶ 27.  Through reasonable

diligence Mr. Ross would have discovered each alleged infringement at the time any Apple

product was released.  Most of the allegedly infringing devices Mr. Ross lists were released *and*

*discontinued* more than three years ago.  *See* Proposed Am. Compl. ¶ 35.  Therefore, Mr. Ross is

actually alleging the opposite of a continuing, unbroken chain of similar infringing acts.  Other

than his unsupported speculation that Apple "kept on copying" his drawing in every model of the

iPhone, iPod Touch, and iPad released since 2007, he does not allege any specific, continuing

acts of infringement that might constitute a "series of discrete infringing acts" within the last

three years that would prevent the operation of Section 507(b).[7]  *Petrella*, 134 S. Ct. at 1970.  It

would be futile to permit Mr. Ross to amend his complaint to assert time-barred copyright claims

against Apple.  This Court need not do so.

## CONCLUSION

Mr. Ross's proposed Amended Complaint, like his original Complaint, relies on

conjecture and conclusion, not specific factual allegations.  He cannot state a claim for copyright

infringement, and any amendment would be futile.  For these reasons, the Court should exercise

---

[7] Even if Mr. Ross were to argue that the alleged infringement of discontinued products somehow continued through
the release of new allegedly infringing products, Mr. Ross's copyright infringement claim still would be time-
barred.  Courts do not apply the doctrine of continuing infringement when the allegedly infringing products are
separate works.  *Kregos v. Associates Press*, 3 F.3d 656, 662 (2d Cir. 1993) (different publications were separate
works, continuing-infringement doctrine did not apply, and statute of limitations had run as to earlier publications);
*RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 19 n.1 (D. Conn. 2009), aff'd 410 Fed. App'x 362
(2d Cir. 2010) (same).  Here, Apple's products are certainly separate works—as discussed above, there are clear
differences between product lines and even between product generations.  Therefore, Mr. Ross's allegations as to
devices that were discontinued prior to June 2013 are barred by the statute of limitations and cannot be revived
through the continuing-infringement doctrine.

its discretion to deny Mr. Ross leave to amend. The Court also should deny Mr. Ross any future opportunity to amend his Complaint because he has demonstrated that he cannot, in good faith, plead sufficient facts to state a claim, and any further motions would waste the Court's and the parties' resources.

Respectfully submitted on February 6, 2017.

/s/ *John F. O'Sullivan*
John F. O'Sullivan
HOGAN LOVELLS LLP
600 Brickell Avenue
Suite 2700
Miami, FL 33131
(305) 459-6500 (phone)
(305) 459-6550 (fax)
john.osullivan@hoganlovells.com

Clayton C. James
Jessica Black Livingston
Katherine A. Nelson
HOGAN LOVELLS LLP
1601 Wewatta St., Ste. 900
Denver, CO 80202
(303) 899-7300 (phone)
(303) 899-7333 (fax)
clay.james@hoganlovells.com
jessica.livingston@hoganlovells.com
katherine.nelson@hoganlovells.com

Jane Carter
HOGAN LOVELLS LLP
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
(415) 374-2300 (phone)
(415) 374-2499 (fax)
jane.carter@hoganlovells.com

*Attorneys for Defendant Apple Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 6th day of February 2017, a copy of the foregoing was electronically filed with the Clerk of the Southern District of Florida  using the CM/ECF system, which automatically sends an electronic notification to all counsel of record and other CM/ECF participants. I also certify that I have sent by email and U.S. Mail, first class, a copy of this document to Thomas S. Ross, Pro Se Plaintiff, P.O. Box 279381, Miramar, FL 33027, Email: erd1992@globarize.com.

By: */s/ John F. O'Sullivan*
John F. O'Sullivan
Fla. Bar No. 143154
john.osullivan@hoganlovells.com